UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE NEW JERSEY INSURANCE
COMPANY, ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,
ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY f/k/a DEERBROOK
INSURANCE COMPANY, ALLSTATE FIRE
AND CASUALTY INSURANCE COMPANY,
AND NORTHBROOK INDEMNITY COMPANY,

        Plaintiffs,

vs.

MIKHAIL ZEMLYANSKY,
MICHAEL DANILOVICH,
YURIY ZAYONTS,
MIKHAIL KREMERMAN,
MICHAEL BARUKHIN,
MIKHAIL OSTRUMSKY,
BORIS TREYSLER,
ANDREY ANIKEYEV,
VLADIMIR GRINBERG,
VLADISLAV ZARETSKIY,
YEVGENIY SHUMAN,
ALEXANDER SANDLER,
GREGORY MIKHALOV,
MICHAEL MORGAN,
MARK DANILOVICH,
JEFFREY LEREAH,
DMITRY LIPIS,
LYNDA TADDER,

        "Management" Defendants,

        --AND--

MATTHEW CONROY,
MARIA DIGLIO,
SOL NAIMARK,

Civil Action No.

**PLAINTIFFS' COMPLAINT AND
DEMAND FOR JURY TRIAL**

"Lawyer" Defendants,

--AND--

SERGEY GABINSKY, M.D.,
TATYANA GABINSKAYA, M.D.,
LAURETTA GRZEGORCZYK, M.D.,
EVA GATEVA, M.D.,
ZUHEIR SAID, M.D.,
DAVID THOMAS, D.O.,
MARK SHAPIRO, M.D.,
PAVEL POZNANSKY, L.AC.,
CONSTANTINE VOYTENKO, D.C.,
DMITRY SLOBODYANSKY, D.C.,

"Nominal PC Owner" Defendants,

--AND--

BIG APPLE MEDICAL, P.C.,
EFFICIENT MEDICAL DIAGNOSTIC, P.C.,
HIGHWAY MEDICAL DIAGNOSTIC, P.C.,
BUSHWICK PLAZA MEDICAL, P.C.,
UNITED MEDICAL OF BROOKLYN, P.C.,
FRIENDLY PHYSICIAN, P.C.,
FARRAGUT CORNER MEDICAL, P.C.,
HAMILTON MEDICAL HEALTHCARE, P.C.
QUEST MEDICAL SERVICES, P.C.,
MELBOURNE MEDICAL, P.C.,
COLDEN MEDICAL, P.C.,
CLEARVIEW OF BROOKLYN MEDICAL, P.C.,
NOVACARE MEDICAL, P.C.,
MCGUIRE MEDICAL P.C.,
MAGUIRE MEDICAL PRACTICE, P.C.,
HOLLIS MEDICAL SERVICES, P.C.,
SOUTHERN BOULEVARD MEDICAL CARE, P.C.,
WEBSTER DST MEDICAL, P.C.,
UNITED DIAGNOSTIC IMAGING, P.C.,
KALI ACUPUCTURE, P.C.,
FIRST CARE CHIROPRACTIC, P.C.,  AND
CHIROPRACTIC HEALTH PLUS D.S., P.C.,

The "PC Defendants".

The plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Vehicle and Property Insurance Company f/k/a Deerbrook Insurance Company, Allstate Fire and Casualty Insurance Company and Northbrook Indemnity Company (collectively "Allstate" and/or "Plaintiffs"), by its attorneys, Smith & Brink, P.C., allege as follows:

## I.   **INTRODUCTION**

1.   This case is the direct result of a massive insurance fraud scheme perpetrated upon the New York automobile insurance marketplace.

2.   At all times relevant to this Complaint, (a) non-licensed laypersons, Mikhail Zemlyansky ("Zemlyansky"), Michael Danilovich ("Danilovich"), Yuriy Zayonts ("Zayonts"), Mikhail Kremerman ("Kremerman"), Michael Barukhin ("Barukhin"), Mikhail Ostrumsky ("Ostrumky"), Boris Treysler ("Treysler") (collectively, "Management Defendants"), (b) their counsel/consigliere, Matthew Conroy ("Conroy"), and other lawyer-associates, Maria Diglio ("Diglio") and Sol Naimark ("Naimark"), (c) additional non-licensed laypersons, Andrey Anikeyev ("Anikeyev"), Vladimir Grinberg ("Grinberg"), Vladislv Zaretskiy ("Zaretskiy"), Yevgeniy Shuman ("Shuman"), Alexander Sandler ("Sandler"), Gregory Mikhalov ("Mikhalov"), Michael Morgan ("Morgan"), Mark Danilovich ("Danilovich"), Jeffrey Lereah ("Lereah"), Dmitry Lipis ("Lipis"), Lynda Tadder ("Tadder"), (d) licensed healthcare professionals, Sergey Gabinsky, M.D. ("Gabinsky"), Tatyana Gabinskaya, M.D. ("Gabinskaya"), Lauretta Grzegorczyk, M.D. ("Grzegorczyk"), Eva Gateva, M.D. ("Gateva"), Zuheir Said, M.D. ("Said"), David Sanni Thomas, D.O. ("Thomas"), Mark Shapiro, M.D. ("Shapiro"), Pavel Poznansky, L.Ac. ("Poznansky"), Constantine Voytenko, D.C., ("Voytenko"), Dmitriy Slobodyansky, D.C. ("Slobodyansky") (collectively, "Nominal PC Owners"), and (e)

professional service corporations, Big Apple Medical, P.C. ("Big Apple Medical"), Efficient

Medical Diagnostic, P.C. ("Efficient Medical"), Highway Medical Diagnostic, P.C. ("Highway

Medical"), Bushwick Plaza Medical, P.C. ("Bushwick Medical"), United Medical of Brooklyn,

P.C. ("United Medical"), Friendly Physician, P.C. ("Friendly Physician"), Farragut Corner

Medical, P.C. ("Farragut Corner Medical"), Hamilton Medical Healthcare, P.C. ("Hamilton

Medical"), Quest Medical Services, P.C. ("Quest Medical"), Melbourne Medical, P.C.

("Melbourne Medical"), Colden Medical, P.C. ("Colden Medical"), Clearview of Brooklyn

Medical, P.C. ("Clearview"), Novacare Medical, P.C. ("Novacare"), McGuire Medical P.C.

("McGuire"), Maguire Medical Practice, P.C. ("Maguire"), Hollis Medical Services, P.C.

("Hollis Medical"), Southern Boulevard Medical Care, P.C. ("Southern Boulevard Medical"),

Webster DST Medical, P.C. ("Webster DST"), United Diagnostic Imaging, P.C. ("United

Diagnostic"), Kali Acupucture, P.C. ("Kali"), First Care Chiropractic, P.C. ("First Care"), and

Chiropractic Health Plus D.S., P.C. ("Chiropractic Health") (collectively, "PC Defendants"

and/or "PCs"), conspired to, and did, defraud Allstate by perpetrating a healthcare billing fraud

scheme in violation of state and federal law. Each of the individuals and entities listed above

conspired with one another to accomplish and/or further the objectives of the scheme detailed

herein.

   3.  This action seeks actual damages in excess of $9,995,009.00, representing No-

Fault insurance payments that were fraudulently obtained from Allstate through professional

service corporations that were controlled and operated in violation of New York law, and thus

ineligible to receive payment from Allstate.

   4.  The defendants submitted bills for healthcare treatment and diagnostic testing

purportedly rendered to persons eligible for insurance coverage under Allstate insurance policies.

5.    By this complaint, Allstate brings claims against the defendants seeking money damages for (a) violations of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c)-(d), (b) common law fraud, and (c) unjust enrichment.

6.    In addition, Allstate seeks a declaration that the defendants have no right to receive payment for any unpaid bills whereas: (a) the PC Defendants were fraudulently incorporated, and therefore ineligible to seek or recover "No-Fault" benefits; (b) the PC Defendants engaged in unlawful fee-splitting with non-licensed laypersons; (c) the defendants intentionally and knowingly submitted healthcare documentation—namely "NF-3" verification forms—representing that the PC Defendants were owned and operated in accordance with New York law when, in fact, the PC Defendants were fraudulently incorporated and thus ineligible to receive No-Fault benefit payments; and (d) defendants engaged in a pervasive pattern and practice of submitting false healthcare documentation through the U.S. Mail demanding payment from Allstate.

7.    All of the acts and omissions of the defendants described throughout this Complaint were undertaken intentionally.

8.    The defendants' insurance fraud scheme was designed to and did, in fact, result in the payment of automobile insurance contract proceeds ("No-Fault" benefits) from Allstate to the defendants.

9.    In connection with each claim detailed throughout this Complaint, an Allstate automobile insurance contract was the platform upon which defendants perpetrated their fraudulent scheme.

10.   The defendants knew that the patients identified in this Complaint were eligible for insurance coverage pursuant to automobile insurance policies issued by Allstate.

## II.     THE PARTIES

### A.     PLAINTIFFS

11.     Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate Vehicle and Property Insurance Company f/k/a Deerbrook Insurance Company, Allstate Fire and Casualty Insurance Company and Northbrook Indemnity Company are corporations duly organized and existing under the laws of the State of Illinois, having their principal places of business in Northbrook, Illinois.

12.     Allstate New Jersey Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Bridgewater, New Jersey.

### B.     DEFENDANTS

#### 1.     Management Defendants

13.     Mikhail Zemlyansky resides in and is a citizen of the State of New York.

14.     Zemlyansky has never been a licensed healthcare professional.

15.     Michael Danilovich resides in and is a citizen of the State of New York.

16.     Danilovich has never been a licensed healthcare professional.

17.     Yuriy Zayonts resides in and is a citizen of the State of New York.

18.     Zayonts has never been a licensed healthcare professional.

19.     Michael Kremerman resides in and is a citizen of the State of New York.

20.     Kremerman has never been a licensed healthcare professional.

21.     Michael Barukhin resides in and is a citizen of the State of New York.

22.     Barukhin has never been a licensed healthcare professional.

23.     Mikhail Ostrumsky resides in and is a citizen of the State of New York.

24.     Ostrumsky has never been a licensed healthcare professional.

25.    Boris Treysler resides in and is a citizen of the State of New York.

26.    Treysler has never been a licensed healthcare professional.

### 2.    Lawyer Defendants

27.    Matthew Conroy resides in and is a citizen of the State of New York.

28.    At all relevant times, Conroy was licensed to practice law in the State of New York.

29.    Maria Diglio resides in and is a citizen of the State of New York.

30.    At all relevant times, Diglio was licensed to practice law in the State of New York.

31.    Sol Naimark resides in and is a citizen of the State of New York.

32.    At all relevant times, Naimark was licensed to practice law in the State of New York.

### 3.    Additional Non-licensed Laypersons

33.    Andrey Anikeyev resides in and is a citizen of the State of New York.

34.    Ankeyev has never been a licensed healthcare professional.

35.    Vladimir Grinberg resides in and is a citizen of the State of New York.

36.    Grinberg has never been a licensed healthcare professional.

37.    Vladislav Zaretskiy resides in and is a citizen of the State of New York.

38.    Zaretskiy has never been a licensed healthcare professional.

39.    Yevgeniy Shuman resides in and is a citizen of the State of New York.

40.    Shuman has never been a licensed healthcare professional.

41.    Alexander Sandler resides in and is a citizen of the State of New York.

42.    Sandler has never been a licensed healthcare professional.

43.     Gregory Mikhalov resides in and is a citizen of the State of New York.

44.     Mikhalov has never been a licensed healthcare professional.

45.     Michael Morgan resides in and is a citizen of the State of New York.

46.     Morgan has never been a licensed healthcare professional.

47.     Mark Danlovich resides in and is a citizen of the State of New York.

48.     Danilovich has never been a licensed healthcare professional.

49.     Jeffrey Lereah resides in and is a citizen of the State of New York.

50.     Lereah has never been a licensed healthcare professional.

51.     Dmitry Lipis resides in and is a citizen of the State of New York.

52.     Lipis has never been a licensed healthcare professional.

53.     Lynda Tadder resides in and is a citizen of the State of New York.

54.     Tadder has never been a licensed healthcare professional.

### 4.     Licensed Healthcare Professionals/Nominal PC Owners

55.     Segery Gabinsky, M.D. resides in and is a citizen of the State of New York.

56.     At all relevant times, Gabinsky was licensed by the State of New York to practice medicine.

57.     Tatyana Gabinskaya, M.D. resides in and is a citizen of the State of New York.

58.     At all relevant times, Gabinskaya was licensed by the State of New York to practice medicine.

59.     Lauretta Grzegorczyk, M.D. resides in and is a citizen of the State of New York.

60.     At all relevant times, Grzegorczyk was licensed by the State of New York to practice medicine.

61.     Eva Gateva, M.D. resides in and is a citizen of the State of New York.

62.     At all relevant times, Gateva was licensed by the State of New York to practice medicine.

63.     Zuheir Said, M.D. resides in and is a citizen of the State of New York.

64.     At all relevant times, Said was licensed by the State of New York to practice medicine.

65.     David Thomas, D.O. resides in and is a citizen of the State of New York.

66.     At all relevant times, Thomas was licensed by the State of New York to practice osteopathic medicine.

67.     Mark Shapiro, M.D. resides in and is a citizen of the State of New York.

68.     At all relevant times, Shapiro was licensed by the State of New York to practice medicine.

69.     Pavel Poznansky, L.Ac. resides in and is a citizen of the State of New York.

70.     At all relevant times, Poznansky was licensed by the State of New York to practice acupuncture.

71.     Constantine Voytenko, D.C. resides in and is a citizen of the State of New York.

72.     At all relevant times, Voytenko was licensed by the State of New York to practice chiropractic.

73.     Dmitry Slobodyansky, D.C. resides in and is a citizen of the State of New York.

74.     At all relevant times, Slobodyansky was licensed by the State of New York to practice chiropractic.

### 5.     PC Defendants

75.      The PC Defendants (Big Apple Medical, P.C., Efficient Medical Diagnostic, P.C., Highway Medical Diagnostic, P.C., Bushwick Plaza Medical, P.C., United Medical of

Brooklyn, P.C., Friendly Physician, P.C., Farragut Corner Medical, P.C., Hamilton Medical

Healthcare, P.C., Quest Medical Services, P.C., Melbourne Medical, P.C., Colden Medical, P.C.,

Clearview of Brooklyn Medical, P.C., Novacare Medical, P.C., McGuire Medical P.C., Maguire

Medical Practice, P.C., Southern Boulevard Medical Care, P.C., Hollis Medical Services, P.C.,

Webster DST Medical, P.C., United Diagnostic Imaging, P.C., Kali Acupucture, P.C., First Care

Chiropractic, P.C., and Chiropractic Health Plus D.S., P.C.) are professional service corporations

organized under New York law.

a.    Gabinsky PCs

76.    Gabinsky is the "paper owner" of Big Apple Medical, Efficient Medical,

Highway Medical, Bushwick Medical, United Medical, Friendly Physician, Farragut Corner

Medical, Hamilton Medical, Quest Medical, Melbourne Medical, and Colden Medical

(collectively "Gabinsky PCs").

77.    Each of the Gabinsky PCs is a professional service corporation with its principal

place of business in the State of New York.

78.    At all relevant times, Gabinsky falsely purported to be the sole owner, officer and

director of each Gabinsky PC.

79.    At all relevant times, and in direct violation of New York Business Corporation

Law §1508, each of the Gabinsky PCs was operated and controlled by non-licensed laypersons

in violation of New York law.

b.    Gabinskaya PCs

80.    Gabinskaya is the "paper owner" of Clearview and Novacare (collectively

"Gabinskaya PCs").

10

81.     Clearview and Novacare are professional service corporations with their principal places of business in the State of New York.

82.     At all relevant times, Gabinskaya falsely purported to be the sole owner, officer and director of Clearview and Novacare.

83.     At all relevant times, and in direct violation of New York Business Corporation Law §1508, the Gabinskaya PCs operated and controlled by non-licensed laypersons in violation of New York law.

            c.     Grzegorczyk Entities

84.     Grzegorczyk is the "paper owner" of McGuire and Maguire (collectively "Grzegorczyk PCs").

85.     McGuire and Maguire are professional service corporations with their principal places of business in the State of New York.

86.     At all relevant times, Grzegorczyk falsely purported to be the sole owner, officer and director of McGuire and Maguire.

87.     At all relevant times, and in direct violation of New York Business Corporation Law §1508, the Gabinskaya PCs were operated and controlled by non-licensed laypersons in violation of New York law.

            d.     Gateva Entity

88.     Gateva is the "paper owner" of Hollis Medical.

89.     Hollis Medical is professional service corporation with its principal place of business in the State of New York.

90.     At all relevant times, Gateva falsely purported to be the sole owner, officer and director of Hollis Medical.

91.     At all relevant times, and in direct violation of New York Business Corporation Law §1508, Hollis Medical was operated and controlled by non-licensed laypersons in violation of New York law.

e.      Said Entity

92.     Said is the "paper owner" of Southern Boulevard Medical.

93.     Southern Boulevard Medical is professional service corporation with its principal place of business in the State of New York.

