UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ALLSTATE INSURANCE COMPANY, et al.

    -v-                                                   12-CV-2303 (JBW)(RER)

MIKHAIL ZEMLYANSKY, et al.,

           *Defendants*,

-------------------------------------------------------------X

## DEFENDANT YURIY ZAYONTS' MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION FOR A STAY OF ALL DISCOVERY

HAFETZ NECHELES & ROCCO

Frederick P. Hafetz
Noah E. Shelanski
Attorneys for Defendant
*Yuriy Zayonts*

## PRELIMINARY STATEMENT

Defendant Yuriy Zayonts respectfully submits this Memorandum of Law in support of the motion by the United States Attorney for the Southern District of New York to stay all discovery in this action pending the completion of a parallel criminal proceeding pending the Southern District of New York. All of the remaining individual defendants remaining in this case have indicated to us that they will be joining this memorandum in support of the government's motion. For the following reasons, the government's motion should be granted.

## ARGUMENT

In *City of New York v A-1 Jewelry and Pawn Inc*, 2008 WL 630483 (E.D.N.Y. March 4, 2008), this Court set forth the criteria for determining whether to grant the application for the stay of a civil case by a party to the civil case who is also a party to a pending criminal case:

> A stay of a civil case is an extraordinary remedy. *See Jackson v. Johnson*, 985 F.Supp. 422, 424 (S.D.N.Y. 1997). Yet, when a party under criminal indictment is required to defend a civil proceeding involving the same matter, denying a stay might impair the criminal defendant's Fifth Amendment privilege against self-incrimination and extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure *16(b)*. *See Id.* at 424-25. District courts have wide discretionary authority to stay a case when the interests of justice so require. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (citation omitted).

> In determining whether to stay a civil proceeding pending the outcome of a related criminal case, courts consider a number of factors, including (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously in the civil case; (4) the private interests of, and the burden on, other defendants in the civil case; (5) whether a limited protective order prevents prejudice to the criminal defendant; and (6) the interests of the courts and the public in the prompt and fair disposition of civil and criminal proceedings. *See Crawford & Sons, Ltd. v. Besser,* 298 F.Supp.2d 317, 319 (E.D.N.Y. 2004) (citations omitted). A stay is unnecessary if a protective order can adequately ensure a speedy disposition of the civil case while ensuring that the rights of the criminal defendant are not prejudiced. *See SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375 (D.C. Cir. 1980) (en banc).

Based upon these criteria, the government's application here for a stay of all discovery in the civil case should be granted. We examine each of the criteria here.

### 1. The extent to which the issues in the criminal case overlap with those presented in the civil case.

Unlike *A-1 Jewelry* in which this Court denied the stay application, here, there is complete overlap here between the pending civil and criminal cases.

#### a. The Southern District of New York Criminal Action

On February 28, 2012 a Southern District of New York indictment was filed in the case of *United States v. Zemlyansky et al.*, 12-CR-171 (JPO) (the "Indictment"). (*See* Exhibit A). The Indictment charges 36 defendants with: (1) RICO Conspiracy in violation of 18 U.S.C. § 1962(c) (8 defendants); (2) Health Care Fraud Conspiracy in violation of 18 U.S.C. § 1347 (13 defendants); (3) Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 1341(36 defendants); and (4) Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956 (36 defendants). (*Id.*). According to the Southern District of New York U.S. Attorney's press release following the Indictment, the defendants face maximum sentences of anywhere from 30 to 70 years if convicted of all charges. (*See* Exhibit B).

The Indictment alleges that the defendants engaged in a massive scheme to defraud various insurance agencies under the auspices of New York State's no-fault insurance laws. (Exhibit A, ¶¶ 3-9). The alleged fraud was the defendants' submission of claims to insurance companies for services that were either medically unnecessary or that were never provided. (Exhibit A, ¶ 4). The Indictment also alleges that the defendants' submission of insurance claims was fraudulent because the medical clinics submitting the claims were not incorporated, owned,

2

operated and/or controlled by a licensed medical practitioner, rendering them ineligible for payment under New York's no-fault laws. (Exhibit A, ¶ 5). Indeed, integral to the allegations of fraud in the Indictment is that those defendants who are medical professionals acted as figurehead owners of the medical clinics that billed the insurance companies, when the clinics were in fact controlled by those defendants who were not medical professionals. (Exhibit A, ¶ 5). The Indictment also alleges that defendants engaged in a money laundering scheme that took the illicit profits received from fraudulently billing the insurance companies and then reinvested them back into the fraudulent clinics. (Exhibit A, ¶¶ 10-13).