94.     At all relevant times, Said falsely purported to be the sole owner, officer and director of Southern Boulevard Medical.

95.     At all relevant times, and in direct violation of New York Business Corporation Law §1508, Southern Boulevard Medical was operated and controlled by non-licensed laypersons in violation of New York law.

f.      Thomas Entity

96.     Thomas is the "paper owner" of Webster DST.

97.     Webster DST is professional service corporation with its principal place of business in the State of New York.

98.     At all relevant times, Thomas falsely purported to be the sole owner, officer and director of Webster DST.

99.     At all relevant times, and in direct violation of New York Business Corporation Law §1508, Webster DST was operated and controlled by non-licensed laypersons in violation of New York law.

g.      Shapiro Entity

100.    Shapiro is the "paper owner" of United Diagnostic.

101.    United Diagnostic is professional service corporation with its principal place of business in the State of New York.

102.    At all relevant times, Shapiro falsely purported to be the sole owner, officer and director of United Diagnostic.

103.    At all relevant times, and in direct violation of New York Business Corporation Law §1508, United Diagnostic was operated and controlled by non-licensed laypersons in violation of New York law.

h.    Poznansky Entity

104.    Poznansky is the "paper owner" of Kali.

105.    Kali is professional service corporation with its principal place of business in the State of New York.

106.    At all relevant times, Poznansky falsely purported to be the sole owner, officer and director of Kali.

107.    At all relevant times, and in direct violation of New York Business Corporation Law §1508, Kali was operated and controlled by non-licensed laypersons in violation of New York law.

i.    Voytenko Entity

108.    Voytenko is the "paper owner" of First Care.

109.    First Care is professional service corporation with its principal place of business in the State of New York.

110.    At all relevant times, Voytenko falsely purported to be the sole owner, officer and director of First Care.

111.    At all relevant times, and in direct violation of New York Business Corporation Law §1508, First Care was operated and controlled by non-licensed laypersons in violation of New York law.

j.    Slobodyansky Entity

112.    Slobodyansky is the "paper owner" of Chiropractic Health.

113.    Chiropractic Health is professional service corporation with its principal place of business in the State of New York.

114.    At all relevant times, Slobodyansky falsely purported to be the sole owner, officer and director of Chiropractic Health.

115.    At all relevant times, and in direct violation of New York Business Corporation Law §1508, Chiropractic Health was operated and controlled by non-licensed laypersons in violation of New York law.

**III.    JURISDICTION AND VENUE**

116.    Jurisdiction over this action is conferred upon this Court by 28 U.S.C. §1331, §1332, 18 U.S.C. §1962(c)-(d), and 18 U.S.C. §1964.  Supplemental jurisdiction over the state law claims is proper under 28 U.S.C. §1367.

117.    Venue is proper under 28 U.S.C. §1391(c) whereas wrongful acts known to Allstate as alleged herein with particularity were carried out within the Eastern District of New York.

**IV.    NO-FAULT LAWS AND LICENSING STATUTES**

118.    Allstate underwrites automobile insurance in the State of New York.

119.    New York's No-Fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay reasonable fees for necessary healthcare services.

120.    Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, et seq.), and the regulations promulgated pursuant thereto (11 NYCRR § 65, et seq.) (collectively, "the No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits (hereinafter "No-Fault Benefits") to Allstate claimants.

121.    No-Fault Benefits include up to $50,000.00 per Allstate claimant for reasonable expenses that are incurred for necessary healthcare goods and services.

122.    A patient can assign his/her No-Fault Benefits to healthcare providers.

123.    Pursuant to a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered, using the claim form required by the New York State Department of Insurance (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3").

124.    Pursuant to § 403(d) of the New York State Insurance Law, NF-3s must be verified by the healthcare provider subject to the following warning: "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime" (hereinafter referred to as the "NF-3 Verification").

125.    Pursuant to New York's No-Fault Laws, fraudulently incorporated professional corporations are not eligible to receive No-Fault Benefits.

126.    In New York, only a licensed healthcare professional may: (a) provide healthcare services; (b) own and control a professional service corporation authorized to administer healthcare services; (c) employ and supervise other healthcare professionals; and (d) derive - absent statutory exceptions not applicable in this case - economic benefit from professional healthcare services.

127.    New York's No-Fault Laws provide that "[a] provider of healthcare services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York." *See* 11 NYCRR §65-3.16(a)(12).

128.    New York Business Corporation Law § 1504 states that no professional service corporation may render professional services except through individuals authorized by law to render such professional services as individuals.

129.    New York Business Corporation Law § 1507 prohibits a professional service corporation from issuing shares to individuals unless they are "engaged in the practice of such profession in such a corporation." It also prohibits such shareholder(s) from entering into any agreement, granting proxies or transferring control to individuals who are not authorized by law to practice the profession for which the professional corporation is authorized to practice.

130.    Under New York Business Corporation Law § 1508, no individual may be a director or officer of a professional service corporation unless he is authorized by law to practice in this state a profession which such corporation is authorized to practice.

131.    Under the Education Law of New York § 6530(19), it is professional misconduct for a licensed physician to permit any person to share in the fees for professional services, other than a partner, employee, associate of a professional firm or corporation, professional

subcontractor or consultant authorized to practice medicine, or a legally authorized trainee practicing under the supervision of a licensee.

132.    Pursuant to 8 NYCCR § 29.1(b), it is prohibited conduct for any licensed healthcare professional, including but not limited to chiropractors or acupuncturists, to split or share fees for the provision of professional services.

133.    In New York, insurers are not precluded from seeking affirmative recovery against individuals and entities that have violated the above statutes and regulations.

134.    In *State Farm v. Mallela,* 4 N.Y.3d 313 (2005), the New York Court of Appeals upheld 11 NYCRR §65-3.16(a) (12) which excludes payments made to unlicensed providers.

135.    In the matter, *Metroscan Imaging, P.C. v. GEICO,* 823 N.Y.S.2d 818, 821-822 (2006), it was held that an insurer may maintain a cause of action against a fraudulently incorporated healthcare provider to recover monies paid after April 5, 2002 (11 NYCRR 65-3.16(a)(12)'s effective date).

## V.    FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.    CRIMINAL INDICTMENT

136.    On February 29, 2012, defendants, Zemlyansky, Danilovich, Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler, Conroy, Diglio, Naimark, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Danilovich, Lereah, Lipis, Tadder, Gabinsky, Gabinskaya, Grzegorczyk, Gateva, Said, Thomas, Shapiro, Poznansky, Voytenko, Slobodyansky, and others, were indicted in the United States District Court in the Southern District of New York, in connection with an elaborate scheme to defraud No-Fault insurance carriers ("the Indictment"). *See* Criminal Indictment, *United States v. Zemlyansky,* No. 12-CR-171 (JPO) (S.D.N.Y.), annexed hereto at Exhibit 1; United States Attorney's Office of the

Southern District of New York Press Release dated February 29, 2012 annexed hereto at Exhibit 2.

137.    Zemlyansky, Danilovich, Conroy, Barukhin, Ostrumsky, and Treysler were members and associates of a "No-Fault Organization." The No-Fault Organization was a criminal organization consisting primarily of individuals of Russian descent in the United States participating in organized criminal activities, whose members and associates engaged in various crimes, including a scheme to defraud automobile insurance companies that provide health care benefits to accident victims.

138.    The No-Fault Organization, including its leadership, membership, and associates, constituted an "enterprise." The enterprise was engaged in, and its activities affected, interstate and foreign commerce. The No-Fault Organization constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

139.    To take advantage of the patient-friendly provisions of New York's No-Fault Laws, numerous medical clinics were created solely to defraud insurance companies under the No-Fault Laws (the "PC Defendants"). While purporting to be legitimate medical care clinics specializing in treating patient (persons purportedly injured in automobile accidents), the PC Defendants were, in fact, medical fraud mills that routinely billed automobile insurance companies under the No-Fault Law for medical treatments that were either (a) never provided and/or (b) unnecessary, because the patients did not medically need the treatments.

140.    In actuality, the PC Defendants were not owned, operated, and controlled by a licensed medical practitioner; instead, the actual owners, operators,

and controllers of the PC Defendants were individuals who were not licensed medical practitioners and who were not identified on documents filed with New York State authorities. The unlicensed laypersons who operated and controlled the PC Defendants, among other things, paid a fee and/or salary to licensed medical professionals so that the licensed medical professionals ("Nominal PC Owners") would (a) incorporate a professional corporation ("PC Defendant") to bill insurance companies; (b) open a bank account for the PC Defendant; (c) sign the lease for the PC Defendant's property; (d) sign the PC Defendant's bills for treatments under the No-Fault Law; and/or (e) make the excessive and unnecessary prescriptions and referrals for additional treatments and medical supplies to other fraudulent medical clinics. In addition, the actual owners, operators, and controllers of the PC Defendants, among other things, invested the initial funds to establish the PC Defendants; identified the locations for the PC Defendants; negotiated the rent for the PC Defendants' leases; sourced and paid for the PC Defendants' equipment; arranged for patients to receive treatment; and/or received most, if not all, of any proceeds from the PC Defendants.

141.   The actual owners, operators, and controllers of the PC Defendants arranged for other similarly fraudulently incorporated entities to provide excessive and unnecessary medical treatment based on referrals from the No-Fault Doctors (the "Modality Clinics"). These additional PCs provided additional medical treatments and supplies, which were fraudulently billed to insurers. These additional treatments included, but were not limited to, acupuncture, chiropractic medicine, physical therapy, neurology, psychology, magnetic resonance imaging ("MRIs"), x-rays, range of motion, outcome assessment, functional capacity, pain management, orthopedics, audiology, manipulation under anesthesia ("MUA"), and durable medical equipment ("DME"), among others. In return, the actual owners, operators,

and controllers of the PC Defendants received cash kickbacks for each referral from other individuals who fraudulently owned, operated and controlled the additional PCs.

142. To increase the number of medical treatments that could be billed to automobile insurance companies and referred to the PC Defendants, the actual owners, operators, and controllers of the PC Defendants used individuals who recruited patients to the PC Defendants (the "Runners"). The actual owners, operators, and controllers of the PC Defendants generally paid the runners between $2,000 and $3,000 per patient referral.

143. The actual owners, operators, and controllers of the PC Defendants also referred the patients to personal injury lawyers so that the lawyers could file personal injury claims and lawsuits on behalf of the patients to obtain additional funds separate and apart from the $50,000 available to each patient under the No-Fault Law. In return, the lawyers and the actual owners, operators, and controllers of the PC Defendants entered into kickback arrangements, which included, but were not limited to, a common arrangement in which the lawyers paid approximately $1,000 for each patient referral from an actual owner, operator, and controller of the PC Defendant. Often, the lawyers encouraged the patients to receive more treatments to support their personal injury cases.

144. To maintain and promote the operation of the No-Fault Organization, the actual owners, operators, and controllers of the PC Defendants continuously reinvested a portion of the proceeds of the No-Fault fraud scheme back into the scheme. Generally, proceeds in the form of checks were mailed from automobile insurance companies to the actual owners, operators, and controllers of the PC Defendants, and then deposited into the bank accounts of PC Defendants. Although the signatories on the PC Defendants' accounts were the licensed medical professionals who had incorporated the PC

Defendants ("the Nominal PC Owners"), the PC Defendants' accounts were actually controlled by the actual owners, operators, and controllers of the PC Defendants. The actual owners, operators, and controllers of the PC Defendants paid fees and salaries to the Nominal PC Owners from the PC Defendants' accounts for their role in the No-Fault insurance scheme.

145.     Some of the Nominal PC Owners paid kickbacks to other Nominal PC Owners in return for patient referrals. These "kickbacks" were paid by providing checks to the PC Defendants' accounts that were often falsely characterized as "rent" payments for the use of space at the PC Defendant clinics. These "rent" checks had the dual purpose of satisfying some of the monies owed for kickbacks and also falsely representing to the automobile insurance companies that the business relationship among the PC Defendants was legitimate. Additionally, other expenses of the PC Defendants were sometimes paid by check directly from a PC Defendant account as an additional means of making kickback payments to the actual owners, operators, and controllers of the PC Defendants. Finally, on some occasions, the Nominal PC Owners paid a portion of the kickbacks owed to the actual owners, operators, and controllers of the PC Defendants by structuring checks of less than $10,000 to the actual owners, operators, and controllers of the PC Defendants, who, among other things, provided some of these checks to check cashers to convert to cash.

146.     To generate cash from the scheme to satisfy their various kickback obligations, the actual owners, operators, and controllers of the PC Defendants often used check cashers in order both to conceal the source of the proceeds and to reinvest the proceeds into the scheme. Often, the actual owners, operators, and controllers of the PC Defendants wrote blank checks from PC Defendants' accounts in the amount structured to be less than $10,000 to avoid financial reporting requirements, and provided those checks

21

to individuals who would cash the checks with a check casher for up to a 10 percent fee. The check cashers would then return the remainder of the funds in cash to the actual owners, operators, and controllers of the PC Defendants. These monies were then used to pay the actual owners, operators, and controllers of the PC Defendants to satisfy the monies owed for patient referrals, and, in turn, the actual owners, operators, and controllers of the PC Defendants paid the runners in cash for referring patients to the PC Defendants.

147. The actual owners, operators, and controllers of the PC Defendants extracted proceeds of the scheme by concealing the source of those proceeds. First, after depositing checks from automobile insurance companies into the PC Defendants' accounts, the actual owners, operators, and controllers of the PC Defendants used some of those funds to pay for various personal expenses, including, among other things, jewelry, limousines, and luxury goods. Second, the actual owners, operators, and controllers of the PC Defendants directed checks to be written from the PC Defendants' accounts to certain shell companies controlled by the actual owners, operators, and controllers of the PC Defendants. Money from these shell companies would then be used to pay for various personal expenses, including, among other things, car payments, credit card bills, and lavish vacations. Third, as described above, the actual owners, operators, and controllers of the PC Defendants used check cashers to convert proceeds of the scheme into cash some of which they kept.

148. The No-Fault Organization consisted primarily, though not exclusively, of the actual owners, operators, and controllers of the PC Defendants who engaged in a widespread scheme to defraud the state of New York and automobile insurance companies, and who then laundered the proceeds of their scheme, in part, to conceal their illegal conduct and to promote the scheme. The No-Fault Organization operated

22

principally, though not exclusively, through two primary operating branches, both of which engaged in criminal conduct including, but not limited to, mail fraud and money laundering. One operating branch was organized and directed by Zemlyansky and Danilovich. The second operating branch was organized and directed by Zayonts and Kremerman. These operating branches intertwined and overlapped, both directly and through intermediaries, including other co-defendants. Each operating branch owned, operated and controlled multiple PC Defendants, all of which submitted their medical bills to automobile insurance companies through other entities they controlled. Both operating branches also laundered the proceeds of the scheme through shell companies, structured checks, and check cashers.

149.    Zemlyansky and Danilovich, as "leaders and organizers" of the No-Fault Organization, participated in and profited from various crimes, including mail fraud and money laundering. In this capacity, Zemlyansky and Danilovich were the actual owners, operators, and controllers of multiple medical clinics located in and around Brooklyn, New York, which referred patients to other PC Defendants. Some of the PCs were owned, operated, and controlled by Zemlyansky and Danilovich, among others, and other PCs were owned, operated, and controlled by Zayonts and Kremerman, among others. In addition, along with other members and associates of the No-Fault Organization, Zemlyansky and Danilovich controlled two MRI clinics in Brooklyn, New York, as well as for numerous acupuncture and chiropractic clinics in and around New York City. Along with others, Zemlyansky and Danilovich operated entities through which they billed automobile insurance companies for medical treatments performed by their own PCs, as well as PCs controlled by others. Along with other members and associates of the No-Fault Organization, Zemlyansky and

23

Danilovich also laundered the proceeds of their criminal activity to conceal the source of their proceeds, promote the no-fault insurance scheme, and extract profits from the scheme.

150. Zayonts and Kremerman, as "leaders and organizers" of the No-Fault Organization, participated in and profited from various crimes, including mail fraud and money laundering. In this capacity, Zayonts and Kremerman owned, operated, and controlled numerous medical clinics located in and around New York City, including, among others, numerous fraudulent neurology clinics. These neurology clinics received patient referrals from PCs owned, operated, and controlled by Zemlyansky and Danilovich, in return for cash kickbacks. Along with others, Zayonts and Kremerman operated an entity through which they billed automobile insurance companies for medical treatments performed by their own PCs, as well as PCs owned by others. In addition, along with others, Zayonts and Kremerman laundered the proceeds of their criminal activity to conceal the source of their proceeds, promote the no-fault insurance scheme, and extract profits from the scheme.

151. Conroy, a licensed attorney, was a member of the No-Fault Organization. In this capacity, Conroy acted as the Organization's principal legal advisor on all aspects of the defendants' insurance fraud scheme, including the selection of the Nominal PC Owners and the fraudulent incorporation of the PC Defendants. Diglio and Naimark also worked as lawyer-associates of the defendants during the course of this scheme. Conroy, working with Diglio, also prepared and counseled many of the Nominal PC Owners in connection with investigations by No-Fault insurers and law enforcement. In addition, Conroy participated in laundering the proceeds of the defendants' criminal activity.