### b. The Instant Civil Action

On May 10, 2012, Allstate Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Property and Casualty Company, Allstate Vehicle and Property Insurance Company f/k/a Deerbrook Insurance Company, Allstate Fire and Casualty Insurance Company, and Northbrook Indemnity Company (hereinafter "Allstate" or "Plaintiffs") filed the Complaint in the instant action against Yuriy Zayonts, 30 additional natural persons, and 22 corporate entities (the "Allstate Complaint"). (*See* Exhibit C). Every single one of the 31 natural persons named as a defendant in the Allstate Complaint was previously indicted in *U.S. v. Zemlyansky et al.* Additionally, while none of the corporate defendants named in the Allstate Complaint were named as defendants in the Indictment, each of the corporate defendants named in the Allstate Complaint is alleged to have been fraudulently run by one or more of the natural persons named as defendants in the Allstate Complaint. (Exhibit C, ¶¶ 168-321).

Thus, unlike *A-1 Jewelry* where "[t]he civil and criminal cases do not arise from the same underlying events," *Id.* at 2, here, in addition to the near complete overlap between the

3

defendants in the Allstate Complaint and the defendants in the Indictment, the allegations in the Allstate Complaint are virtually identical to those in the Indictment. Section V(A) of the Allstate Complaint entitled "Factual Allegations Common to All Counts: Criminal Indictment," explains that the Indictment was filed in *U.S. v. Zemlyansky et al.*, and attaches the Indictment as "Exhibit 1." The Allstate Complaint then proceeds to almost word for word repeat the allegations in the Indictment and adopt them as the Plaintiffs' own allegations. (Exhibit C, ¶¶ 136-161). A side by side comparison of just one paragraph of the Indictment on the one hand, and the Allstate Complaint on the other hand, clearly illustrates the near verbatim adoption in the Allstate Complaint of the allegations in the Indictment:

| *U.S. v. Zemlyansky* – Indictment ¶ 4 | *Allstate. v. Zemlyansky* – Complaint ¶ 139 |
|---|---|
| In order to take advantage of the patient-friendly provisions of the No-Fault Law, numerous medical clinics were created solely to defraud insurance companies under the No-Fault Law (the "No-Fault Clinics"). While purporting to be legitimate medical care clinics specializing in treating the Patients, the No-Fault Clinics were, in fact, medical fraud mills that routinely billed automobile insurance companies under the No-Fault Law for medical treatments that were either (i) never provided and/or (ii) unnecessary, because the Patients did not medically need the treatments. | In take advantage of New York's patient-friendly provisions of the No-Fault Law, numerous medical clinics were created solely to defraud insurance companies under the No-Fault Law (the "PC Defendants"). While purporting to be legitimate medical care clinics specializing in treating patient (persons purportedly injured in automobile accidents), the PC Defendants were, in fact, medical fraud mills that routinely billed automobile insurance companies under the No-Fault Law for medical treatments that were either (i) never provided and/or (ii) unnecessary, because the patients did not medically need the treatments. |

This side by side comparison of the Allstate Complaint and the Indictment demonstrates that the plaintiff here adopted wholesale the allegations in the Indictment and made them their own. Critically, for the instant motion to stay these proceedings, the Allstate Complaint makes it clear that the allegations adopted from the Indictment are "common to all counts" in the Allstate Complaint. (Exhibit C, p. 17 § V).

4

### 2. The status of the criminal case including whether the defendant has been indicted

In *A-1 Jewelry* the civil case sought to be stayed was filed on May 15, 2006—nearly two years prior to the filing of the indictment there. When the stay application was filed, virtually all discovery had been completed in the civil case and trial was only three months away (the trial date was subsequently adjourned). In contrast, here the Indictment was filed in February, 2012, more than two months prior to the filing of the civil case on May 10, 2012.

### 3. The private interests of the plaintiff in proceeding expeditiously in the civil case

In *A-1 Jewelry* this Court in denying the defendant's stay application emphasized the "strong interest in the plaintiff's proceeding expeditiously. The Court stated:

> The City has a strong interest in proceeding expeditiously to obtain injunctive relief in abating the public nuisance of gun violence in New York City. Since danger to the public is alleged, the public interest would be served by a prompt trial. With fact discovery in this case less than two weeks from completion, and trial less than three months away, the City would be significantly prejudiced by a full or partial stay.

*A-1 Jewelry and Pawn Inc*, 2008 WL 630483 at *2.

Here, in contrast, there is no "strong interest"—public or otherwise— by plaintiff in proceeding expeditiously. Indeed, here, the plaintiff *consents* to the government's application for a stay of all discovery in this case.