152. Barukhin was an associate and financial partner of Zemlyansky and Danilovich, in various criminal activity including mail fraud and money

24

laundering. Among other things, Barukhin was principally responsible for handling the medical billing and collections for the various clinics he owned, operated, and controlled with Zemlyansky and Danilovich.

153. Ostrumsky and Treysler were members of the No-Fault Organization. In this capacity, Ostrumsky and Treysler owned, operated and controlled multiple PC Defendants, and referred patients to PCs owned, operated and controlled by Zemlyansky and Danilovich, among others, in return for cash kickbacks. In addition, Ostrumsky and Treysler laundered the proceeds of their criminal activity.

154. From at least 2007, defendants, Zemlyansky, Danilovich, Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler, Conroy, Diglio, Naimark, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Danilovich, Lereah, Lipis, Tadder, Gabinsky, Gabinskaya, Grzegorczyk, Gateva, Said, Thomas, Shapiro, Poznansky, Voytenko, and Slobodyansky, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate 18 U.S.C. § 1347 (health care fraud).

155. It was part and an object of the conspiracy that defendants, Zemlyansky, Danilovich, Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler, Conroy, Diglio, Naimark, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Danilovich, Lereah, Lipis, Tadder, Gabinsky, Gabinskaya, Grzegorczyk, Gateva, Said, Thomas, Shapiro, Poznansky, Voytenko, and Slobodyansky, willfully and knowingly, would and did execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of a health care benefit program in

connection with the delivery of and payment for health care benefits, items and services, in violation of 18 U.S.C. § 1347.

156. From at least 2007, defendants, Zemlyansky, Danilovich, Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler, Conroy, Diglio, Naimark, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Danilovich, Lereah, Lipis, Tadder, Gabinsky, Gabinskaya, Grzegorczyk, Gateva, Said, Thomas, Shapiro, Poznansky, Voytenko, and Slobodyansky, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate 18 U.S.C. § 1341 (mail fraud).

157. It was part and an object of the conspiracy that defendants, Zemlyansky, Danilovich, Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler, Conroy, Diglio, Naimark, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Danilovich, Lereah, Lipis, Tadder, Gabinsky, Gabinskaya, Grzegorczyk, Gateva, Said, Thomas, Shapiro, Poznansky, Voytenko, and Slobodyansky, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and would and did take and receive therefrom, such matter and thing, and would and did cause to be delivered by mail according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, a matter or thing, in violation of 18 U.S.C. § 1341.

158. From at least 2007, defendants, Zemlyansky, Danilovich, Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler, Conroy, Anikeyev, Grinberg,

Zaretskiy, Shuman, and Slobodyansky, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate 18 U.S.C. § 1956 (money laundering).

159. It was a part and an object of the conspiracy that Zemlyansky, Danilovich, Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler, Conroy, Anikeyev, Grinberg, Zaretskiy, Shuman, and Slobodyansky, knowing that the property involved in a financial transaction presented the proceeds of unlawful activity, would and did conduct and attempt to conduct financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, health care fraud, mail fraud and conspiracy to commit health care fraud and mail fraud, in violation of 18 U.S.C. §§ 1341, 1347 and 1349, with the intent to promote the carrying on of that specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

160. It was further part and an object of the conspiracy that Zemlyansky, Danilovich, Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler, Conroy, Anikeyev, Grinberg, Zaretskiy, Shuman, and Slobodyansky, knowing that the property involved in a financial transaction represented the proceeds of unlawful activity, would and did conduct and attempt to conduct financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, health care fraud, mail fraud and conspiracy to commit health care fraud and mail fraud, in violation of 18 U.S.C. §§ 1341, 1347 and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of these proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

161.     It was further part and an object of the conspiracy that Zemlyansky, Danilovich,
Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler, Conroy, Anikeyev, Grinberg, Zaretskiy,
Shuman, and Slobodyansky, in an offense involving and affecting interstate and foreign
commerce and taking place in the United States, would and did engage in and attempt to engage
in monetary transactions, as that term is defined in 18 U.S.C. § 1957(f)(1), in criminally derived
property that was of a value greater than $10,000, including the payment by check of funds in
~~excess of $10,000 from bank accounts that received no-fault insurance funds to other bank~~
accounts controlled by the defendants, such property having been derived from a specified
unlawful activity to wit, proceeds from health care fraud and mail fraud and conspiracy to
commit health care fraud and mail fraud, in violation of title 18 U.S.C. §§ 1341, 1347 and 1349,
all in violation of 18 U.S.C. § 1957.

**B.     FRAUDULENT INCORPORATION OF THE PC DEFENDANTS**

162.     At all relevant times, the PC Defendants were owned, operated, and controlled by
unlicensed laypersons, and as a result, none of the PC Defendants were eligible to receive No-
Fault reimbursement under New York law.

163.     At all relevant times, each of the PC Defendants were healthcare fraud mills that
routinely billed automobile insurance companies under the No-Fault Laws for healthcare
treatment and testing that was either (a) never provided and/or (b) unnecessary, because the
patients did not medically need the treatments.

164.     At all relevant times, the PC Defendants were not owned, operated, and controlled
by a licensed healthcare practitioner; instead, the actual owners, operators, and controllers of the
PC Defendants were individuals who were not licensed healthcare practitioners, and who were
not identified on documents filed with New York State licensing authorities.

165.    At all relevant times, the unlicensed laypersons who operated and controlled the PC Defendants paid a fee and/or salary to the Nominal PC Owners so that the Nominal PC Owners would: (a) incorporate the PC Defendants to bill insurance companies; (b) open a bank account for the PC Defendant; (c) sign the lease for the PC Defendant's property; (d) sign the PC Defendant's bills for treatments under the No-Fault Law; and/or (e) make the excessive and unnecessary prescriptions and referrals for additional treatments and medical supplies to other fraudulent healthcare clinics.

166.    In addition, the actual owners, operators, and controllers of the PC Defendants invested the initial funds to establish the PC Defendants; identified the locations for the PC Defendants; negotiated the rent for the PC Defendants' leases; sourced and paid for the PC Defendants' equipment; arranged for patients to receive treatment; and/or received most, if not all, of any proceeds from the PC Defendants.

167.    Based on the above-described conduct, each of the PC Defendants, at all relevant times, was operated in direct violation of New York law; therefore, pursuant to the express terms of 11 NYCRR §65-3.16(a)(12), each of the PC Defendants was ineligible to receive No-Fault reimbursement under Insurance Law § 5102(a)(1).

C.    SPECIFIC ALLEGATIONS OF DEFENDANTS' ILLEGAL OPERATION AND CONTROL OF THE "GABINSKAYA PCs"

168.    Throughout the course of her relationship with the defendants, Gabinskaya has exercised absolutely no control over the PCs in which she acts as the nominal owner: Clearview of Brooklyn Medical, P.C. and Novacare Medical, P.C.

169.    Rather, all decision-making authority relating to the operation and management of the PC Defendants has been vested exclusively with the Management Defendants, including but not limited to, Zemlyansky, Danilovich, Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler,

Conroy, Diglio, Naimark, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Danilovich, Lereah, Lipis, and Tadder.

170.    Gabinskaya never (a) controlled or maintained any of the Gabinskaya PCs' corporate books and records; (b) selected, directed and/or controlled any of the individuals or entities that are responsible for handling any aspect of the Gabinskaya PCs' business affairs; and (c) hired or supervised any of the Gabinskaya PCs' employees or independent contractors.

171.    Gabinskaya is essentially an employee of the Management Defendants.

172.    Every NF-3 form (i.e. bill) mailed to Allstate misrepresented and/or concealed material facts regarding the assertion that the Gabinskaya PCs were properly licensed, and therefore, eligible to receive No-Fault benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12).

173.    In fact, the Gabinskaya PCs were never eligible for No-Fault benefits because each professional service corporation was (a) unlawfully incorporated, owned and/or controlled by non-physicians; (b) engaged in unlawful fee-splitting with non-physicians, and (c) allegedly owned by a physician who did not practice medicine through the professional corporation.

174.    For all of the reasons detailed herein, the Gabinskaya PCs were never eligible to receive No-Fault reimbursement under New York law, thus all of the monies paid by Allstate to the Gabinskaya PCs are recoverable.

175.    Consistent with the allegations set forth in the Indictment, in exchange for a designated salary or other form of compensation, Gabinskaya agreed to falsely represent in the certificates of incorporation filed with the Department of Education that she was the true shareholder, director and officer of the Gabinskaya PCs, and that she truly owned, controlled and practiced through each of the professional service corporations.

176.    Throughout the course of Gabinskaya's relationship with the Management Defendants, Gabinskaya has exercised absolutely no control over or ownership interest in the Gabinskaya PCs.

177.    All decision-making authority relating to the operation and management of the Gabinskaya PCs was vested entirely with the Management Defendants.

178.    At all relevant times, Gabinskaya ceded actual control of Clearview to the Management Defendants.

179.    At all relevant times, the Lawyer Defendants counseled Gabinskaya and the Management Defendants in connection with all aspects of the operation of the Gabinskaya PCs.

180.    Gabinskaya has admitted that she (a) visits Clearview's 2965 Ocean Parkway location (i.e. the imaging center where Clearview purports to operate) for a few hours a couple of times per week, and (b) has no actual input into the operation and/or management of Clearview.

181.    In addition to her minimal presence in Clearview's offices, Gabinskaya has never controlled or maintained any of Clearview's corporate books or records, including its bank accounts, and has never selected, directed, and/or controlled any of the individuals or entities that were responsible for handling any aspect of Clearview's financial affairs.

182.    At all relevant times, Gabinskaya has been completely unaware of the most fundamental aspects of how the Gabinskaya PCs operated.

183.    At all relevant times, the ownership and control of the Gabinskaya PCs by non-licensed laypersons compromised patient care, as the provision of health services by the Gabinskaya PCs was subject to the pecuniary interests of laypersons as opposed to the exercise of independent medical judgment by a true doctor-owner.

31

184.    Because the Gabinskaya PCs were fraudulently incorporated and used as conduits to illegally split fees with non-licensed laypersons, and not operated or controlled by a licensed medical professional, they were, at all relevant times, ineligible as a matter of New York law to receive No-Fault Benefits.

185.    From at least April 5, 2002 through the present, true ownership and control of the Gabinskaya PCs has rested entirely with the Management Defendants, who used the façade of these PCs to do indirectly what they were forbidden from doing directly, namely: (a) employing physicians and other licensed healthcare professionals; (b) controlling their practices; and (c) charging for (and deriving an economic benefit from) their services.

186.    Since April 5, 2002, Allstate has paid the Gabinskaya PCs $582,834.64 for the alleged medical treatment of No-Fault insurance claimants. *See* Exhibits 3 – 4, annexed hereto and incorporated herein by reference as if set forth in its entirety.

187.    Because the Gabinskaya PCs were operated and controlled in violation of New York law, each Gabinskaya PC—Clearview and Novacare—was, at all relevant times, ineligible to receive No-Fault reimbursement. *See* 11 NYCRR § 65-3.16(a)(12).

188.    At all relevant times, and consistent with the allegations contained in the Indictment, No-Fault payments paid to the Gabinskaya PCs were controlled by the Management Defendants.

189.    As a result, the Management Defendants—persons not entitled to receive No-Fault reimbursement for professional healthcare services—were the direct beneficiaries of the No-Fault proceeds collected by the Gabinskaya PCs from Allstate.

32

D.    SPECIFIC ALLEGATIONS OF DEFENDANTS' ILLEGAL OPERATION AND CONTROL OF THE "GRZEGORCZYK PCs"

190.    Throughout the course of her relationship with the defendants, Grzegorczyk has exercised absolutely no control over the PCs in which she acts as the nominal owner: McGuire Medical P.C. and Maguire Medical Practice, P.C.

191.    At all relevant times, the Lawyer Defendants counseled Grzegorczyk and the Management Defendants in connection with all aspects of the operation of the Grzegorczyk PCs.

192.    Grzegorczyk agreed to falsely represent in the certificate of incorporation filed with the Department of Education that she is the sole shareholder, director and officer of the Grzegorczyk PCs, and that she truly owns and controls the operations of the Grzegorczyk PCs.

193.    Grzegorczyk has never been the true shareholder, director and officer of the Grzegorczyk PCs.

194.    Grzegorczyk has no genuine ownership interest in the Grzegorczyk PCs.

195.    Throughout the course of her relationship the Management Defendants, Grzegorczyk has exercised absolutely no control over the Grzegorczyk PCs.

196.    All decision-making authority relating to the operation and management of the Grzegorczyk PCs has been vested exclusively with the Management Defendants.

197.    Grzegorczyk never (a) controlled or maintained any of the Grzegorczyk PCs' corporate books and records; (b) selected, directed and/or controlled any of the individuals or entities that are responsible for handling any aspect of the Grzegorczyk PCs' business affairs; and (c) hired or supervised any of the Grzegorczyk PCs' employees or independent contractors.

198.    Grzegorczyk is essentially an employee of the Management Defendants.

199.    Because the Grzegorczyk PCs were fraudulently incorporated and used as conduits to illegally split fees with non-licensed laypersons, and not operated or controlled by a

licensed medical professional, they were, at all relevant times, ineligible as a matter of New York law to receive No-Fault Benefits.

200.    From at least April 5, 2002 through the present, true ownership and control of the Grzegorczyk PCs has rested entirely with the Management Defendants, who used the façade of these PCs to do indirectly what they were forbidden from doing directly, namely: (a) employing physicians and other licensed healthcare professionals; (b) controlling their practices; and (c) charging for (and deriving an economic benefit from) their services.

201.    Since April 5, 2002, Allstate has paid the Grzegorczyk PCs $1,141,108.48 for the alleged medical treatment of No-Fault insurance claimants. *See* Exhibits 5 – 6, annexed hereto and incorporated herein by reference as if set forth in its entirety.

202.    Because the Grzegorczyk PCs were operated and controlled in violation of New York law, each Grzegorczyk PC—McGuire and Maguire—was, at all relevant times, ineligible to receive No-Fault reimbursement. *See* 11 NYCRR § 65-3.16(a) (12).

203.    At all relevant times, and consistent with the allegations contained in the Indictment, No-Fault payments paid to the Grzegorczyk PCs were controlled by the Management Defendants.

204.    As a result, the Management Defendants—persons not entitled to receive No-Fault reimbursement for professional healthcare services—were the direct beneficiaries of the No-Fault proceeds collected by the Grzegorczyk PCs from Allstate.

### E.    SPECIFIC ALLEGATIONS OF DEFENDANTS' ILLEGAL OPERATION AND CONTROL OF THE "GABINSKY PCS"

205.    Consistent with the allegations contained in the Indictment, Gabinsky, at all relevant times, has exercised absolutely no control over the PCs in which he acts as the nominal owner, including: Big Apple Medical, P.C., Efficient Medical Diagnostic, P.C., Highway

Medical Diagnostic, P.C., Bushwick Plaza Medical, P.C., United Medical of Brooklyn, P.C., Friendly Physician, P.C., Farragut Corner Medical, P.C., Hamilton Medical Healthcare, P.C., Quest Medical Services, P.C., Melbourne Medical, P.C., and Colden Medical, P.C.

206.    At all relevant times, the Lawyer Defendants counseled Gabinsky and the Management Defendants in connection with all aspects of the operation of the Gabinsky PCs

207.    Gabinsky agreed to falsely represent in the certificate of incorporation filed with the Department of Education that he is the sole shareholder, director and officer of the Gabinsky PCs, and that he truly owns and controls the operations of the Gabinsky PCs.

208.    Gabinsky has never been the true shareholder, director and officer of the Gabinsky PCs.

209.    Gabinsky has no genuine ownership interest in the Gabinsky PCs.

210.    Throughout the course of his relationship with the Management Defendants, Gabinsky has exercised absolutely no control over the Gabinsky PCs.

211.    All decision-making authority relating to the operation and management of the Gabinsky PCs has been vested exclusively with the Management Defendants.

212.    Gabinsky never (a) controlled or maintained any of the Gabinsky PCs' corporate books and records; (b) selected, directed and/or controlled any of the individuals or entities that are responsible for handling any aspect of the Gabinsky PCs' business affairs; and (c) hired or supervised any of the Gabinsky PCs' employees or independent contractors.

213.    Gabinsky is essentially an employee of the Management Defendants.

214.    Because the Gabinsky PCs were fraudulently incorporated and used as conduits to illegally split fees with non-licensed laypersons, and not operated or controlled by a licensed

medical professional, they were, at all relevant times, ineligible as a matter of New York law to receive No-Fault Benefits.

215. From at least April 5, 2002 through the present, true ownership and control of the Gabinsky PCs has rested entirely with the Management Defendants, who used the façade of these PCs to do indirectly what they were forbidden from doing directly, namely: (a) employing physicians and other licensed healthcare professionals; (b) controlling their practices; and (c) charging for (and deriving an economic benefit from) their services.

216. Since April 5, 2002, Allstate has paid the Gabinsky PCs $2,501,940.88 for the alleged medical treatment of No-Fault insurance claimants. *See* Exhibits 7 – 17, annexed hereto and incorporated herein by reference as if set forth in its entirety.