### 4. The private interests of, and burden on, the other defendants in the civil case

The burden on Mr. Zayonts of defending against the allegations in the Allstate Complaint is plain. In addition to the obvious burden of defending against nearly identical civil and criminal allegations concurrently in two separate actions, Mr. Zayonts will be forced to choose between forgoing his Fifth Amendment rights and prejudicing himself in the criminal action, or asserting

5

his right to remain silent in the civil action and risking default. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d. Cir. 2012). "If they choose the former course, they risk providing the government with leads or evidence that may be used against them in the criminal case. If they choose the latter course, they greatly increase the chance that they be found liable in civil case for substantial sums of money." *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985). Accordingly, the interest of Mr. Zayonts in vigorously defending against the duplicative allegations in the Indictment and the Allstate Complaint warrants a stay of the civil proceeding pending the resolution of the charges in the Indictment.

### 5. Whether a limited protective order prevents prejudice to the criminal defendant

A limited protective order here will not suffice to protect Mr. Zayonts' Fifth Amendment privilege. In *A-1 Jewelry*, as noted, discovery had nearly been completed and all that remained was a deposition of Mickalis, the owner of one of thirteen corporate defendants. The concern of Mickalis in seeking a stay was deposition questioning about the criminal act charged in his indictment which, as the Court stated, "is not apparently charged in [the] civil suit." *A-1 Jewelry and Pawn Inc*, 2008 WL 630483 at *2.

Here, in contrast, the civil case is virtually a carbon copy of the criminal indictment and virtually all phases of discovery, will implicate the criminal defendant's Fifth Amendment rights. Therefore, a limiting order will not protect Mr. Zayonts' Fifth Amendment rights.

6

### 6. The interests of the courts and the public in prompt and the fair disposition of civil and criminal proceedings

In *Crawford & Sons v. Besser*, 298 F.Supp.2d 317 (E.D.N.Y. 2004), cited by this Court in *A-1 Jewelry*, Judge Spatt granted a motion for a stay in a civil case pending resolution of the parallel criminal case. In doing so the court stated:

> …a stay in this action pending resolution of the criminal matter serves both the interests of the Court and the public. A stay would promote efficiency and avoid duplication as this Court and the parties would have the benefit of the transcripts and rulings in the criminal action. In addition, the public's interest is also served by preserving the integrity of the criminal case. *See In re Ivan F. Boesky Sec. Litig.*, 128 F.R.D. 47, 49 (S.D.N.Y.1989). Furthermore, a conviction or acquittal in the criminal action may negate or buttress some or all of the plaintiffs' claims.

*Id.* at 319-320.

Here, a stay of the pending civil proceedings will promote judicial economy by narrowing the issues in dispute and streamlining the discovery process once the criminal prosecution has ended. "Moreover, the resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues." *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) (citation omitted); *See also Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003) ("A stay of discovery pending resolution of the criminal case clearly serves both the interests of the Court and those of the public. By proceeding first with the criminal prosecution, the Court makes efficient use of judicial time and resources by insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination."); *Bureerong v. Uvawas*, 167 F.R.D. 83, 87 (C.D. Cal. 1996). ("Common factual questions may be conclusively determined in the criminal action. This would pare down the issues to be determined in the civil case, and serve the interests of judicial economy by narrowing the focus of the action to the benefit of the litigants.")

Accordingly, the interests of this Court are advanced by the imposition of a stay of the pending civil litigation. Indeed, while Mr. Zayonts intends to vigorously defend himself against the pending criminal charges, in the event that any of the defendants are convicted in the criminal action, they will likely be collaterally estopped in the civil action from re-litigating any fact that was determined against them in the criminal action. *See e.g. Crawford & Sons, Ltd. v. Besser*, 298 F. Supp. 2d at 320 ("Furthermore, a conviction or acquittal in the criminal action may negate or buttress some or all of the plaintiffs' claims."). Here, where the allegations in the civil and criminal action are virtually identical, a conviction in the criminal action would likely result in a substantial narrowing of the facts in dispute in the civil action. Accordingly, a stay of all discovery in the the civil action is warranted.

## CONCLUSION

For the forgoing reasons, the Mr. Zayonts respectfully submits that the government's motion for a stay of all discovery in this action should be granted in its entirety and for such other and further relief as this court may deem necessary and proper.

HAFETZ NECHELES & ROCCO

Frederick P. Hafetz (FH1219)
Noah E. Shelanski (NS5837)
500 5th Avenue, 29th Floor
New York, NY 10110
(212) 997-7595
Attorneys for Defendant
*Yuriy Zayonts*