217. Because the Gabinsky PCs were operated and controlled in violation of New York law, each Gabinsky PC— Big Apple Medical, P.C., Efficient Medical Diagnostic, P.C., Highway Medical Diagnostic, P.C., Bushwick Plaza Medical, P.C., United Medical of Brooklyn, P.C., Friendly Physician, P.C., Farragut Corner Medical, P.C., Hamilton Medical Healthcare, P.C., Quest Medical Services, P.C., Melbourne Medical, P.C., and Colden Medical, P.C.—was, at all relevant times, ineligible to receive No-Fault reimbursement. *See* 11 NYCRR § 65-3.16(a) (12).

218. At all relevant times, and consistent with the allegations contained in the Indictment, No-Fault payments paid to the Gabinsky PCs were controlled by the Management Defendants.

219. As a result, the Management Defendants—persons not entitled to receive No-Fault reimbursement for professional services—were the direct beneficiaries of the No-Fault proceeds collected by the Gabinsky PCs from Allstate.

F.   **SPECIFIC ALLEGATIONS OF DEFENDANTS' ILLEGAL OPERATION AND CONTROL OF HOLLIS MEDICAL SERVICES, P.C.**

220.   Consistent with the allegations contained in the Indictment, since at least April 2002, Gateva has exercised absolutely no control over the PC in which she acts as the nominal owner: Hollis Medical Services, P.C. ("Hollis Medical").

221.   Rather, all decision-making authority relating to the operation and management of Hollis Medical has been vested exclusively with the Management Defendants.

222.   At all relevant times, the Lawyer Defendants counseled Gateva and the Management Defendants in connection with all aspects of the operation of Hollis Medical.

223.   Gateva never (a) controlled or maintained any of Hollis Medical's corporate books and records; (b) selected, directed and/or controlled any of the individuals or entities that are responsible for handling any aspect of Hollis Medical's business affairs; and (c) hired or supervised any of Hollis Medical's employees or independent contractors.

224.   Gateva is essentially an employee of the Management Defendants.

225.   Every NF-3 form (i.e. bill) mailed to Allstate misrepresented and/or concealed material facts regarding the assertion that Hollis Medical was properly licensed, and therefore, eligible to receive No-Fault benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12).

226.   In fact, Hollis Medical was never eligible for No-Fault benefits because it was (a) unlawfully incorporated, owned and/or controlled by non-physicians; (b) engaged in unlawful fee-splitting with non-physicians, and (c) allegedly owned by a physician who did not practice medicine through the professional corporation.

227. For all of the reasons detailed herein, Hollis Medical was never eligible to receive No-Fault reimbursement under New York law, thus all of the monies paid by Allstate to Hollis Medical are recoverable.

228. Consistent with the allegations set forth in the Indictment, in exchange for a designated salary or other form of compensation, Gateva agreed to falsely represent in the certificates of incorporation filed with the Department of Education that she was the true shareholder, director and officer of Hollis Medical, and that she truly owned, controlled and practiced through this professional service corporation.

229. Throughout the course of Gateva's relationship with the Management Defendants, Gateva has exercised absolutely no control over or ownership interest in Hollis Medical.

230. All decision-making authority relating to the operation and management of Hollis Medical was vested entirely with the Management Defendants.

231. At all relevant times, the ownership and control of Hollis Medical by non-licensed laypersons compromised patient care, as the provision of health services by Hollis Medical was subject to the pecuniary interests of laypersons as opposed to the exercise of independent medical judgment by a true doctor-owner.

232. Because Hollis Medical was fraudulently incorporated and used as a conduit to illegally split fees with non-licensed laypersons, and not operated or controlled by a licensed medical professional, it was, at all relevant times, ineligible as a matter of New York law to receive No-Fault Benefits.

233. From at least April 5, 2002, through the present, true ownership and control of Hollis Medical has rested entirely with the Management Defendants, who used the façade of this PC to do indirectly what they were forbidden from doing directly, namely: (a) employing

physicians and other licensed healthcare professionals; (b) controlling their practices; and (c) charging for (and deriving an economic benefit from) their services.

234.    Since April 5, 2002, Allstate has paid Hollis Medical $304,015.45 for the alleged medical treatment of No-Fault insurance claimants. *See* Exhibit 18, annexed hereto and incorporated herein by reference as if set forth in its entirety.

235.    Because Hollis Medical was operated and controlled in violation of New York law, Hollis Medical was, at all relevant times, ineligible to receive No-Fault reimbursement. *See* 11 NYCRR § 65-3.16(a) (12).

236.    At all relevant times, and consistent with the allegations contained in the Indictment, No-Fault payments paid to Hollis Medical were controlled by the Management Defendants.

237.    As a result, the Management Defendants—persons not entitled to receive No-Fault reimbursement for professional healthcare services—were the direct beneficiaries of the No-Fault proceeds collected by Hollis Medical from Allstate.

### G.    SPECIFIC ALLEGATIONS OF DEFENDANTS' ILLEGAL OPERATION AND CONTROL OF SOUTHERN BOULEVARD MEDICAL, P.C.

238.    Consistent with the allegations contained in the Indictment, Said, at all relevant times, has exercised absolutely no control over the PC in which he acts as the nominal owner: Southern Boulevard Medical Care, P.C.

239.    Said agreed to falsely represent in the certificate of incorporation filed with the Department of Education that he is the sole shareholder, director and officer of Southern Boulevard Medical, and that he truly owns and controls the operations of Southern Boulevard Medical.

240.    Said has never been the true shareholder, director and officer of Southern Boulevard Medical.

241.    Said has no genuine ownership interest in Southern Boulevard Medical.

242.    Throughout the course of his relationship with the Management Defendants, Said has exercised absolutely no control over Southern Boulevard Medical.

243.    All decision-making authority relating to the operation and management of Southern Boulevard Medical has been vested exclusively with the Management Defendants.

244.    Said never (a) controlled or maintained any of Southern Boulevard Medical's corporate books and records; (b) selected, directed and/or controlled any of the individuals or entities that are responsible for handling any aspect of Southern Boulevard Medical's business affairs; and (c) hired or supervised any of Southern Boulevard Medical's employees or independent contractors.

245.    Said is essentially an employee of the Management Defendants.

246.    Because Southern Boulevard Medical was fraudulently incorporated and used as a conduit to illegally split fees with non-licensed laypersons, and not operated or controlled by a licensed medical professional, it was, at all relevant times, ineligible as a matter of New York law to receive No-Fault Benefits.

247.    From at least April 5, 2002 through the present, true ownership and control of Southern Boulevard Medical has rested entirely with the Management Defendants, who used the façade of Southern Boulevard Medical to do indirectly what they were forbidden from doing directly, namely: (a) employing physicians and other licensed healthcare professionals; (b) controlling their practices; and (c) charging for (and deriving an economic benefit from) their services.

248.     Since April 5, 2002, Allstate has paid Southern Boulevard Medical $290,942.10 for the alleged medical treatment of No-Fault insurance claimants. *See* Exhibit 19, annexed hereto and incorporated herein by reference as if set forth in its entirety.

249.     Because Southern Boulevard Medical was operated and controlled in violation of New York law, Southern Boulevard Medical was, at all relevant times, ineligible to receive No-Fault reimbursement. *See* 11 NYCRR § 65-3.16(a) (12).

250.     At all relevant times, and consistent with the allegations contained in the Indictment, No-Fault payments paid to Southern Boulevard Medical were controlled by the Management Defendants.

251.     As a result, the Management Defendants—persons not entitled to receive No-Fault reimbursement for professional services—were the direct beneficiaries of the No-Fault proceeds collected by Southern Boulevard Medical from Allstate.

### H.     SPECIFIC ALLEGATIONS OF DEFENDANTS' ILLEGAL OPERATION AND CONTROL OF WEBSTER DST MEDICAL, P.C.

252.     Consistent with the allegations contained in the Indictment, Thomas, at all relevant times, has exercised absolutely no control over the PC in which he acts as the nominal owner: Webster DST Medical, P.C.

253.     Thomas agreed to falsely represent in the certificate of incorporation filed with the Department of Education that he is the sole shareholder, director and officer of Webster DST, and that he truly owns and controls the operations of Webster DST.

254.     Thomas has never been the true shareholder, director and officer of Webster DST.

255.     Thomas has no genuine ownership interest in Webster DST.

256.    Throughout the course of his relationship with the Management Defendants, Thomas has exercised absolutely no control over Webster DST.

257.    All decision-making authority relating to the operation and management of Webster DST has been vested exclusively with the Management Defendants.

258.    Thomas never (a) controlled or maintained any of Webster DST's corporate books and records; (b) selected, directed and/or controlled any of the individuals or entities that are responsible for handling any aspect of Webster DST's business affairs; and (c) hired or supervised any of Webster DST's employees or independent contractors.

259.    Thomas is essentially an employee of the Management Defendants.

260.    Because Webster DST was fraudulently incorporated and used as a conduit to illegally split fees with non-licensed laypersons, and not operated or controlled by a licensed medical professional, it was, at all relevant times, ineligible as a matter of New York law to receive No-Fault Benefits.

261.    From at least April 5, 2002 through the present, true ownership and control of Webster DST has rested entirely with the Management Defendants, who used the façade of this PCs to do indirectly what they were forbidden from doing directly, namely: (a) employing physicians and other licensed healthcare professionals; (b) controlling their practices; and (c) charging for (and deriving an economic benefit from) their services.

262.    Since April 5, 2002, Allstate has paid Webster DST $18,594.51 for the alleged medical treatment of No-Fault insurance claimants. *See* Exhibit 20, annexed hereto and incorporated herein by reference as if set forth in its entirety.

263.    Because Webster DST was operated and controlled in violation of New York law, Webster DST was, at all relevant times, ineligible to receive No-Fault reimbursement. *See* 11 NYCRR § 65-3.16(a)(12).

264.    At all relevant times, and consistent with the allegations contained in the Indictment, No-Fault payments paid to Webster DST were controlled by the Management Defendants.

265.    As a result, the Management Defendants—persons not entitled to receive No-Fault reimbursement for professional services—were the direct beneficiaries of the No-Fault proceeds collected by Webster DST from Allstate.

### I.    SPECIFIC ALLEGATIONS OF DEFENDANTS' ILLEGAL OPERATION AND CONTROL OF UNITED DIAGNOSTIC IMAGING, P.C.

266.    Consistent with the allegations contained in the Indictment, Shapiro, at all relevant times, has exercised absolutely no control over the PC in which he acts as the nominal owner, United Diagnostic Imaging, P.C.

267.    Shapiro agreed to falsely represent in the certificate of incorporation filed with the Department of Education that he is the sole shareholder, director and officer of United Diagnostic, and that he truly owns and controls the operations of United Diagnostic.

268.    Shapiro has never been the true shareholder, director and officer of United Diagnostic.

269.    Shapiro has no genuine ownership interest in United Diagnostic.

270.    Throughout the course of his relationship with the Management Defendants, Shapiro has exercised absolutely no control over United Diagnostic.

271.    All decision-making authority relating to the operation and management of United Diagnostic has been vested exclusively with the Management Defendants.

272.    Shapiro never (a) controlled or maintained any of United Diagnostic's corporate books and records; (b) selected, directed and/or controlled any of the individuals or entities that are responsible for handling any aspect of United Diagnostic's business affairs; and (c) hired or supervised any of United Diagnostic's employees or independent contractors.

273.    Shapiro is essentially an employee of the Management Defendants.

274.    Because United Diagnostic was fraudulently incorporated and used as a conduit to illegally split fees with non-licensed laypersons, and not operated or controlled by a licensed medical professional, it was, at all relevant times, ineligible as a matter of New York law to receive No-Fault Benefits.

275.    From at least April 5, 2002 through the present, true ownership and control of United Diagnostic has rested entirely with the Management Defendants, who used the façade of this PC to do indirectly what they were forbidden from doing directly, namely: (a) employing physicians and other licensed healthcare professionals; (b) controlling their practices; and (c) charging for (and deriving an economic benefit from) their services.

276.    Since April 5, 2002, Allstate has paid United Diagnostic $3,835,437.70 for the alleged medical treatment of No-Fault insurance claimants. *See* Exhibit 21, annexed hereto and incorporated herein by reference as if set forth in its entirety.

277.    Because United Diagnostic was operated and controlled in violation of New York law, United Diagnostic was, at all relevant times, ineligible to receive No-Fault reimbursement. *See* 11 NYCRR § 65-3.16(a)(12).

278.    At all relevant times, and consistent with the allegations contained in the Indictment, No-Fault payments paid to United Diagnostic were controlled by the Management Defendants.

279.   As a result, the Management Defendants—persons not entitled to receive No-Fault reimbursement for professional services—were the direct beneficiaries of the No-Fault proceeds collected by United Diagnostic from Allstate.

### J.   SPECIFIC ALLEGATIONS OF DEFENDANTS' ILLEGAL OPERATION AND CONTROL OF KALI ACUPUNCTURE, P.C.

280.   Consistent with the allegations contained in the Indictment, Poznansky has exercised absolutely no control over the PC in which he acts as the nominal owner: Kali Acupucture, P.C.

281.   Rather, all decision-making authority relating to the operation and management of Kali has been vested exclusively with the Management Defendants.

282.   Poznansky never (a) controlled or maintained any of Kali's corporate books and records; (b) selected, directed and/or controlled any of the individuals or entities that are responsible for handling any aspect of Kali's business affairs; and (c) hired or supervised any of Kali's employees or independent contractors.

283.   Poznansky is essentially an employee of the Management Defendants.

284.   Every NF-3 form (i.e. bill) mailed to Allstate misrepresented and/or concealed material facts regarding the assertion that Kali was properly licensed, and therefore, eligible to receive No-Fault benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12).

285.   In fact, Kali was never eligible for No-Fault benefits because it was (a) unlawfully incorporated, owned and/or controlled by non-licensed persons; and (b) engaged in unlawful fee-splitting with non-licensed persons.

286.    For all of the reasons detailed herein, Kali was never eligible to receive No-Fault reimbursement under New York law, thus all of the monies paid by Allstate to Kali are recoverable.

287.    Consistent with the allegations set forth in the Indictment, in exchange for a designated salary or other form of compensation, Poznansky agreed to falsely represent in the certificates of incorporation filed with the Department of Education that he was the true shareholder, director and officer of Kali, and that he truly owned, controlled and practiced through this professional service corporation.

288.    Throughout the course of Poznansky's relationship with the Management Defendants, Poznansky has exercised absolutely no control over or ownership interest in Kali.

289.    All decision-making authority relating to the operation and management of Kali was vested entirely with the Management Defendants.

290.    At all relevant times, the ownership and control of Kali by non-licensed laypersons compromised patient care, as the provision of health services by Kali was subject to the pecuniary interests of laypersons as opposed to the exercise of independent judgment of a licensed healthcare professional.

291.    Because Kali was fraudulently incorporated, used as a conduit to illegally split fees with non-licensed laypersons, and not operated or controlled by a licensed healthcare professional, it was, at all relevant times, ineligible as a matter of New York law to receive No-Fault Benefits.

292.    Since April 5, 2002, Allstate has paid Kali $393,304.35 for the purported treatment of No-Fault insurance claimants. *See* Exhibit 22, annexed hereto and incorporated herein by reference as if set forth in its entirety.

293.    Because Kali was operated and controlled in violation of New York law, it was, at all relevant times, ineligible to receive No-Fault reimbursement. *See* 11 NYCRR § 65-3.16(a)(12).

### K.    SPECIFIC ALLEGATIONS OF DEFENDANTS' ILLEGAL OPERATION AND CONTROL OF FIRST CARE CHIROPRACTIC, P.C.

294.    Consistent with the allegations contained in the Indictment, Voytenko has exercised absolutely no control over the PC in which he acts as the nominal owner: First Care Chiropractic, P.C. ("First Care").

295.    Rather, all decision-making authority relating to the operation and management of First Care has been vested exclusively with the Management Defendants.

296.    Voytenko never (a) controlled or maintained any of First Care's corporate books and records; (b) selected, directed and/or controlled any of the individuals or entities that are responsible for handling any aspect of First Care's business affairs; and (c) hired or supervised any of First Care's employees or independent contractors.

297.    Voytenko is essentially an employee of the Management Defendants.

298.    Every NF-3 form (i.e. bill) mailed to Allstate misrepresented and/or concealed material facts regarding the assertion that First Care was properly licensed, and therefore, eligible to receive No-Fault benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12).

299.    In fact, First Care was never eligible for No-Fault benefits because it was (a) unlawfully incorporated, owned and/or controlled by non-licensed persons; and (b) engaged in unlawful fee-splitting with non-licensed persons.

300.    For all of the reasons detailed herein, First Care was never eligible to receive No-Fault reimbursement under New York law, thus all of the monies paid by Allstate to First Care are recoverable.

301.    Consistent with the allegations set forth in the Indictment, in exchange for a designated salary or other form of compensation, Voytenko agreed to falsely represent in the certificates of incorporation filed with the Department of Education that he was the true shareholder, director and officer of First Care, and that he truly owned, controlled and practiced through this professional service corporation.

302.    Throughout the course of Voytenko's relationship with the Management Defendants, Voytenko has exercised absolutely no control over or ownership interest in First Care.

303.    All decision-making authority relating to the operation and management of First Care was vested entirely with the Management Defendants.

304.    At all relevant times, the ownership and control of First Care by non-licensed laypersons compromised patient care, as the provision of health services by First Care was subject to the pecuniary interests of laypersons as opposed to the exercise of independent judgment of a licensed healthcare professional.

305.    Because First Care was fraudulently incorporated, used as a conduit to illegally split fees with non-licensed laypersons, and not operated or controlled by a licensed healthcare professional, it was, at all relevant times, ineligible as a matter of New York law to receive No-Fault Benefits.

306.     Since April 5, 2002, Allstate has paid First Care $399,919.10 for the purported treatment of No-Fault insurance claimants.  *See* Exhibit 23, annexed hereto and incorporated herein by reference as if set forth in its entirety.

307.     Because First Care was operated and controlled in violation of New York law, it was, at all relevant times, ineligible to receive No-Fault reimbursement.  *See* 11 NYCRR § 65-3.16(a)(12).

## L.     SPECIFIC ALLEGATIONS OF DEFENDANTS' ILLEGAL OPERATION AND CONTROL OF CHIROPRACTIC HEALTH PLUS D.S., P.C.

308.     Consistent with the allegations contained in the Indictment, Slobodyansky has exercised absolutely no control over the PC in which he acts as the nominal owner: Chiropractic Health Plus D.S., P.C.

309.     Rather, all decision-making authority relating to the operation and management of Chiropractic Health has been vested exclusively with the Management Defendants.

310.     Slobodyansky never (a) controlled or maintained any of Chiropractic Health's corporate books and records; (b) selected, directed and/or controlled any of the individuals or entities that are responsible for handling any aspect of Chiropractic Health's business affairs; and (c) hired or supervised any of Chiropractic Health's employees or independent contractors.

311.     Slobodyansky is essentially an employee of the Management Defendants.

312.     Every NF-3 form (i.e. bill) mailed to Allstate misrepresented and/or concealed material facts regarding the assertion that Chiropractic Health was properly licensed, and therefore, eligible to receive No-Fault benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12).

313.    In fact, Chiropractic Health was never eligible for No-Fault benefits because it was (a) unlawfully incorporated, owned and/or controlled by non-licensed persons; and (b) engaged in unlawful fee-splitting with non-licensed persons.

314.    For all of the reasons detailed herein, Chiropractic Health was never eligible to receive No-Fault reimbursement under New York law, thus all of the monies paid by Allstate to Chiropractic Health are recoverable.

315.    Consistent with the allegations set forth in the Indictment, in exchange for a designated salary or other form of compensation, Slobodyansky agreed to falsely represent in the certificates of incorporation filed with the Department of Education that he was the true shareholder, director and officer of Chiropractic Health, and that he truly owned, controlled and practiced through this professional service corporation.

316.    Throughout the course of Slobodyansky's relationship with the Management Defendants, Slobodyansky has exercised absolutely no control over or ownership interest in Chiropractic Health.

317.    All decision-making authority relating to the operation and management of Chiropractic Health was vested entirely with the Management Defendants.

318.    At all relevant times, the ownership and control of Chiropractic Health by non-licensed laypersons compromised patient care, as the provision of health services by Chiropractic Health was subject to the pecuniary interests of laypersons as opposed to the exercise of independent judgment of a licensed healthcare professional.

319.    Because Chiropractic Health was fraudulently incorporated, used as a conduit to illegally split fees with non-licensed laypersons, and not operated or controlled by a licensed

healthcare professional, it was, at all relevant times, each ineligible as a matter of New York law to receive No-Fault Benefits.

320.     Since April 5, 2002, Allstate has paid Chiropractic Health $526,912.65 for the purported treatment of No-Fault insurance claimants. *See* Exhibit 24, annexed hereto and incorporated herein by reference as if set forth in its entirety.

321.     Because Chiropractic Health was operated and controlled in violation of New York law, it was, at all relevant times, ineligible to receive No-Fault reimbursement. *See* 11 NYCRR § 65-3.16(a)(12).

## VI.     SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

322.     The defendants created, prepared and submitted false medical documentation and intentionally violated the laws of the United States by devising and intending to devise schemes to defraud and obtain money and property by means of false and fraudulent pretenses in representations, and by placing or causing to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. § 1341 (mail fraud) for the purpose of executing such fraudulent schemes and attempting to do so.

323.     Unless otherwise pled to the contrary, all documents, notes, reports, health insurance claim forms, medical diagnoses, CPT Code tally sheets, referrals, letters and request for payments in connection with the insurance claims referenced throughout this pleading traveled through the U.S. Mail.

324.     Every automobile insurance claim detailed within, involved at least one use of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claims settlement checks and the return of the cancelled settlement drafts to

the financial institution(s) from which the draft(s) were drawn, as well as return of settlement draft duplicates to the insurance carrier's home office for filing.

325. The defendants either personally used the mails to further their fraudulent scheme by causing medical bills and records from illegal clinics to be mailed to Allstate and/or counsel for claimants and/or acted with knowledge that the use of the mails would follow in the ordinary course of business.

326. The defendants fraudulently reported that the clinics were legitimately organized pursuant to the laws of the state of New York.

327. The defendants knew that their offices, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider or the plaintiff would use the mails in connection with each of the fraudulent claims, including issuing payments based upon defendants' fraudulent documentation.

328. Allstate estimates that the defendants' fraudulent medical billing scheme generated hundreds of mailings. A table highlighting selected examples of mail fraud arising from the defendants' patient/business files is annexed hereto at Exhibit 25.

## VII.  DEFENDANTS' LAUNDERING OF NO-FAULT PROCEEDS

329. At all relevant times, defendants engaged in the illegal laundering of No-Fault proceeds collected by the fraudulently-incorporated PC Defendants in violation of 18 U.S.C. § 1956 (laundering of monetary instruments).

330. The defendants conducted a number of transactions involving the No-Fault proceeds collected by the PC Defendants.

331. The PC Defendants transferred substantial sums of No-Fault proceeds to the Non-Licensed Layperson Defendants in violation of 18 U.S.C. § 1956.

332.    At all relevant times, defendants intentionally engaged in—and benefitted from—the money laundering activity described herein.

333.    The defendants intentionally conducted such transactions knowing that the transactions were designed to: (a) promote the carrying on of the defendants' medical billing and fraud scheme; (b) conceal and/or disguise the nature, source, ownership, and/or control of the proceeds of the defendants' medical billing and mail fraud scheme; and (c) evade and defeat transaction and/or tax reporting requirements under federal and state law, including but not limited to, those proscribed under 26 U.S.C. § 7201, *et. seq.*

334.    To maintain and promote the operation of the No-Fault Organization, the actual owners, operators, and controllers of the PC Defendants continuously reinvested a portion of the proceeds of the No-Fault fraud scheme back into the scheme. Generally, proceeds in the form of checks were mailed from automobile insurance companies to the actual owners, operators, and controllers of the PC Defendants, and then deposited into the bank accounts of PC Defendants. Although the signatories on the PC Defendants' accounts were the licensed medical professionals who had incorporated the PC Defendants ("the Nominal PC Owners"), the PC Defendants' accounts were actually controlled by the actual owners, operators, and controllers of the PC Defendants. The actual owners, operators, and controllers of the PC Defendants paid fees and salaries to the Nominal PC Owners from the PC Defendants' accounts for their role in the No-Fault insurance scheme.

335.    Some of the Nominal PC Owners paid kickbacks to other Nominal PC Owners in return for patient referrals. These "kickbacks" were paid by providing checks to the PC Defendants' accounts that were often falsely characterized as "rent" payments for the use of space at the PC Defendant clinics. These "rent" checks had the dual

purpose of satisfying some of the monies owed for kickbacks and also falsely representing to the automobile insurance companies that the business relationship among the PC Defendants was legitimate. Additionally, other expenses of the PC Defendants were sometimes paid by check directly from a PC Defendant account as an additional means of making kickback payments to the actual owners, operators, and controllers of the PC Defendants. Finally, on some occasions, the Nominal PC Owners paid a portion of the kickbacks owed to the actual owners, operators, and controllers of the PC Defendants by structuring checks of less than $10,000 to the actual owners, operators, and controllers of the PC Defendants, who, among other things, provided some of these checks to check cashers to convert to cash.

336. To generate cash from the scheme to satisfy their various kickback obligations, the actual owners, operators, and controllers of the PC Defendants often used check cashers in order both to conceal the source of the proceeds and to reinvest the proceeds into the scheme. Often, the actual owners, operators, and controllers of the PC Defendants wrote blank checks from PC Defendants' accounts in the amount structured to be less than $10,000 to avoid financial reporting requirements, and provided those checks to individuals who would cash the checks with a check casher for up to a 10 percent fee. The check cashers would then return the remainder of the funds in cash to the actual owners, operators, and controllers of the PC Defendants. These monies were then used to pay the actual owners, operators, and controllers of the PC Defendants to satisfy the monies owed for patient referrals, and, in turn, the actual owners, operators, and controllers of the PC Defendants paid the runners in cash for referring patients to the PC Defendants.

337. The actual owners, operators, and controllers of the PC Defendants extracted proceeds of the scheme by concealing the source of those proceeds.

First, after depositing checks from automobile insurance companies into the PC Defendants' accounts, the actual owners, operators, and controllers of the PC Defendants used some of those funds to pay for various personal expenses, including, among other things, jewelry, limousines, and luxury goods. Second, the actual owners, operators, and controllers of the PC Defendants directed checks to be written from the PC Defendants' accounts to certain shell companies controlled by the actual owners, operators, and controllers of the PC Defendants. Money from these shell companies would then be used to pay for various personal expenses, including, among other things, car payments, credit card bills, and lavish vacations. Third, as described above, the actual owners, operators, and controllers of the PC Defendants used check cashers to convert proceeds of the scheme into cash some of which they kept.

338. From at least 2007, defendants, Zemlyansky, Danilovich, Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler, Conroy, Anikeyev, Grinberg, Zaretskiy, Shuman, and Slobodyansky, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate 18 U.S.C. § 1956.

339. It was a part and an object of the conspiracy that Zemlyansky, Danilovich, Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler, Conroy, Anikeyev, Grinberg, Zaretskiy, Shuman, and Slobodyansky, knowing that the property involved in a financial transaction presented the proceeds of unlawful activity, would and did conduct and attempt to conduct financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, health care fraud, mail fraud and conspiracy to commit health care fraud and mail fraud, in violation of 18 U.S.C. §§ 1341, 1347 and 1349, with the intent to promote the carrying on of that specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

340. It was further part and an object of the conspiracy that Zemlyansky, Danilovich, Zayonts, Kremerman, Barukhin, Ostrumsky, Treysler, Conroy, Anikeyev, Grinberg, Zaretskiy, Shuman, and Slobodyansky, knowing that the property involved in a financial transaction represented the proceeds of unlawful activity, would and did conduct and attempt to conduct financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, health care fraud, mail fraud and conspiracy to commit health care fraud and mail fraud, in violation of 18 U.S.C. §§ 1341, 1347 and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of these proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i)

341. At all relevant times, the defendants committed numerous violations of 18 U.S.C. § 1956 in furtherance of the instant medical billing scheme.

## VIII. ALLSTATE'S JUSTIFIABLE RELIANCE

342. Through the submission of medical records, including NF-3 forms, Gabinsky, Gabinskaya, Grzegorczyk, Gateva, Said, Thomas, Shapiro, Poznansky, Voytenko, and Slobodyansky, certified and represented that Big Apple Medical, P.C., Efficient Medical Diagnostic, P.C., Highway Medical Diagnostic, P.C., Bushwick Plaza Medical, P.C., United Medical of Brooklyn, P.C., Friendly Physician, P.C., Farragut Corner Medical, P.C., Hamilton Medical Healthcare, P.C., Quest Medical Services, P.C., Melbourne Medical, P.C., Colden Medical, P.C., Clearview of Brooklyn Medical, P.C., Novacare Medical, P.C., McGuire Medical P.C., Maguire Medical Practice, P.C., Hollis Medical Services, P.C., Southern Boulevard Medical Care, P.C., Webster DST Medical, P.C., United Diagnostic Imaging, P.C., Kali

Acupucture, P.C., First Care Chiropractic, P.C., and Chiropractic Health Plus D.S., P.C. were incorporated and operated in compliance with New York law.

343.   As licensed healthcare professionals, Gabinsky, Gabinskaya, Grzegorczyk, Gateva, Said, Thomas, Shapiro, Poznansky, Voytenko, and Slobodyansky, were obligated— legally and ethically—to act with honesty, integrity, and in accordance with their professional oath and pledge.

344.   Each claim submitted to Allstate by Gabinsky, Gabinskaya, Grzegorczyk, Gateva, Said, Thomas, Shapiro, Poznansky, Voytenko, and Slobodyansky, through their nominally-owned PCs, was verified pursuant to Insurance Law §403.

345.   At the time Gabinsky, Gabinskaya, Grzegorczyk, Gateva, Said, Thomas, Shapiro, Poznansky, Voytenko, and Slobodyansky, through their nominally-owned PCs, submitted patient invoices for payment, Allstate reasonably believed that the actions of Gabinsky, Gabinskaya, Grzegorczyk, Gateva, Said, Thomas, Shapiro, Poznansky, Voytenko, and Slobodyansky conformed to applicable laws, and that each was bound by his or her avowed ethical obligations.

346.   To induce Allstate to promptly pay the charges submitted by Big Apple Medical, P.C., Efficient Medical Diagnostic, P.C., Highway Medical Diagnostic, P.C., Bushwick Plaza Medical, P.C., United Medical of Brooklyn, P.C., Friendly Physician, P.C., Farragut Corner Medical, P.C., Hamilton Medical Healthcare, P.C., Quest Medical Services, P.C., Melbourne Medical, P.C., Colden Medical, P.C., Clearview of Brooklyn Medical, P.C., Novacare Medical, P.C., McGuire Medical P.C., Maguire Medical Practice, P.C., Hollis Medical Services, P.C., Southern Boulevard Medical Care, P.C., Webster DST Medical, P.C., United Diagnostic Imaging, P.C., Kali Acupuncture, P.C., First Care Chiropractic, P.C., and Chiropractic Health Plus D.S., P.C., defendants submitted—or caused to be submitted—to Allstate NF-3 forms which

represented that the clinics were owned and operated by licensed healthcare professionals in compliance with New York law.

347.    Allstate is required, under statutory and contractual obligations, to promptly and fairly process claims within 30 days.

348.    The facially valid documents submitted to Allstate in support of the charges at issue—combined with the material misrepresentations described above—were designed to—and in fact did—induce Allstate to rely on the accuracy of such documents.

349.    In reliance on the representations of Gabinsky, Gabinskaya, Grzegorczyk, Gateva, Said, Thomas, Shapiro, Poznansky, Voytenko, and Slobodyansky, Allstate paid—to its detriment—monies to the entities nominally-owned by these healthcare professionals, entities that were illegally operated and controlled in violation of New York law.  But for the defendants' fraudulent conduct and material misrepresentations, Allstate would not have paid any monies to these entities had Gabinsky, Gabinskaya, Grzegorczyk, Gateva, Said, Thomas, Shapiro, Poznansky, Voytenko, and Slobodyansky, and the PC Defendants provided true and accurate information.

350.    As a result, Allstate paid in excess of $9,995,009.00 based upon the defendants' intentional violation of New York Law.

## IX.    DAMAGES

351.    The defendants' pattern of fraudulent conduct injured Allstate in its business and property by reason of the aforesaid violations of state and federal law.  Although it is not necessary for Allstate to calculate damages with specificity at this stage in the litigation (whereas Allstate's damages continue to accrue), Allstate's injury includes, but is not limited to, compensatory damages for:

(a)     payments in connection with first-party ("No-Fault") claims to the PC Defendants in excess of $9,995,009.00.  See tables annexed hereto at Exhibits 3 – 24.

(b)     expenses incurred to review, adjust, investigate, litigate and pay the false and fraudulent claims created by the defendants and supported defendants' operation of enterprises through a pattern of illegal activity.

## X.     CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### BIG APPLE MEDICAL, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

352.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

353.    In connection with each of the claims submitted by Big Apple Medical, P.C., Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count I Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

354.    The Count I Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

355.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

356.    Policies of insurance were delivered to insureds through the U.S. Mail.

357.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

358.    As documented above, the Count I Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Big Apple Medical, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

359.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Big Apple Medical, P.C., for the benefit of the Count I Defendants, that would not otherwise have been paid.

360.    The Count I Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

361.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

362.    The Count I Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments as discussed in Section VII above.

363.    By filing numerous fraudulent claims in an ongoing scheme, the Count I Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

364.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Big Apple Medical, P.C. for the benefit of the Count I Defendants.

365. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

366. Big Apple Medical, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

367. The Count I Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

368. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count I Defendants' conduct.

369. The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

370. By virtue of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT II
## CONSPIRACY UNDER 18 U.S.C. §1962(d):
## BIG APPLE MEDICAL, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

371. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

372.    Defendants Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count II Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Big Apple Medical, P.C.

373.    The Count II Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Big Apple Medical, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

374.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Big Apple Medical, P.C. even though Big Apple Medical, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

375.    The Count II Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

376.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

377.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count II Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT III
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### EFFICIENT MEDICAL DIAGNOSTIC, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

378.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

379.    In connection with each of the claims submitted by Efficient Medical Diagnostic, P.C., Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count III Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

380.    The Count III Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

381.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

382.    Policies of insurance were delivered to insureds through the U.S. Mail.

383.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

384.    As documented above, the Count III Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Efficient Medical Diagnostic, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

385.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Efficient Medical Diagnostic, P.C., for the benefit of the Count III Defendants, that would not otherwise have been paid.

386.    The Count III Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

387.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

388.    The Count III Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments as discussed in Section VII above.

389.    By filing numerous fraudulent claims in an ongoing scheme, the Count III Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

390.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Efficient Medical Diagnostic, P.C. for the benefit of the Count III Defendants.

391.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

392.    Efficient Medical Diagnostic, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

393.    The Count III Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

394.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count III Defendants' conduct.

395.    The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

396.    By virtue of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IV
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### EFFICIENT MEDICAL DIAGNOSTIC, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

397.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

398.    Defendants Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count IV Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Efficient Medical Diagnostic, P.C.

399.    The Count IV Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Efficient Medical Diagnostic, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

400.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Efficient Medical Diagnostic, P.C. even though Efficient Medical Diagnostic, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

401.    The Count IV Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

402.     Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

403.     By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT V
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### HIGHWAY MEDICAL DIAGNOSTIC, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

404.     Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

405.     In connection with each of the claims submitted by Highway Medical Diagnostic, P.C., Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count V Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

406.    The Count V Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

407.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

408.    Policies of insurance were delivered to insureds through the U.S. Mail.

409.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

410.    As documented above, the Count V Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Highway Medical Diagnostic, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

411.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Highway Medical Diagnostic, P.C., for the benefit of the Count V Defendants, that would not otherwise have been paid.

412.    The Count V Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

413.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

414.   The Count V Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments as discussed in Section VII above.

415.   By filing numerous fraudulent claims in an ongoing scheme, the Count V Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

416.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Highway Medical Diagnostic, P.C. for the benefit of the Count V Defendants.

417.   Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

418.   Highway Medical Diagnostic, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

419.   The Count V Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

420.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count V Defendants' conduct.

421.   The Count V Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

422.   By virtue of the Count V Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims

submitted by them, and others acting in concert with them, together with the costs of suit,

including reasonable attorney's fees.

## COUNT VI
## CONSPIRACY UNDER 18 U.S.C. §1962(d):
## HIGHWAY MEDICAL DIAGNOSTIC, P.C. ENTERPRISE
(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)

423.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth

above as if fully set forth herein.

424.    Defendants Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy,

Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler,

Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count VI

Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of

Highway Medical Diagnostic, P.C.

425.    The Count VI Defendants agreed to participate in a conspiracy to violate 18

U.S.C. § 1962(c) by agreeing to conduct the affairs of Highway Medical Diagnostic, P.C. by

means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in

Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim

documents, including NF-3 forms, to Allstate.

426.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on

behalf of Highway Medical Diagnostic, P.C. even though Highway Medical Diagnostic, P.C., as

a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

427. The Count VI Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

428. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

429. By virtue of this violation of 18 U.S.C. § 1962(d), the Count VI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT VII
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### BUSHWICK PLAZA MEDICAL, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

430. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

431. In connection with each of the claims submitted by Bushwick Plaza Medical, P.C., Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count VII Defendants")

intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

432.    The Count VII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

433.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

434.    Policies of insurance were delivered to insureds through the U.S. Mail.

435.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

436.    As documented above, the Count VII Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Bushwick Plaza Medical, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

437.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Bushwick Plaza Medical, P.C., for the benefit of the Count VII Defendants, that would not otherwise have been paid.

438.    The Count VII Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

439.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

440.    The Count VII Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments as discussed in Section VII above.

441.    By filing numerous fraudulent claims in an ongoing scheme, the Count VII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

442.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Bushwick Plaza Medical, P.C. for the benefit of the Count VII Defendants.

443.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

444.    Bushwick Plaza Medical, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

445.    The Count VII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

446.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count VII Defendants' conduct.

447.    The Count VII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

448.    By virtue of the Count VII Defendants' violations of 18 U.S.C. § 1962(c), Allstate

is entitled to recover from them three times the damages sustained by reason of the claims

submitted by them, and others acting in concert with them, together with the costs of suit,

including reasonable attorney's fees.

### COUNT VIII
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### BUSHWICK PLAZA MEDICAL, P.C. ENTERPRISE
(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts,
Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail
Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy,
Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark
Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)

449.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth

above as if fully set forth herein.

450.    Defendants Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy,

Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler,

Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count VIII

Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of

Bushwick Plaza Medical, P.C.

451.    The Count VIII Defendants agreed to participate in a conspiracy to violate 18

U.S.C. § 1962(c) by agreeing to conduct the affairs of Bushwick Plaza Medical, P.C. by means

of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit

25, and through the preparation and/or submission of fraudulent insurance claim documents,

including NF-3 forms, to Allstate.

452.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on

behalf of Bushwick Plaza Medical, P.C. even though Bushwick Plaza Medical, P.C., as a result

of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

453.    The Count VIII Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

454.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

455.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count VIII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT IX**
**VIOLATIONS OF 18 U.S.C. §1962(c)**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:**
**UNITED MEDICAL OF BROOKLYN, P.C. ENTERPRISE**
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

456.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

457.    In connection with each of the claims submitted by United Medical of Brooklyn, P.C., Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count IX Defendants")

intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

458. The Count IX Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

459. Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

460. Policies of insurance were delivered to insureds through the U.S. Mail.

461. Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

462. As documented above, the Count IX Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at United Medical of Brooklyn, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

463. As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to United Medical of Brooklyn, P.C., for the benefit of the Count IX Defendants, that would not otherwise have been paid.

464. The Count IX Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

465. The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

466. The Count IX Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments as discussed in Section VII above.

467. By filing numerous fraudulent claims in an ongoing scheme, the Count IX Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

468. The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to United Medical of Brooklyn, P.C. for the benefit of the Count IX Defendants.

469. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

470. United Medical of Brooklyn, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

471. The Count IX Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

472. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count IX Defendants' conduct.

473. The Count IX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

474.    By virtue of the Count IX Defendants' violations of 18 U.S.C. § 1962(c), Allstate

is entitled to recover from them three times the damages sustained by reason of the claims

submitted by them, and others acting in concert with them, together with the costs of suit,

including reasonable attorney's fees.

## COUNT X
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### UNITED MEDICAL OF BROOKLYN, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

475.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth

above as if fully set forth herein.

476.    Defendants Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy,

Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler,

Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count X

Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of

United Medical of Brooklyn, P.C.

477.    The Count X Defendants agreed to participate in a conspiracy to violate 18 U.S.C.

§ 1962(c) by agreeing to conduct the affairs of United Medical of Brooklyn, P.C. by means of a

pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25,

and through the preparation and/or submission of fraudulent insurance claim documents,

including NF-3 forms, to Allstate.

478.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on

behalf of United Medical of Brooklyn, P.C. even though United Medical of Brooklyn, P.C., as a

result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

479. The Count X Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

480. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

481. By virtue of this violation of 18 U.S.C. § 1962(d), the Count X Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XI**
**VIOLATIONS OF 18 U.S.C. §1962(c)**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:**
**FRIENDLY PHYSICIAN, P.C. ENTERPRISE**
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

482. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

483. In connection with each of the claims submitted by Friendly Physician, P.C., Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XI Defendants")

intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

484. The Count XI Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

485. Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

486. Policies of insurance were delivered to insureds through the U.S. Mail.

487. Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

488. As documented above, the Count XI Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Friendly Physician, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

489. As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Friendly Physician, P.C., for the benefit of the Count XI Defendants, that would not otherwise have been paid.

490. The Count XI Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

491. The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

492. The Count XI Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments as discussed in Section VII above.

493. By filing numerous fraudulent claims in an ongoing scheme, the Count XI Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

494. The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Friendly Physician, P.C. for the benefit of the Count XI Defendants.

495. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

496. Friendly Physician, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

497. The Count XI Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

498. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XI Defendants' conduct.

499. The Count XI Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

500.     By virtue of the Count XI Defendants' violations of 18 U.S.C. § 1962(c), Allstate

is entitled to recover from them three times the damages sustained by reason of the claims

submitted by them, and others acting in concert with them, together with the costs of suit,

including reasonable attorney's fees.

**COUNT XII**
**CONSPIRACY UNDER 18 U.S.C. §1962(d):**
**FRIENDLY PHYSICIAN, P.C. ENTERPRISE**
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts,**
**Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail**
**Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy,**
**Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark**
**Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

501.     Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth

above as if fully set forth herein.

502.     Defendants Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy,

Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler,

Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XII

Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of

Friendly Physician, P.C.

503.     The Count XII Defendants agreed to participate in a conspiracy to violate 18

U.S.C. § 1962(c) by agreeing to conduct the affairs of Friendly Physician, P.C. by means of a

pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25,

and through the preparation and/or submission of fraudulent insurance claim documents,

including NF-3 forms, to Allstate.

504. The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Friendly Physician, P.C. even though Friendly Physician, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

505. The Count XII Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

506. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

507. By virtue of this violation of 18 U.S.C. § 1962(d), the Count XII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XIII
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### FARRAGUT CORNER MEDICAL, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

508. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

509. In connection with each of the claims submitted by Farragut Corner Medical, P.C., Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin,

Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XIII Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

510.    The Count XIII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

511.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

512.    Policies of insurance were delivered to insureds through the U.S. Mail.

513.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

514.    As documented above, the Count XIII Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Farragut Corner Medical, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

515.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Farragut Corner Medical, P.C., for the benefit of the Count XIII Defendants, that would not otherwise have been paid.

516. The Count XIII Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

517. The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

518. The Count XIII Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

519. By filing numerous fraudulent claims in an ongoing scheme, the Count XIII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

520. The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Farragut Corner Medical, P.C. for the benefit of the Count XIII Defendants.

521. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

522. Farragut Corner Medical, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

523. The Count XIII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

524.     Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or

property by reason of the Count XIII Defendants' conduct.

525.     The Count XIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the

direct and proximate cause of Allstate's injury.

526.     By virtue of the Count XIII Defendants' violations of 18 U.S.C. § 1962(c),

Allstate is entitled to recover from them three times the damages sustained by reason of the

claims submitted by them, and others acting in concert with them, together with the costs of suit,

including reasonable attorney's fees.

### COUNT XIV
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### FARRAGUT CORNER MEDICAL, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

527.     Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth

above as if fully set forth herein.

528.     Defendants Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy,

Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler,

Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XIV

Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of

Farragut Corner Medical, P.C.

529.     The Count XIV Defendants agreed to participate in a conspiracy to violate 18

U.S.C. § 1962(c) by agreeing to conduct the affairs of Farragut Corner Medical, P.C. by means

of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit

25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

530. The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Farragut Corner Medical, P.C. even though Farragut Corner Medical, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

531. The Count XIV Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

532. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

533. By virtue of this violation of 18 U.S.C. § 1962(d), the Count XIV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XV
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### HAMILTON MEDICAL HEALTHCARE, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

534. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

535.   In connection with each of the claims submitted by Hamilton Medical Healthcare, P.C., Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XV Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

536.   The Count XV Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

537.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

538.   Policies of insurance were delivered to insureds through the U.S. Mail.

539.   Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

540.   As documented above, the Count XV Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Hamilton Medical Healthcare, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

541.   As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Hamilton Medical

Healthcare, P.C., for the benefit of the Count XV Defendants, that would not otherwise have been paid.

542.    The Count XV Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

543.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

544.    The Count XV Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

545.    By filing numerous fraudulent claims in an ongoing scheme, the Count XV Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

546.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Hamilton Medical Healthcare, P.C. for the benefit of the Count XV Defendants.

547.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

548.    Hamilton Medical Healthcare, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

549.    The Count XV Defendants associated with the foregoing enterprise, and

participated—both directly and indirectly—in the conduct of this enterprise through a pattern of

racketeering activities.

550.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or

property by reason of the Count XV Defendants' conduct.

551.    The Count XV Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the

direct and proximate cause of Allstate's injury.

552.    By virtue of the Count XV Defendants' violations of 18 U.S.C. § 1962(c),

Allstate is entitled to recover from them three times the damages sustained by reason of the

claims submitted by them, and others acting in concert with them, together with the costs of suit,

including reasonable attorney's fees.

**COUNT XVI**
**CONSPIRACY UNDER 18 U.S.C. §1962(d):**
**HAMILTON MEDICAL HEALTHCARE, P.C. ENTERPRISE**
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts,**
**Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail**
**Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy,**
**Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark**
**Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

553.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth

above as if fully set forth herein.

554.    Defendants Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy,

Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler,

Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XVI

Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of

Hamilton Medical Healthcare, P.C.

555.    The Count XVI Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Hamilton Medical Healthcare, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

556.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Hamilton Medical Healthcare, P.C. even though Hamilton Medical Healthcare, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

557.    The Count XVI Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

558.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

559.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count XVI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XVII
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### QUEST MEDICAL SERVICES, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

560. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

561. In connection with each of the claims submitted by Quest Medical Services, P.C., Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XVII Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

562. The Count XVII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

563. Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

564. Policies of insurance were delivered to insureds through the U.S. Mail.

565. Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

566.     As documented above, the Count XVII Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Quest Medical Services, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

567.     As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Quest Medical Services, P.C., for the benefit of the Count XVII Defendants, that would not otherwise have been paid.

568.     The Count XVII Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

569.     The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

570.     The Count XVII Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

571.     By filing numerous fraudulent claims in an ongoing scheme, the Count XVII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

572.     The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Quest Medical Services, P.C. for the benefit of the Count XVII Defendants.

573.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

574.    Quest Medical Services, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

575.    The Count XVII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

576.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XVII Defendants' conduct.

577.    The Count XVII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

578.    By virtue of the Count XVII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XVIII
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### QUEST MEDICAL SERVICES, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

579.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

580.    Defendants Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XVIII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Quest Medical Services, P.C.

581.    The Count XVIII Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Quest Medical Services, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

582.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Quest Medical Services, P.C. even though Quest Medical Services, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

583.    The Count XVIII Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

584.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

585.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count XVIII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XIX
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### MELBOURNE MEDICAL, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

586.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

587.    In connection with each of the claims submitted by Melbourne Medical, P.C., Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XIX Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

588.    The Count XIX Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

589.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

590.    Policies of insurance were delivered to insureds through the U.S. Mail.

591.     Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

592.     As documented above, the Count XIX Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Melbourne Medical, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

593.     As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Melbourne Medical, P.C., for the benefit of the Count XIX Defendants, that would not otherwise have been paid.

594.     The Count XIX Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

595.     The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

596.     The Count XIX Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

597.     By filing numerous fraudulent claims in an ongoing scheme, the Count XIX Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

598.     The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Melbourne Medical, P.C. for the benefit of the Count XIX Defendants.

599.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

600.    Melbourne Medical, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

601.    The Count XIX Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

602.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XIX Defendants' conduct.

603.    The Count XIX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

604.    By virtue of the Count XIX Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XX
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### MELBOURNE MEDICAL, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

605.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

98

606.    Defendants Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XX Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Melbourne Medical, P.C.

607.    The Count XX Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Melbourne Medical, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

608.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Melbourne Medical, P.C. even though Melbourne Medical, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

609.    The Count XX Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

610.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

611.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count XX Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXI
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### COLDEN MEDICAL, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

612.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

613.    In connection with each of the claims submitted by Colden Medical, P.C., Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXI Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

614.    The Count XXI Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

615.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

616.    Policies of insurance were delivered to insureds through the U.S. Mail.

617.   Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

618.   As documented above, the Count XXI Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Colden Medical, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

619.   As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Colden Medical, P.C., for the benefit of the Count XXI Defendants, that would not otherwise have been paid.

620.   The Count XXI Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

621.   The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

622.   The Count XXI Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

623.   By filing numerous fraudulent claims in an ongoing scheme, the Count XXI Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

624.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Colden Medical, P.C. for the benefit of the Count XXI Defendants.

625.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

626.    Colden Medical, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

627.    The Count XXI Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

628.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXI Defendants' conduct.

629.    The Count XXI Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

630.    By virtue of the Count XXI Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XXII
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### COLDEN MEDICAL, P.C. ENTERPRISE
**(Against Sergey Gabinsky, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

631.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

632.    Defendants Gabinsky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Colden Medical, P.C.

633.    The Count XXII Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Colden Medical, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

634.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Colden Medical, P.C. even though Colden Medical, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

635.    The Count XXII Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

636.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

637.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXIII
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### CLEARVIEW OF BROOKLYN MEDICAL, P.C. ENTERPRISE
**(Against Tatyana Gabinskaya, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

638.     Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

639.     In connection with each of the claims submitted by Clearview of Brooklyn Medical, P.C., Gabinskaya, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXIII Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

640.     The Count XXIII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

641.     Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

642.     Policies of insurance were delivered to insureds through the U.S. Mail.

643.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

644.    As documented above, the Count XXIII Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Clearview of Brooklyn Medical, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

645.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Clearview of Brooklyn Medical, P.C., for the benefit of the Count XXIII Defendants, that would not otherwise have been paid.

646.    The Count XXIII Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

647.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

648.    The Count XXIII Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

649.    By filing numerous fraudulent claims in an ongoing scheme, the Count XXIII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

650.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Clearview of Brooklyn Medical, P.C. for the benefit of the Count XXIII Defendants.

651.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

652.    Clearview of Brooklyn Medical, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

653.    The Count XXIII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

654.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXI Defendants' conduct.

655.    The Count XXIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

656.    By virtue of the Count XXIII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXIV
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### CLEARVIEW OF BROOKLYN MEDICAL, P.C. ENTERPRISE
(Against Tatyana Gabinskaya, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)

657.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

658.    Defendants Gabinskaya, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXIV Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Clearview of Brooklyn Medical, P.C.

659.    The Count XXIV Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Clearview of Brooklyn Medical, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

660.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Clearview of Brooklyn Medical, P.C., even though Clearview of Brooklyn Medical, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

661.    The Count XXIV Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

662.     Allstate has been injured in its business and property by reason of this

conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a

result of the defendants' unlawful conduct described herein.

663.     By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXIV Defendants

are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the

defendants identified, three times the damages sustained by reason of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including

reasonable attorney's fees.

**COUNT XXV**
**VIOLATIONS OF 18 U.S.C. §1962(c)**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:**
**NOVACARE MEDICAL, P.C. ENTERPRISE**
**(Against Tatyana Gabinskaya, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy**
**Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail**
**Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy,**
**Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark**
**Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

664.     Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth

above as if fully set forth herein.

665.     In connection with each of the claims submitted by Novacare Medical, P.C.,

Gabinskaya, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin,

Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan,

Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXV Defendants")

intentionally caused to be prepared and mailed false medical documentation in connection with

Allstate insurance claims, in furtherance of their scheme to defraud.

666.     The Count XXV Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

667.     Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

668.     Policies of insurance were delivered to insureds through the U.S. Mail.

669.     Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

670.     As documented above, the Count XXV Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Novacare Medical, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

671.     As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Novacare Medical, P.C., for the benefit of the Count XXV Defendants, that would not otherwise have been paid.

672.     The Count XXV Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

673.     The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

674.     The Count XXV Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

675.     By filing numerous fraudulent claims in an ongoing scheme, the Count XXV Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

676.     The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Novacare Medical, P.C. for the benefit of the Count XXV Defendants.

677.     Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

678.     Novacare Medical, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

679.     The Count XXV Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

680.     Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXV Defendants' conduct.

681.     The Count XXV Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

682.     By virtue of the Count XXV Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the

claims submitted by them, and others acting in concert with them, together with the costs of suit,

including reasonable attorney's fees.

### COUNT XXVI
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### NOVACARE MEDICAL, P.C. ENTERPRISE
**(Against Tatyana Gabinskaya, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

683.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth

above as if fully set forth herein.

684.    Defendants Gabinskaya, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy,

Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler,

Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXVI

Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of

Novacare Medical, P.C.

685.    The Count XXVI Defendants agreed to participate in a conspiracy to violate 18

U.S.C. § 1962(c) by agreeing to conduct the affairs of Novacare Medical, P.C. by means of a

pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25,

and through the preparation and/or submission of fraudulent insurance claim documents,

including NF-3 forms, to Allstate.

686.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on

behalf of Novacare Medical, P.C., even though Novacare Medical, P.C., as a result of

defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

687.     The Count XXVI Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

688.     Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

689.     By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXVI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXVII
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### McGUIRE MEDICAL, P.C. ENTERPRISE
**(Against Lauretta Grzegorczyk, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

690.     Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

691.     In connection with each of the claims submitted by McGuire Medical, P.C., Grzegorczyk, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXVII Defendants")

intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

692.    The Count XXVII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

693.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

694.    Policies of insurance were delivered to insureds through the U.S. Mail.

695.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

696.    As documented above, the Count XXVII Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at McGuire Medical P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

697.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to McGuire Medical P.C., for the benefit of the Count XXVII Defendants, that would not otherwise have been paid.

698.    The Count XXVII Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

699.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

700.    The Count XXVII Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

701.    By filing numerous fraudulent claims in an ongoing scheme, the Count XXVII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

702.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to McGuire Medical P.C. for the benefit of the Count XXVII Defendants.

703.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

704.    McGuire Medical P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

705.    The Count XXVII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

706.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXVII Defendants' conduct.

707.    The Count XXVII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

708.   By virtue of the Count XXVII Defendants' violations of 18 U.S.C. § 1962(c),

Allstate is entitled to recover from them three times the damages sustained by reason of the

claims submitted by them, and others acting in concert with them, together with the costs of suit,

including reasonable attorney's fees.

**COUNT XXVIII**
**CONSPIRACY UNDER 18 U.S.C. §1962(d):**
**McGUIRE MEDICAL, P.C. ENTERPRISE**
**(Against Lauretta Grzegorczyk, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy**
**Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail**
**Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy,**
**Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark**
**Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

709.   Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth

above as if fully set forth herein.

710.   Defendants Grzegorczyk, Zemlyansky, Danilovich, Zayonts, Kremerman,

Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman,

Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively

"Count XXVIII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through

the operation of McGuire Medical P.C.

711.   The Count XXVIII Defendants agreed to participate in a conspiracy to violate 18

U.S.C. § 1962(c) by agreeing to conduct the affairs of McGuire Medical P.C. by means of a

pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25,

and through the preparation and/or submission of fraudulent insurance claim documents,

including NF-3 forms, to Allstate.

712.   The purpose of the conspiracy was to obtain No-Fault payments from Allstate on

behalf of McGuire Medical P.C., even though McGuire Medical P.C., as a result of defendants'

unlawful conduct, was not eligible to collect such No-Fault payments.

713.    The Count XXVIII Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

714.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

715.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXVIII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXIX**
**VIOLATIONS OF 18 U.S.C. §1962(c)**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:**
**MAGUIRE MEDICAL PRACTICE, P.C. ENTERPRISE**
**(Against Lauretta Grzegorczyk, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

716.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

717.    In connection with each of the claims submitted by Maguire Medical Practice, P.C., Grzegorczyk, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXIX Defendants")

intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

718. The Count XXIX Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

719. Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

720. Policies of insurance were delivered to insureds through the U.S. Mail.

721. Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

722. As documented above, the Count XXIX Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Maguire Medical Practice, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

723. As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Maguire Medical Practice, P.C., for the benefit of the Count XXIX Defendants, that would not otherwise have been paid.

724. The Count XXIX Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

725. The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

726. The Count XXIX Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

727. By filing numerous fraudulent claims in an ongoing scheme, the Count XXIX Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

728. The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Maguire Medical Practice, P.C. for the benefit of the Count XXIX Defendants.

729. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

730. Maguire Medical Practice, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

731. The Count XXIX Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

732. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXIX Defendants' conduct.

733. The Count XXIX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

734. By virtue of the Count XXIX Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXX**
**CONSPIRACY UNDER 18 U.S.C. §1962(d):**
**MAGUIRE MEDICAL PRACTICE, P.C. ENTERPRISE**
**(Against Lauretta Grzegorczyk, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

735. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

736. Defendants Grzegorczyk, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXX Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Maguire Medical Practice, P.C.

737. The Count XXX Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Maguire Medical Practice, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

738. The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Maguire Medical Practice, P.C., even though Maguire Medical Practice, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

739. The Count XXX Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

740. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

741. By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXX Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XXXI
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### HOLLIS MEDICAL SERVICES, P.C. ENTERPRISE
**(Against Eva Gateva, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

742. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

743. In connection with each of the claims submitted by Hollis Medical Services, P.C., Gateva, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky,

Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXXI Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

744. The Count XXXI Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

745. Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

746. Policies of insurance were delivered to insureds through the U.S. Mail.

747. Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

748. As documented above, the Count XXXI Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Hollis Medical Services, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

749. As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Hollis Medical Services, P.C., for the benefit of the Count XXXI Defendants, that would not otherwise have been paid.

750.    The Count XXXI Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

751.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

752.    The Count XXXI Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

753.    By filing numerous fraudulent claims in an ongoing scheme, the Count XXXI Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

754.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Hollis Medical Services, P.C. for the benefit of the Count XXXI Defendants.

755.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

756.    Hollis Medical Services, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

757.    The Count XXXI Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

758.     Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXXI Defendants' conduct.

759.     The Count XXXI Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

760.     By virtue of the Count XXXI Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXXII
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### HOLLIS MEDICAL SERVICES, P.C. ENTERPRISE
(Against Eva Gateva, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)

761.     Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

762.     Defendants Gateva, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXXII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Hollis Medical Services, P.C.

763.     The Count XXXII Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Hollis Medical Services, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit

25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

764.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Hollis Medical Services, P.C., even though Hollis Medical Services, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

765.    The Count XXXII Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

766.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

767.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXXII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XXXIII
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### SOUTHERN BOULEVARD MEDICAL CARE, P.C. ENTERPRISE
**(Against Zuheir Said, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

768.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

124

769.    In connection with each of the claims submitted by Southern Boulevard Medical Care, P.C., Said, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXXIII Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

770.    The Count XXXIII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

771.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

772.    Policies of insurance were delivered to insureds through the U.S. Mail.

773.    Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

774.    As documented above, the Count XXXIII Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Southern Boulevard Medical Care, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

775.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Southern Boulevard

Medical Care, P.C., for the benefit of the Count XXXIII Defendants, that would not otherwise have been paid.

776. The Count XXXIII Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

777. The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

778. The Count XXXIII Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

779. By filing numerous fraudulent claims in an ongoing scheme, the Count XXXIII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

780. The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Southern Boulevard Medical Care, P.C. for the benefit of the Count XXXIII Defendants.

781. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

782. Southern Boulevard Medical Care, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

783. The Count XXXIII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

784. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXXIII Defendants' conduct.

785. The Count XXXIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

786. By virtue of the Count XXXIII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXXIV**
**CONSPIRACY UNDER 18 U.S.C. §1962(d):**
**SOUTHERN BOULEVARD MEDICAL CARE, P.C. ENTERPRISE**
**(Against Zuheir Said, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts,**
**Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail**
**Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy,**
**Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark**
**Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

787. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

788. Defendants Said, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXXIV Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Southern Boulevard Medical Care, P.C.

789.    The Count XXXIV Defendants agreed to participate in a conspiracy to violate 18

U.S.C. § 1962(c) by agreeing to conduct the affairs of Southern Boulevard Medical Care, P.C. by

means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in

Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim

documents, including NF-3 forms, to Allstate.

790.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on

behalf of Southern Boulevard Medical Care, P.C., even though Southern Boulevard Medical

Care, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault

payments.

791.    The Count XXXIV Defendants were aware of this purpose, and agreed to take

steps to meet the conspiracy's objectives, including the creation of insurance claim documents

containing material misrepresentations and/or material omissions.

792.    Allstate has been injured in its business and property by reason of this

conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a

result of the defendants' unlawful conduct described herein.

793.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXXIV Defendants

are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the

defendants identified, three times the damages sustained by reason of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including

reasonable attorney's fees.

## COUNT XXXV
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### WEBSTER DST MEDICAL, P.C. ENTERPRISE
**(Against David Sanni Thomas, D.O., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

794.     Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

795.     In connection with each of the claims submitted by Webster DST Medical, P.C., Thomas, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXXV Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

796.     The Count XXXV Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

797.     Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

798.     Policies of insurance were delivered to insureds through the U.S. Mail.

799.     Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

800.    As documented above, the Count XXXV Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at Webster DST Medical, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

801.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Webster DST Medical, P.C., for the benefit of the Count XXXV Defendants, that would not otherwise have been paid.

802.    The Count XXXV Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

803.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

804.    The Count XXXV Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

805.    By filing numerous fraudulent claims in an ongoing scheme, the Count XXXV Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

806.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Webster DST Medical, P.C. for the benefit of the Count XXXV Defendants.

807.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere

have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

808.    Webster DST Medical, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

809.    The Count XXXV Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

810.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXXV Defendants' conduct.

811.    The Count XXXV Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

812.    By virtue of the Count XXXV Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXXVI
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### WEBSTER DST MEDICAL, P.C. ENTERPRISE
**(Against David Sanni Thomas, D.O., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

813.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

814.    Defendants Thomas, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler,

Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXXVI Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Webster DST Medical, P.C.

815. The Count XXXVI Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Webster DST Medical, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

816. The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Webster DST Medical, P.C., even though Webster DST Medical, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

817. The Count XXXVI Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

818. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

819. By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXXVI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXXVII
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### UNITED DIAGNOSTIC IMAGING, P.C. ENTERPRISE
**(Against Mark Shapiro, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

820. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

821. In connection with each of the claims submitted by United Diagnostic Imaging, P.C., Shapiro, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXXVII Defendants") intentionally caused to be prepared and mailed false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

822. The Count XXXVII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

823. Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

824. Policies of insurance were delivered to insureds through the U.S. Mail.

825. Medical reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

826.     As documented above, the Count XXXVII Defendants repeatedly and intentionally submitted NF-3 forms and other medical documentation to Allstate for medical expenses and/or services that were purportedly performed at United Diagnostic Imaging, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

827.     As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to United Diagnostic Imaging, P.C., for the benefit of the Count XXXVII Defendants, that would not otherwise have been paid.

828.     The Count XXXVII Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

829.     The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

830.     The Count XXXVII Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

831.     By filing numerous fraudulent claims in an ongoing scheme, the Count XXXVII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

832.     The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to United Diagnostic Imaging, P.C. for the benefit of the Count XXXVII Defendants.

833.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

834.    United Diagnostic Imaging, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

835.    The Count XXXVII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

836.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXXVII Defendants' conduct.

837.    The Count XXXVII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

838.    By virtue of the Count XXXVII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XXXVIII
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### UNITED DIAGNOSTIC IMAGING, P.C. ENTERPRISE
**(Against Mark Shapiro, M.D., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

839.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

840.     Defendants Shapiro, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXXVIII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of United Diagnostic Imaging, P.C.

841.     The Count XXXVIII Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of United Diagnostic Imaging, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

842.     The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of United Diagnostic Imaging, P.C., even though United Diagnostic Imaging, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

843.     The Count XXXVIII Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

844.     Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

845.     By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXXVIII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims

submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXXIX
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### KALI ACUPUNCTURE, P.C. ENTERPRISE
**(Against Pavel Poznansky, L.Ac., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

846.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

847.    In connection with each of the claims submitted by Kali Acupuncture, P.C., Poznansky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XXXIX Defendants") intentionally caused to be prepared and mailed false healthcare documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

848.    The Count XXXIX Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

849.    Among other things, NF-3 forms, acupuncture billing invoices, acupuncture reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

850.    Policies of insurance were delivered to insureds through the U.S. Mail.

851.    Acupuncture reports and invoices were delivered to Allstate through the U.S. Mail.  Payments to defendants traveled via the U.S. Mail.

852.    As documented above, the Count XXXIX Defendants repeatedly and intentionally submitted NF-3 forms and other healthcare documentation to Allstate for acupuncture expenses and/or services that were purportedly performed at Kali Acupuncture, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

853.    As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Kali Acupuncture, P.C., for the benefit of the Count XXXIX Defendants, that would not otherwise have been paid.

854.    The Count XXXIX Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

855.    The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

856.    The Count XXXIX Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

857.    By filing numerous fraudulent claims in an ongoing scheme, the Count XXXIX Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

858.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Kali Acupuncture, P.C. for the benefit of the Count XXXIX Defendants.

859.     Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

860.     Kali Acupuncture, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

861.     The Count XXXIX Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

862.     Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXXIX Defendants' conduct.

863.     The Count XXXIX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

864.     By virtue of the Count XXXIX Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XL
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### KALI ACUPUNCTURE, P.C. ENTERPRISE
**(Against Pavel Poznansky, L.Ac., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

865.     Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

866. Defendants Poznansky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XL Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation Kali Acupuncture, P.C.

867. The Count XL Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Kali Acupuncture, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

868. The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Kali Acupuncture, P.C., even though Kali Acupuncture, P.C. as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

869. The Count XL Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

870. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

871. By virtue of this violation of 18 U.S.C. § 1962(d), the Count XL Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XLI
### VIOLATIONS OF 18 U.S.C. §1962(c)
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:
### FIRST CARE CHIROPRACTIC, P.C. ENTERPRISE
**(Against Constantine Voytenko, D.C., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

872.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

873.    In connection with each of the claims submitted by First Care Chiropractic, P.C., Voytenko, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XLI Defendants") intentionally caused to be prepared and mailed false healthcare documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

874.    The Count XLI Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

875.    Among other things, NF-3 forms, chiropractic billing invoices, chiropractic reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

876.    Policies of insurance were delivered to insureds through the U.S. Mail.

877. Chiropractic reports and invoices were delivered to Allstate through the U.S. Mail. Payments to defendants traveled via the U.S. Mail.

878. As documented above, the Count XLI Defendants repeatedly and intentionally submitted NF-3 forms and other healthcare documentation to Allstate for chiropractic expenses and/or services that were purportedly performed at First Care Chiropractic, P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

879. As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to First Care Chiropractic, P.C., for the benefit of the Count XLI Defendants, that would not otherwise have been paid.

880. The Count XLI Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

881. The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

882. The Count XLI Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

883. By filing numerous fraudulent claims in an ongoing scheme, the Count XLI Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

884. The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to First Care Chiropractic, P.C. for the benefit of the Count XLI Defendants.

885. Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

886. First Care Chiropractic, P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

887. The Count XLI Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

888. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XLI Defendants' conduct.

889. The Count XLI Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

890. By virtue of the Count XLI Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XLII
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### FIRST CARE CHIROPRACTIC, P.C. ENTERPRISE
**(Against Constantine Voytenko, D.C., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

891. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

892. Defendants Voytenko, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XLII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of First Care Chiropractic, P.C.

893. The Count XLII Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of First Care Chiropractic, P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

894. The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of First Care Chiropractic, P.C., even though First Care Chiropractic, P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

895. The Count XLII Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

896.    Allstate has been injured in its business and property by reason of this

conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a

result of the defendants' unlawful conduct described herein.

897.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count XLII Defendants are

jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the

defendants identified, three times the damages sustained by reason of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including

reasonable attorney's fees.

**COUNT XLIII**
**VIOLATIONS OF 18 U.S.C. §1962(c)**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT:**
**CHIROPRACTIC HEALTH PLUS D.S., P.C. ENTERPRISE**
**(Against Dmitry Slobodyansky, D.C., Mikhail Zemlyansky, Michael Danilovich, Yuriy**
**Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail**
**Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy,**
**Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark**
**Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)**

898.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth

above as if fully set forth herein.

899.    In connection with each of the claims submitted by Chiropractic Health Plus D.S.,

P.C., Slobodyansky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin,

Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan,

Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XLIII Defendants")

intentionally caused to be prepared and mailed false healthcare documentation in connection

with Allstate insurance claims, in furtherance of their scheme to defraud.

900.     The Count XLIII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

901.     Among other things, NF-3 forms, chiropractic billing invoices, chiropractic reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

902.     Policies of insurance were delivered to insureds through the U.S. Mail.

903.     Chiropractic reports and invoices were delivered to Allstate through the U.S. Mail.  Payments to defendants traveled via the U.S. Mail.

904.     As documented above, the Count XLIII Defendants repeatedly and intentionally submitted NF-3 forms and other healthcare documentation to Allstate for chiropractic expenses and/or services that were purportedly performed at Chiropractic Health Plus D.S., P.C., to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

905.     As a result of, and in reasonable reliance upon these misleading documents and misrepresentations, Allstate, by its agents and employees, issued drafts to Chiropractic Health Plus D.S., P.C., for the benefit of the Count XLIII Defendants, that would not otherwise have been paid.

906.     The Count XLIII Defendants' pattern of fraudulent claims, each appearing legitimate on their face, also prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling them to continue without being detected.

907.     The acts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

908.    The Count XLIII Defendants engaged in money laundering activity in violation of 18 U.S.C. § 1956 (laundering of monetary instruments) as discussed in Section VII above.

909.    By filing numerous fraudulent claims in an ongoing scheme, the Count XLIII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

910.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Chiropractic Health Plus D.S., P.C. for the benefit of the Count XLIII Defendants.

911.    Allstate (and all plaintiffs individually) is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

912.    Chiropractic Health Plus D.S., P.C. constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

913.    The Count XLIII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

914.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XLIII Defendants' conduct.

915.    The Count XLIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

916.    By virtue of the Count XLIII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the

claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XLIV
### CONSPIRACY UNDER 18 U.S.C. §1962(d):
### CHIROPRACTIC HEALTH PLUS D.S., P.C. ENTERPRISE
(Against Dmitry Slobodyansky, D.C., Mikhail Zemlyansky, Michael Danilovich, Yuriy Zayonts, Mikhail Kremerman, Matthew Conroy, Maria Diglio, Michael Barukhin, Mikhail Ostrumsky, Boris Treysler, Andrey Anikeyev, Vladimir Grinberg, Vladislav Zaretskiy, Yevgeniy Shuman, Alexander Sandler, Gregory Mikhalov, Michael Morgan, Mark Danilovich, Jeffrey Lipis, Lynda Tadder, and Sol Naimark)

917.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

918.    Defendants Slobodyansky, Zemlyansky, Danilovich, Zayonts, Kremerman, Conroy, Diglio, Barukhin, Ostrumsky, Treysler, Anikeyev, Grinberg, Zaretskiy, Shuman, Sandler, Mikhalov, Morgan, Mark Danilovich, Lipis, Tadder, and Naimark (collectively "Count XLIV Defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the operation of Chiropractic Health Plus D.S., P.C.

919.    The Count XLIV Defendants agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Chiropractic Health Plus D.S., P.C. by means of a pattern of racketeering activity, including numerous acts of mail fraud as set forth in Exhibit 25, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

920.    The purpose of the conspiracy was to obtain No-Fault payments from Allstate on behalf of Chiropractic Health Plus D.S., P.C., even though Chiropractic Health Plus D.S., P.C., as a result of defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

921. The Count XLIV Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

922. Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

923. By virtue of this violation of 18 U.S.C. § 1962(d), the Count XLIV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified, three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XLV
### FRAUD
**(Against All Defendants)**

924. Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

925. The defendants' scheme to defraud Allstate was dependant upon a succession of material misrepresentations of fact that the defendants were entitled to collect No-Fault benefits under New York law.

926. The misrepresentations of fact by the defendants included, but were not limited to, the material misrepresentations of fact made in defendants' NF-3 forms, patient reports, invoices and collection documentation.

927. The defendants' representations were false, or required disclosure of additional facts to render the information furnished not misleading.

928.    The misrepresentations were intentionally made by the defendants in furtherance of their scheme to defraud Allstate by submitting claims from fraudulently incorporated professional service corporations for reimbursement for No-Fault insurance benefits pursuant to Insurance Law § 5102(a).

929.    The defendants' misrepresentations were known to be false and were made for the purposes of inducing Allstate to make payments for claims that were not legitimate.

930.    Allstate reasonably relied upon such material misrepresentations to its detriment in paying hundreds of bills for medical expenses pursuant to No-Fault insurance claims.

931.    Allstate's damages include, but are not limited to:

      a.    Monies paid for medical expenses and services that were rendered through professional service corporations that were, in actuality, ineligible to receive No-Fault reimbursement under New York law;

      b.    Reimbursement for the fair and reasonable value of the labor and resources expended to detect and expose the defendants' scheme to defraud Allstate.

### COUNT XLVI
### (Unjust Enrichment)
### (Against All Defendants)

932.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth above as if fully set forth herein.

933.    When Allstate paid Big Apple Medical, P.C., Efficient Medical Diagnostic, P.C., Highway Medical Diagnostic, P.C., Bushwick Plaza Medical, P.C., United Medical of Brooklyn, P.C., Friendly Physician, P.C., Farragut Corner Medical, P.C., Hamilton Medical Healthcare, P.C., Quest Medical Services, P.C., Melbourne Medical, P.C., Colden Medical, P.C., Clearview of Brooklyn Medical, P.C., Novacare Medical, P.C., McGuire Medical P.C., Maguire Medical Practice, P.C., Hollis Medical Services, P.C., Southern Boulevard Medical Care, P.C., Webster

DST Medical, P.C., United Diagnostic Imaging, P.C., Kali Acupucture, P.C., First Care

Chiropractic, P.C., and Chiropractic Health Plus D.S., P.C. (collectively, "PC Defendants"), it

reasonably believed that it was legally obligated to make such payments based upon the

defendants' fraudulent misrepresentations and omissions.

934.    Allstate's payments constitute a benefit which the defendants aggressively sought

and voluntarily accepted.

935.    The defendants caused the PC Defendants to wrongfully obtain payments from

the plaintiff through their fraudulent billing scheme as described more fully in the paragraphs

above.

936.    Retention of those benefits would violate fundamental principles of justice, equity

and good conscience.

## COUNT XLVII
### (Declaratory Relief Under 28 U.S.C. § 2201)
**(Against Big Apple Medical, P.C., Efficient Medical Diagnostic, P.C., Highway Medical
Diagnostic, P.C., Bushwick Plaza Medical, P.C., United Medical of Brooklyn, P.C.,
Friendly Physician, P.C., Farragut Corner Medical, P.C., Hamilton Medical Healthcare,
P.C., Quest Medical Services, P.C., Melbourne Medical, P.C., Colden Medical, P.C.,
Clearview of Brooklyn Medical, P.C., Novacare Medical, P.C., McGuire Medical P.C.,
Maguire Medical Practice, P.C., Hollis Medical Services, P.C., Southern Boulevard
Medical Care, P.C., Webster DST Medical, P.C., United Diagnostic Imaging, P.C., Kali
Acupucture, P.C., First Care Chiropractic, P.C., and Chiropractic Health Plus D.S., P.C.)**

937.    Allstate re-alleges, re-pleads and incorporates by reference all paragraphs set forth

above as if fully set forth herein.

938.    To be eligible to receive assigned No-Fault benefits, an assignee provider must

adhere to all applicable New York statutes which grant the authority to provide healthcare

services in New York.

939.     In view of their illegal corporate structure, and/or illegal control by a non-licensed laypersons, each PC Defendant has been operating in violation of New York's Insurance Law (and other regulatory and statutory provisions), and thus the PC Defendants have no standing to submit or receive assigned No-Fault benefits.

940.     The PC Defendants (i.e., Big Apple Medical, P.C., Efficient Medical Diagnostic, P.C., Highway Medical Diagnostic, P.C., Bushwick Plaza Medical, P.C., United Medical of Brooklyn, P.C., Friendly Physician, P.C., Farragut Corner Medical, P.C., Hamilton Medical Healthcare, P.C., Quest Medical Services, P.C., Melbourne Medical, P.C., Colden Medical, P.C., Clearview of Brooklyn Medical, P.C., Novacare Medical, P.C., McGuire Medical P.C., Maguire Medical Practice, P.C., Hollis Medical Services, P.C., Southern Boulevard Medical Care, P.C., Webster DST Medical, P.C., United Diagnostic Imaging, P.C., Kali Acupuncture, P.C., First Care Chiropractic, P.C., and Chiropractic Health Plus D.S., P.C.) continue to submit assigned No-Fault claims to Allstate, and other claims remain pending with Allstate.

941.     The PC Defendants continue to challenge prior claim denials.

942.     The PC Defendants continue to commence litigation against Allstate in connection seeking payment of No-Fault benefits allegedly due and owing.

943.     A justifiable controversy exists between Allstate and the PC Defendants since the PC Defendants challenge Allstate's ability to deny such claims.

944.     Allstate has no adequate remedy at law.

945.     The PC Defendants will continue to bill for No-Fault services absent a declaration by this Court that their activities are unlawful and that Allstate has no obligation to pay the pending, previously-denied and any future No-Fault claims submitted by any of the PC Defendants.

946.    Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment

Act, 28 U.S.C. §§ 2201 and 2202, declaring that the PC Defendants are fraudulently incorporated

and/or controlled by non-licensed laypersons in violation of New York's Insurance Laws, and

thus have no standing to submit or receive assigned No-Fault benefits.

## XI.    DEMAND FOR RELIEF

WHEREFORE, plaintiffs, Allstate Insurance Company, Allstate Insurance Company,

Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Property and

Casualty Insurance Company, Allstate Vehicle and Property Insurance Company f/k/a Deerbrook

Insurance Company, Allstate Fire and Casualty Insurance Company and Northbrook Indemnity

Company (collectively "Allstate"), respectfully pray that judgment enter in their favor, as

follows:

### COUNT I
### (Violations of 18 U.S.C. §1962(c))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT II
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)   GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT III
### (Violations of 18 U.S.C. §1962(c))

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)   GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT IV
### (Violations of 18 U.S.C. §1962(d))

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)   GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT V
### (Violations of 18 U.S.C. §1962(c))

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VI
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VII
### (Violations of 18 U.S.C. §1962(c))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VIII
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)    GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT IX
### (Violations of 18 U.S.C. §1962(c))

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)    GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT X
### (Violations of 18 U.S.C. §1962(d))

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)    GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XI
### (Violations of 18 U.S.C. §1962(c))

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XII
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XIII
### (Violations of 18 U.S.C. §1962(c))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XIV
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)    GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XV
### (Violations of 18 U.S.C. §1962(c))

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)    GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XVI
### (Violations of 18 U.S.C. §1962(d))

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)    GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XVII
### (Violations of 18 U.S.C. §1962(c))

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

        conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XVIII
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

        attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

        conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XIX
### (Violations of 18 U.S.C. §1962(c))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

        attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

        conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XX
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

        attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

**COUNT XXI**
**(Violations of 18 U.S.C. §1962(c))**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

**COUNT XXII**
**(Violations of 18 U.S.C. §1962(d))**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

**COUNT XXIII**
**(Violations of 18 U.S.C. §1962(c))**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

160

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXIV
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXV
### (Violations of 18 U.S.C. §1962(c))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXVI
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)    GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XXVII
### (Violations of 18 U.S.C. §1962(c))

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)    GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XXVIII
### (Violations of 18 U.S.C. §1962(d))

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)    GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XXIX
### (Violations of 18 U.S.C. §1962(c))

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXX
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXXI
### (Violations of 18 U.S.C. §1962(c))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXXII
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

        conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXXIII
### (Violations of 18 U.S.C. §1962(c))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

        attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

        conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXXIV
### (Violations of 18 U.S.C. §1962(d))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

        attorneys' fees; and

(c)     GRANT injunctive relief enjoining the defendants from engaging in the wrongful

        conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXXV
### (Violations of 18 U.S.C. §1962(c))

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

        attorneys' fees; and

(c)   GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT XXXVI
### (Violations of 18 U.S.C. §1962(d))

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)   GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT XXXVII
### (Violations of 18 U.S.C. §1962(c))

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)   GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT XXXVIII
### (Violations of 18 U.S.C. §1962(d))

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and

attorneys' fees; and

(c)    GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XXXIX
### (Violations of 18 U.S.C. §1962(c))

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)    GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XL
### (Violations of 18 U.S.C. §1962(d))

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)    GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XLI
### (Violations of 18 U.S.C. §1962(c))

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)   GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT XLII
### (Violations of 18 U.S.C. §1962(d))

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)   GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT XLIII
### (Violations of 18 U.S.C. §1962(c))

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)   GRANT injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT XLIV
### (Violations of 18 U.S.C. §1962(d))

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. §1964, interests, costs and attorneys' fees; and

(c)   GRANT injunctive relief enjoining the defendants from engaging in the wrongful

conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT XLV
### (Fraud)

(a)   AWARD Allstate its actual damages in an amount to be determined at trial;

(b)   AWARD Allstate its costs, including but not limited to, investigative costs incurred in the

detection of defendants' illegal conduct;

(c)   AWARD Allstate its costs in defending No-Fault suits filed by defendants seeking

payment of false and fraudulent invoices; and

(d)   GRANT any other relief this Court deems just.

## COUNT XLVI
### (Unjust Enrichment)

(a)   AWARD Allstate's actual and consequential damages to be determined at trial;

(b)   GRANT any other relief this Court deems just.

## COUNT XLVII
### (Declaratory Judgment)

(a)   DECLARE that Big Apple Medical, P.C., Efficient Medical Diagnostic, P.C., Highway

Medical Diagnostic, P.C., Bushwick Plaza Medical, P.C., United Medical of Brooklyn,

P.C., Friendly Physician, P.C., Farragut Corner Medical, P.C., Hamilton Medical

Healthcare, P.C., Quest Medical Services, P.C., Melbourne Medical, P.C., Colden

Medical, P.C., Clearview of Brooklyn Medical, P.C., Novacare Medical, P.C., McGuire

Medical P.C., Maguire Medical Practice, P.C., Hollis Medical Services, P.C., Southern

Boulevard Medical Care, P.C., Webster DST Medical, P.C., United Diagnostic Imaging,

P.C., Kali Acupucture, P.C., First Care Chiropractic, P.C., and Chiropractic Health Plus

D.S., P.C. (collectively, "PC Defendants") are operating in violation of Article 15 of New

York's Business Corporation Law, New York Public Health Laws, New York Insurance

Laws, and other statutory and regulatory provisions;

(b)     DECLARE that the PC Defendants' activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or

future No-Fault insurance claims submitted by the PC Defendants; and

(d)     GRANT all other relief this Court deems just and appropriate.

## JURY TRIAL DEMAND

The plaintiffs demand a trial by jury on all claims.

[SIGNATURE PAGE FOLLOWS]

SMITH & BRINK, P.C.,

_____
Richard D. King, Jr., (RK8381)
Nathan A. Tilden, (NT0571)
1325 Franklin Avenue, Suite 320
Garden City, NY 11530
(347) 710-0050

Attorneys for the Plaintiffs,
*Allstate Insurance Company, Allstate Indemnity Company,*
*Allstate New Jersey Insurance Company, Allstate Property*
*and Casualty Insurance Company, Allstate Vehicle and*
*Property Insurance Company f/k/a Deerbrook Insurance*
*Company, Allstate Fire and Casualty Insurance Company and*
*Northbrook Indemnity Company.*

Dated:  May 10, 2012

170