UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, *et al*., | Civil Action No. 12-cv-2303-JBW-RER |
| Plaintiffs, | |
| vs. | |
| MIKHAIL ZEMLYANSKY, *et al.*, | |
| Defendants. | |

## DECLARATION OF MICHAEL BRUNO

I, Michael Bruno, upon oath do say and depose as follows:

1.      I am employed by Allstate Insurance Company as a Senior Special Investigations Unit Field Analyst.

2.      I have personal knowledge of the facts set forth in this Declaration, and would testify as to them in a Court of law if called upon to do so.

3.      I respectfully submit this Declaration in support of Plaintiffs' Allstate Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property & Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Vehicle and Property Insurance Company f/k/a Deerbrook Insurance Company, Allstate Fire and Casualty Insurance Company, and Northbrook Indemnity Company (collectively, "Allstate" or "plaintiffs"), Motion for Default Judgment and Entry of Final Judgment against Defendants Mikhail Zemlyansky ("Zemlyansky"), Michael Danilovich

1

("Danilovich"), Olga Bard, L.Ac. ("Bard"), Olga Bard Acupuncture, P.C. ("Bard Acupuncture"), Diana Zaidman ("Zaidman"), Golden Star Medical Diagnostics, P.C. ("Golden Star"), Paragon Medical Care, P.C. ("Paragon Medical"), Jeffrey Lereah ("Lereah"), Alexander Sandler ("Sandler"), Robert Sukhman ("Sukhman"), Muhammad Tahir, M.D. ("Tahir"), and J&L Medical Diagnostic P.C. ("J&L Medical") (collectively, "Defaulting Defendants").

## I. FACTS REGARDING DEFAULTING DEFENDANTS' DEFAULT AND LIABILITY

4.     I have personally reviewed all pleadings, affidavits, and relevant Allstate business records related to this matter, and as such, have personal knowledge regarding all information set forth in this Declaration.  My testimony is based upon a review of the following materials:

- Allstate's Second Amended Complaint (ECF No. 494);

- Certificate of Military Service regarding Zemlyansky in accordance with 50 U.S.C. § 521 (attached as Exhibit 1);[1]

- Certificate of Military Service Regarding Danilovich in accordance with 50 U.S.C. § 521 (attached as Exhibit 2);

- Certificate of Military Service regarding Bard in accordance with 50 U.S.C. § 521 (attached at Exhibit 3);

- Certificate of Military Service regarding Zaidman in accordance with 50 U.S.C. § 521 (attached as Exhibit 4);

- Certificate of Military Service regarding Lereah in accordance with 50 U.S.C. § 521 (attached at Exhibit 5);

---

[1] Pursuant to the requirements of 50 U.S.C. § 521(b), Allstate has made a careful investigation of whether the Defaulting Defendants are in the military by seeking certificates from the Department of Defense Manpower Data Center.

- Certificate of Military Service regarding Sandler in accordance with 50 U.S.C. § 521 (attached as Exhibit 6);

- Certificate of Military Service regarding Sukhman in accordance with 50 U.S.C. § 521 (attached as Exhibit 7);

- Certificate of Military Service regarding Tahir  in accordance with 50 U.S.C. § 521 (attached as Exhibit 8);

- Payments made by Allstate to the following professional healthcare service entities:

  o Clearview of Brooklyn Medical, P.C. ("Clearview") (attached as Exhibit 9);

  o Novacare Medical, P.C. ("Novacare") (attached as Exhibit 10);

  o McGuire Medical, P.C. ("McGuire") (attached as Exhibit 11);

  o Maguire Medical Practice, P.C. ("Maguire") (attached as Exhibit 12);

  o Igla Acupuncture, P.C. ("Igla") (attached as Exhibit 13);

  o Advanced Quality Physical Therapy, P.C. ("Advanced Quality") (attached as Exhibit 14);

  o Main Care P.T., P.C. ("Main Care") (attached as Exhibit 15);

  o Main Rehab P.T., P.C. ("Main Rehab") (attached as Exhibit 16);

  o Community Medical Care Associate P.C. ("Community Medical") (attached as Exhibit 17);

  o KKM Medical Diagnostics, P.C. ("KKM") (attached as Exhibit 18);

  o Move Free Chiropractic, LLP ("Move Free") (attached as Exhibit 19);

  o Bard Acupuncture (attached as Exhibit 20);

3

- o Effective Care P.T., P.C. ("Effective Care") (attached as Exhibit 21);

- o Comprehension P.T., P.C. ("Comprehension") (attached as Exhibit 22);

- o V.S. Care Acupuncture, P.C. ("V.S. Care") (attached as Exhibit 23);

- o Canon Chiropractic Care, P.C. ("Canon Chiropractic") (attached as Exhibit 24);

- o Victory Medical Diagnostics, P.C. ("Victory Medical") (attached as Exhibit 25);

- o SM Chiropractic, P.C. ("SM Chiropractic") (attached as Exhibit 26);

- o Precision Medical Diagnostics of NY, P.C. ("Precision Medical") (attached as Exhibit 27);

- o J&L Medical (attached as Exhibit 28);

- o Golden Star (attached as Exhibit 29);

- o Paragon Medical (attached as Exhibit 30);

- A listing of mailings received by Allstate through the U.S. Mail in connection with No-Fault reimbursement demands made by several professional healthcare service entities during the course of the defendants' scheme, including those entities listed immediately above (attached as Exhibit 31);

- Declarations of Shauna L. Sullivan and/or Michael W. Whitcher filed in support of Allstate's Request for Entry of Default as to the following:

  - o Zemlyansky (attached as Exhibit 32);

  - o Danilovich (attached as Exhibit 33);

  - o Bard (attached as Exhibit 34);

  - o Bard Acupuncture (attached as Exhibit 35);

4

- o   Zaidman (attached as Exhibit 36);

- o   Golden Star (attached as Exhibit 37);

- o   Paragon Medical (attached as Exhibit 38);

- o   Lereah (attached at Exhibit 39);

- o   Sandler (attached as Exhibit 40);

- o   Sukhman (attached as Exhibit 41);

- o   Tahir (attached as Exhibit 42);

- o   J&L Medical (attached as Exhibit 43);

- Return of service affidavits filed in this matter relating to plaintiffs' service of a Summons and a copy of plaintiffs' Second Amended Complaint as to the following Defaulting Defendants:

- o   Bard (attached at Exhibit 44);

- o   Bard Acupuncture (attached at Exhibit 45);

- o   Zaidman (attached as Exhibit 46);

- o   Golden Star (attached at Exhibit 47);

- o   Paragon Medical (attached at Exhibit 48);

- o   Sandler (attached at Exhibits 49);

- o   Sukhman (attached as Exhibit 50);

- o   Tahir (attached as Exhibit 51);

- o   J&L Medical (attached as Exhibit 52);

- Clerk's Certificates of Default entered on the docket in this matter relating to the following Defaulting Defendants:

- o   Zemlyansky (attached as Exhibit 53);

5

- o   Danilovich (attached as Exhibit 54);

- o   Bard (attached at Exhibit 55);

- o   Bard Acupuncture (attached at Exhibit 56);

- o   Zaidman (attached at Exhibit 57);

- o   Golden Star (attached at Exhibit 58);

- o   Paragon Medical (attached at Exhibit 59);

- o   Lereah (attached at Exhibit 60);

- o   Sandler (attached as Exhibit 61);

- o   Sukhman (attached as Exhibit 62);

- o   Tahir (attached as Exhibit 63);

- o   J&L Medical (attached as Exhibit 64);

- Indictment filed as to co-defendant John Maurello in the criminal matter *United States v. John Maurello*, 12-cr-171 (JPO) (S.D.N.Y.) (attached as Exhibit 65);

- The transcript of Tahir's testimony provided in the criminal matter *United States v. Matthew Conroy*, 12-cr-171 (JPO) (S.D.N.Y.) (attached as Exhibit 66);

- Criminal Indictment, *United States v. Zemlyansky*, *et al.*, 12-CR-171 (JPO) (S.D.N.Y) (attached as Exhibit 67);

- Zemlyansky and Danilovich Superseding Indictment, *United States v. Zemlyansky*, *et al.*, 12-CR-171 (JPO) (S.D.N.Y) (attached as Exhibit 68);

- Zaidman Plea Transcript (attached as Exhibit 69);

- Excerpts of the transcript of trial testimony in the matter *United States v. Zemlyansky, et al.*, 12-cr-171 (JPO) (S.D.N.Y.) (attached as Exhibit 70);

- Excerpts of the transcript of trial testimony in the matter *United States v. Gabinskaya*, 12-cr-171 (JPO) (S.D.N.Y.) (attached as Exhibit 71);

- Excerpts of the transcript of trial testimony in the matter *United States v. Zemlyansky*, 12-cr-171-01 (JPO) (S.D.N.Y.) (attached as Exhibit 72);

- Excerpts of the transcript of trial testimony in the matter *United States v. Danilovich*, 12-cr-171 (DAB) (S.D.N.Y.) (attached as Exhibit 73);

- Lereah Superseding Information (attached as Exhibit 74);

- Sandler Superseding Information (attached as Exhibit 75);

- Sandler Plea Transcript (attached as Exhibit 76);

- Sukhman Information (attached as Exhibit 77);

- Sukhman Plea Agreement (attached as Exhibit 78);

- Mark Danilovich Plea Agreement (attached as Exhibit 79);

- Mark Danilovich Plea Transcript (attached as Exhibit 80);

- Boris Treysler ("Treysler") Plea Agreement (attached as Exhibit 81);

- Treysler Plea Transcript (attached as Exhibit 82);

- Yuriy Zayonts Plea Agreement (attached as Exhibit 83);

- Yuriy Zayonts Plea Transcript (attached as Exhibit 84);

- Mikhail Kremerman ("Kremerman") Plea Agreement (attached as Exhibit 85);

- Kremerman Plea Transcript (attached as Exhibit 86);

- Vladislav Zaretskiy ("Zaretskiy") Plea Agreement (attached as Exhibit 87);

- Zaretskiy Plea Transcript (attached as Exhibit 88);

- Irina Zayonts Plea Agreement (attached as Exhibit 89);

- Irina Zayonts Plea Transcript (attached as Exhibit 90).

5.      Allstate filed its Second Amended Complaint on March 11, 2016.  ECF No. 494 ("SAC").

6.      Allstate's Second Amended Complaint seeks damages against the Defaulting Defendants and others for violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c)-(d) and New York state law, namely: common-law fraud and unjust enrichment.  *See id.*

7.      Allstate's Second Amended Complaint also seeks a declaration, pursuant to 28 U.S.C. § 2201, that, among several other entities, Bard Acupuncture, Paragon Medical, Golden Star, and J&L Medical, at all relevant times, have each been unlawfully operated and controlled by one or more non-physician or non-acupuncturist, and have otherwise been caused to be operated in violation of at least one New York State and/or local licensing requirement necessary to provide licensed physician or licensed acupuncture services in New York, and thus have no standing to pursue or recover No-Fault reimbursement under New York Insurance Law § 5102. *See id.*

## A.    DEFAULT HAS BEEN ENTERED AGAINST ZEMLYANSKY

8.      On March 11, 2016, Allstate properly served the Second Amended Complaint on Zemlyansky, through counsel, using the CM/ECF system in accordance with Fed. R. Civ. P. 5 and Local Civil Rule 5.2.[2]  Exhibit 32 at ¶¶ 2-4.

9.      Zemlyansky failed to serve and/or file an answer, or otherwise respond to the Second Amended Complaint.  *Id.* at ¶ 5.

10.     On April 7, 2016, Allstate requested the entry of default against Zemlyansky. *See* ECF No. 535.

---

[2] On October 16, 2012, Attorney Eric Creizman appeared as counsel on behalf of Zemlyansky.  *See* ECF No. 244; *see also* Decl. in Support of Request for Default (ECF No. 535-1) at ¶ 3.  Attorney Creizman has not filed a motion to withdraw as Zemlyansky's counsel, and remains as Zemlyansky's counsel of record in this matter.

11.    On April 8, 2016, the Clerk of Court granted Allstate's request and entered a default against Zemlyansky. *See* Exhibit 53.

**B.    DEFAULT HAS BEEN ENTERED AGAINST DANILOVICH**

12.    On March 11, 2016, Allstate properly served the Second Amended Complaint on Danilovich, through counsel, using the CM/ECF system in accordance with Fed. R. Civ. P. 5 and Local Civil Rule 5.2.  Exhibit 33 at ¶¶ 2-4.

13.    Danilovich failed to serve and/or file an answer, or otherwise respond to the Second Amended Complaint.  *Id.* at ¶ 5.

14.    On April 7, 2016, Allstate requested the entry of default against Danilovich. *See* ECF No. 534.

15.    On April 8, 2016, the Clerk of Court granted Allstate's request and entered a default against Danilovich.  *See* Exhibit 54.

**C.    DEFAULT HAS BEEN ENTERED AGAINST BARD**

16.    On May 4, 2016, Allstate properly served the Second Amended Complaint in this action on Defendant Bard under the provisions of Rule 4 of the Federal Rules of Civil Procedure, and a duly executed affidavit of service was filed with the Court. *See* Exhibit 34 at ¶ 2; Exhibit 44.

17.    Bard failed to serve and/or file an answer, or otherwise respond to the Second Amended Complaint.  Exhibit 34 at ¶ 3.

18.    On June 2, 2016, Allstate requested the entry of default against Bard.  *See* ECF No. 629.

19.    On June 8, 2016, the Clerk of Court entered a default against Bard.  *See* Exhibit 55.

**D.    DEFAULT HAS BEEN ENTERED AGAINST BARD ACUPUNCTURE**

20.    On March 30, 2016, Allstate properly served the Second Amended Complaint in this action on Defendant Bard Acupuncture under the provisions of Rule 4 of the Federal Rules of Civil Procedure, and a duly executed affidavit of service was filed with the Court. *See* Exhibit 35 at ¶ 2; Exhibit 45.

21.    Bard Acupuncture failed to serve and/or file an answer, or otherwise respond to the Second Amended Complaint. Exhibit 35 at ¶ 3.

22.    On May 20, 2016, Allstate requested the entry of default against Bard Acupuncture. *See* ECF No. 609.

23.    On August 5, 2016, the Clerk of Court entered a default against Bard Acupuncture.  *See* Exhibit 56.

**E.    DEFAULT HAS BEEN ENTERED AGAINST ZAIDMAN**

24.    On April 14, 2016, Allstate properly served the Second Amended Complaint on Zaidman under the provisions of Rule 4 of the Federal Rules of Civil Procedure, and a duly executed affidavit of service was filed with the Court.  *See* Exhibit 36 at ¶ 2; Exhibit 46.

25.    Zaidman failed to serve and/or file an answer, or otherwise respond to the Second Amended Complaint. Exhibit 36 at ¶ 3.

26.    On June 9, 2016, Allstate requested the entry of default against Zaidman. *See* ECF No. 649.

27.    On July 22, 2016, the Clerk of Court granted Allstate's request and entered a default against Zaidman. *See* Exhibit 57.

**F.     DEFAULT HAS BEEN ENTERED AGAINST GOLDEN STAR AND PARAGON**

28.     Golden Star and Paragon Medical were properly served the Second Amended Complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure, and duly executed affidavits of service with respect to these defendants were filed with the Court. *See* Exhibits 37-38 at ¶ 2; Exhibits 47-48.

29.     Golden Star and Paragon Medical failed to serve and/or file an answer, or otherwise respond to the Second Amended Complaint. Exhibits 37-38 at ¶ 3.

30.     On May 20, 2016, Allstate requested the entry of default against Golden Star and Paragon Medical. *See* ECF Nos. 611, 612.

31.     On May 23, 2016, the Clerk of Court entered defaults against Golden Star and Paragon Medical. *See* Exhibits 58-59.

**G.     DEFAULT HAS BEEN ENTERED AGAINST LEREAH**

32.     Lereah is represented by Joseph R. Conway, who is a registered ECF user, and was properly served, through counsel, on March 11, 2016, with the Second Amended Complaint through the CM/ECF system under the provisions of Fed. R. Civ. P. 5 and Local Civil Rule 5.2. *See* Exhibit 39 at ¶¶ 2-4.

33.     Lereah failed to serve and/or file an answer, or otherwise respond to the Second Amended Complaint.  *Id.* at ¶ 5.

34.     On April 7, 2016, Allstate requested the entry of default against Lereah. *See* ECF No. 533.

35.     On April 8, 2016, the Clerk of Court entered default against Lereah. *See* Exhibit 60.

### H.     DEFAULT HAS BEEN ENTERED AGAINST SANDLER

36.     On April 27, 2016, Allstate properly served the Second Amended Complaint on Sandler pursuant to Rule 4 of the Federal Rules of Civil Procedure, and a duly executed affidavit of service was filed with the Court. *See* Exhibit 40 at ¶ 2; Exhibit 49.

37.     Sandler failed to serve and/or file an answer, or otherwise respond to the Second Amended Complaint. Exhibit 40 at ¶ 5.

38.     On May 25, 2016, Allstate requested the entry of default against Sandler. *See* ECF No. 623.

39.     On August 5, 2016, the Clerk of Court granted Allstate's request and entered default against Sandler. *See* Exhibit 61.

### I.     DEFAULT HAS BEEN ENTERED AGAINST SUKHMAN

40.     On April 11, 2016, Sukhman was properly served the Second Amended Complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure, and a duly executed affidavit of service was filed with the Court. *See* Exhibit 41 at ¶ 2; Exhibit 50.

41.     Sukhman failed to serve and/or file an answer, or otherwise respond to the Second Amended Complaint. Exhibit 41 at ¶ 5.

42.     On May 20, 2016, Allstate requested the entry of default against Sukhman. *See* ECF No. 614.

43.     On May 23, 2016, the Clerk of Court granted Allstate's request and entered default against Sukhman. *See* Exhibit 61.

**J.    DEFAULT HAS BEEN ENTERED AGAINST TAHIR**

44.    On April 20, 2016, Tahir was properly served the Second Amended Complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure, and a duly executed affidavit of service with respect to Tahir was filed with the Court.  *See* Exhibit 42 at ¶ 2; Exhibit 51.

45.    Tahir failed to serve and/or file an answer, or otherwise respond to the Second Amended Complaint. Exhibit 42 at ¶ 5.

46.    On May 20, 2016, Allstate requested the entry of default against Tahir.  *See* ECF No. 607; Exhibit 5.

47.    On May 23, 2016, the Clerk of Court entered default against Tahir.  *See* Exhibit 63.

**K.    DEFAULT HAS BEEN ENTERED AGAINST J&L MEDICAL**

48.    J&L Medical was properly served the Second Amended Complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure, and a duly executed affidavit of service with respect to J&L Medical was filed with the Court.  *See* Exhibit 43 at ¶ 2; Exhibit 52.

49.    J&L Medical failed to serve and/or file an answer, or otherwise respond to the Second Amended Complaint. Exhibit 43 at ¶ 3.

50.    On April 28, 2016, Allstate requested the entry of default against J&L Medical. *See* ECF No. 547.

51.    On April 28, 2016, the Clerk of Court entered default against J&L Medical.  *See* Exhibit 64.

**L.    INVESTIGATION PURSUANT TO SERVICE MEMBERS CIVIL RELIEF ACT (50 U.S.C. § 521)**

52.    Pursuant to the requirements of 50 U.S.C. § 521(b), Allstate has made a careful investigation of whether Zemlyansky, Danilovich, Tahir, Bard, Sandler, Zaidman, Lereah, and

Sukhman are in the military by seeking a certificate from the Department of Defense Manpower Data Center, and the certificates, attached as Exhibits 1-8, indicate that Zemlyansky, Danilovich, Tahir, Bard, Sandler, Zaidman, Lereah, and Sukhman do not currently serve in the United States military.

## II.    FACTUAL BACKGROUND

### A.    PERTINENT CRIMINAL PROCEEDINGS

#### 1.    Zemlyansky and Danilovich

53.    Zemlyansky and Danilovich, among others, were indicted in the United States District Court for the Southern District of New York in February 2012 in connection with this elaborate scheme to defraud No-Fault insurers, *see United States v. Zemlyansky*, 1:12-cr-171 (JPO) (S.D.N.Y. 2012) ("Zemlyansky criminal matter").  SAC at ¶¶ 216-217; *see also* Exhibit 67, attached hereto.

54.    The indictment charged the defendants, variously, with health care fraud (18 U.S.C. § 1347), mail fraud (18 U.S.C. § 1341), money laundering (18 U.S.C. § 1349), conspiracy to commit these offenses, and violations of RICO, 18 U.S.C. § 1962.  SAC at ¶ 217; Exhibit 67, attached hereto.

55.    A superseding information was filed against Zemlyansky, and others, on May 16, 2013.  SAC at ¶ 218.

56.    This superseding indictment charged Zemlyansky and Danilovich with healthcare fraud, mail fraud, money laundering, conspiracy to commit these offenses, and RICO violations.[3] *Id*.

---

[3] After a trial in September and October 2013, a mistrial was declared as to the counts against Zemlyansky and Danilovich for which the jury failed to reach a unanimous verdict.  SAC at ¶ 225.

57.     A superseding indictment was filed on January 28, 2014 against Zemlyansky and Danilovich charging the pair with racketeering conspiracy stemming from their illegal activities, including the No-Fault insurance fraud scheme, as well as securities fraud and related charges. SAC at ¶ 227; *see also* Exhibit 68, attached hereto.

58.     After a jury trial, on March 19, 2015, Zemlyansky was found guilty of racketeering conspiracy to commit mail fraud, wire fraud, and money laundering relating to a No-Fault insurance fraud scheme and an investment fraud scheme, investment fraud, securities fraud, and illegal gambling, conspiracy to commit securities fraud, securities fraud, conspiracy to commit mail and wire fraud in relation to the investment fraud scheme, mail fraud in relation to the investment fraud scheme, and wire fraud relating to the investment fraud scheme. SAC at ¶ 229.

59.     On July 30, 2015, a superseding indictment was filed under seal as to Danilovich. *Id.* at ¶ 230.

60.     After a jury trial, on November 5, 2015, Danilovich was found guilty of racketeering conspiracy, securities fraud conspiracy, securities fraud, conspiracy to commit mail and wire fraud in relation to securities fraud schemes, mail fraud and wire fraud in relation to the securities fraud scheme, conspiracy to commit mail and wire fraud in relation to No-Fault insurance, mail fraud and wire fraud in relation to No-Fault insurance, health care fraud, mail fraud and wire fraud as to No-Fault insurance, money laundering conspiracy in relation to No-Fault scheme, and three (3) counts of money laundering in relation to the No-Fault scheme. *Id.* at ¶ 231.

## 2. __Zaidman__

61.    Zaidman, among others, was indicted in the United States District Court for the Southern District of New York in a Superseding Indictment filed on May 21, 2013 in connection with this elaborate scheme to defraud No-Fault insurers, *see United States v. Zayonts, et al.*, S14 12-cr-171 (JPO) (S.D.N.Y. 2012) and *United States v. Zemlyansky, et al.*, S1 12-cr-171 (JPO) (S.D.N.Y. 2012). SAC at ¶¶ 216-219; *see also* Exhibit 67, attached hereto.

62.    The superseding indictment charged Zaidman with healthcare fraud conspiracy and mail fraud conspiracy. SAC at ¶ 219.

63.    On August 28, 2013, Zaidman pleaded guilty to conspiracy to commit healthcare fraud. *Id.* at ¶¶ 319-325; *see also* Exhibit 69, attached hereto.

64.    As part of her guilty plea, Zaidman admitted that "[i]n June 2010, [she] started working on behalf of a number of medical clinics that [she] knew to be managed by non-medical personnel[.]" SAC at ¶ 320; *see also* Exhibit 69 at 11:4-6, attached hereto.

65.    Zaidman further admitted that "[d]espite questions in [her] mind about the legality of what was happening, [she] deliberately did not find out and instead performed billing and arbitration services for their medical clinics." SAC at ¶ 321; *see also* Exhibit 69 at 11:7-11, attached hereto.

66.    Zaidman acknowledged that she "knew that the non-medical workers had a lot of control over the clinics" and that she "did billing while representing to the insurance companies that these clinics were being operated in accordance with the law."  SAC at ¶¶ 323-324; *see also* Exhibit 69 at 11:12-13, 12:8-10, attached hereto.

67.    Items seized by the FBI from DZ Services, Inc., which was owned by Zaidman, revealed a check issued by an insurance company to Bard Acupuncture as well as deposit slips,

16

signed checkbooks, a password, the certificate of incorporation and a TIN request relating to Bard Acupuncture. SAC at ¶¶ 327-328; *see also* Exhibit 70 at 3654:9-25, 3656:21-24, 3665:11-23, 3666:1-19, 3667:1-7, 20-25-3668:1-25, 3669:4-6, 3675:9-15, 3677:18-25, 3678:4-8, 9-14, 3680:2-19, attached hereto; Exhibit 71 at 258:7-18, 261:21-25-262:1-6, 274:20-25, 279:7-11, 282:4-21, 284:4-21, 280:3-25, 281:5-14, 282:4-21, 283:4-23, attached hereto; Exhibit 72 at 1053:12-18, 1055:15-18, 1070:2-25, 1071:15-25-1072:1-25, 1073:11-13, 1085:5-20, 1100:18-22, 1101:7-13, 1104:20-25, 1081:20-24, 1086:4-20, 1091: 13-18, 1095:19-25, attached hereto; Exhibit 73 at 1889:1-10, 1890:24-25-1891:1-4, 1902:21-25-1903:1-2, 1904:2-12, 1905:2-10, 1906:19-25-1907:2-19, 1909:2-19, 1910:13-25, 1911:3-7, 1912:1-12, 1914:13-22, attached hereto.

### 3.    <u>Lereah</u>

68.    Lereah was indicted in the Zemlyansky criminal matter in the United States District Court for the Southern District of New York in February 2012 in connection with this elaborate scheme to defraud No-Fault insurers. SAC at ¶¶ 216-217; *see also* Exhibit 67, attached hereto.

69.    The indictment charged Lereah with health care fraud, mail fraud, money laundering, conspiracy to commit these offenses, and violations of RICO. SAC at ¶ 217; *see also* Exhibit 67, attached hereto.

70.    A superseding information was filed against Lereah on May 10, 2013. SAC at ¶ 336; *see also* Exhibit 74, attached hereto.

71.    This superseding indictment charged Lereah with one count of mail fraud and health care fraud conspiracy in violation of 18 U.S.C. § 1349, one count of health care fraud in violation of 18 U.S.C. § 1347, one count of conspiracy to commit money laundering in violation

of 18 U.S.C. § 1956(h), and one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). *See* Exhibit 74, attached hereto.

72.     On or about May 10, 2013, Lereah pleaded guilty to each of these counts. SAC at ¶ 336.

### 4.     **Sandler**

73.     Sandler was charged under a one-count superseding information in the United States District Court for the Southern District of New York in March 2013 as part of the scheme alleged in the Zemlyansky criminal matter, *see United States v. Sandler*, S10 12-cr-171 (JPO). SAC at ¶ 239; *see also* Exhibits 75-76, attached hereto.

74.     Sandler was charged with conspiracy to commit mail fraud and healthcare fraud in violation of 18 U.S.C. §§ 1341 and 1347. SAC at ¶ 239; *see also* Exhibits 75-76, attached hereto.

75.     On March 8, 2013, Sandler pleaded guilty to conspiracy to commit mail fraud and health care fraud. SAC at ¶¶ 239-240; *see also* Exhibits 75-76, attached hereto.

76.     Sandler specifically pleaded guilty to conspiring with Sukhman to own and operate medical clinics that were incorporated by licensed healthcare providers in violation of New York law. SAC at ¶ 239; *see also* Exhibit 76, attached hereto.

### 5.     **Sukhman**

77.     Sukhman was charged under an eight-count criminal information in the United States District Court for the Southern District of New York in February 2012 in connection with the Zemlyansky criminal matter. *See* Exhibit 77, attached hereto.

78.     Sukhman was charged with racketeering conspiracy, health care fraud conspiracy, health care fraud, conspiracy to commit mail fraud, mail fraud, conspiracy to commit money laundering, money laundering, and management of an illegal gambling business. *See id.*

79.     On February 22, 2012, Sukhman pleaded guilty to racketeering conspiracy, conspiracy to commit healthcare fraud, healthcare fraud, conspiracy to commit mail fraud, mail fraud, conspiracy to commit money laundering, money laundering, and managing an illegal gambling business. SAC at ¶ 393; *see also* Exhibit 78, attached hereto.

80.     Sukhman testified in the criminal trials of several of his confederates, including Zemlyansky and Danilovich, regarding his and his confederates' participation in this scheme to defraud. SAC at ¶ 394; *see also* Exhibit 70.

**B.     GENERAL OVERVIEW OF THE SCHEME TO DEFRAUD**

81.     As part of this scheme, the Defaulting Defendants and their cohorts devised a scheme to defraud Allstate by circumventing New York laws regarding the ownership of professional healthcare service entities (hereafter referred to as "PCs"). SAC at ¶ 432.

82.     This scheme involved the organization of a series of PCs for the sole purpose of defrauding Allstate under the No-Fault laws. *Id.* at ¶ 433.

83.     The guilty pleas and admissions of Zemlyansky's co-conspirators (which include several of the Defaulting Defendants, among others), as well as the testimony and evidence presented during the course of the criminal trials in the Zemlyansky criminal matter, disclosed specific facts regarding the creation and execution of this scheme to defraud. *Id.* at ¶ 431.

84.     Specifically, the defendants accomplished their scheme by organizing Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, Comprehension, V.S. Care,

19

Canon Chiropractic, Victory Medical, SM Chiropractic, Precision Medical, J&L Medical, Golden Star, and Paragon Medical, which were held out to Allstate and the general public as entities that were legitimately and lawfully incorporated, operated, and controlled in accordance with New York law. *Id.* at ¶¶ 479-501; 502-516; 560-574; 575-589; 590-604; 678-692; 693-707; 708-722; 738-752; 768-782; 783-797; 798-812; 813-828; 829-843; 844-858; 859-877; 878-892; 926-935 (alleging that Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, Comprehension, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, Precision Medical, J&L Medical, Golden Star, and Paragon Medical were caused to make misrepresentations to Allstate regarding their eligibility for No-Fault benefits, upon which Allstate justifiably relied); *see also* Exhibit 71 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

85.     Allstate has established that, in order to facilitate the fraudulent scheme, Zemlyansky, Danilovich, Sandler, Sukhman, Andrey Anikeyev ("Anikeyev"), Zaidman, Mikhail Ostrumsky ("Ostrumsky"), Treysler, Lereah, Michael Morgan ("Morgan"), Mark Danilovich, Sol Naimark ("Naimark"), Lynda Tadder ("Tadder"), Yuriy Zayonts, Irina Zayonts, Kremerman, Zaretskiy, and Maurello (collectively, "Management Defendants"), conspired with Tatyana Gabinskaya, M.D ("Gabinskaya"), Lauretta Grzegorczyk, M.D. ("Grzegorczyk"), Irina Logman, L.Ac. ("Logman"), Malak Ishak Shehata Azab, P.T. ("Azab"), Ehab El-Sayed, P.T. ("El-Sayed"), Billy Geris, M.D. ("Geris"), Marc Hilaire, M.D. ("Hilaire"), Nestor Nicolaides, DC ("Nicolaides"), Bard, Afdal Abdelaziz Elreweny, P.T. ("Elreweny"), Oksana Lendel, L.Ac. ("Lendel"), Leonid Simakovsky, D.C. ("Simakovsky"), Ahmed Adel Elsoury, M.D. ("Elsoury"), Russell Nersesov, D.C. ("Nersesov"), Tahir, Victoria Tsinberg, M.D. ("Tsinberg"), and Ian

20

Prescott, M.D. ("Prescott") (collectively, "Nominal Owners") to induce these healthcare professionals to cede ownership and control of their respective PCs—i.e., Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, Comprehension, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, Precision Medical, J&L Medical, Golden Star, and Paragon Medical—to the Management Defendants. *Id.*

86.    The Management Defendants, unlicensed persons who operated and controlled the PCs within the network, recruited the Nominal Owners to the scheme by offering a salary or other form of compensation to incorporate the fraudulent PCs.  *Id.* at ¶¶ 437-438.

87.    The Nominal Owners did not exert ownership or control over Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, Comprehension, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, Precision Medical, J&L Medical, Golden Star, and/or Paragon Medical.  Instead, the Management Defendants operated and controlled Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, Comprehension, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, Precision Medical, J&L Medical, Golden Star, and/or Paragon Medical for the express purpose of circumventing the prohibition against non-licensed laypersons receiving No-Fault benefits under New York law.  SAC at ¶¶ 479-501; 502-516; 560-574; 575-589; 590-604; 678-692; 693-707; 708-722; 738-752; 768-782; 783-797; 798-812; 813-828; 829-843; 844-858; 859-877; 878-892; *see also* Exhibit 71 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

88.     Although the PCs in the network purported to be legitimate healthcare clinics, they were, in fact, nothing more than healthcare fraud mills that routinely billed No-Fault insurers for treatments that were either (1) never actually provided, or (2) not medically necessary.  SAC at ¶¶ 436, 441.

89.     To increase the volume of fraudulent billing submitted to No-Fault insurers, the Management Defendants also arranged for the use of: (1) "runners" paid to recruit patients to receive medically unnecessary treatments at PCs within the network; and (2) kickback/referral agreements by which the network PCs customarily referred their patients to other PCs in order to bill for a multitude of worthless treatment, including acupuncture, chiropractic, physical therapy, electrodiagnostic testing, neurological services, psychological services, imaging studies, range of motion testing, outcome assessment testing, functional capacity testing, pain management services, audiology, manipulation under anesthesia, and durable medical equipment.  *Id.* at ¶¶ 442-447.

90.     Moreover, Allstate alleges that the defendants conspired to create false and fictitious "No-Fault" healthcare records and invoices, and to submit the same to Allstate—using the U.S. Mail—demanding payment of assigned No-Fault benefits.  *Id.* at ¶¶ 893-899; *see also* Exhibit 31, attached hereto.

91.     The records and invoices created and submitted by the defendants on behalf of the Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, Comprehension, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, Precision Medical, J&L Medical, Golden Star, and Paragon Medical were false and fraudulent because they represented that these PCs were owned and operated by a licensed medical professional in accordance with

New York law, when, in fact, one or more non-licensed layperson controlled and operated these PCs. SAC at ¶¶ 480, 488 (alleging that all decision-making authority relating to the operation and management of Clearview and Novacare was vested exclusively with non-licensed laypersons); ¶¶ 484, 496, 499 (alleging that Clearview and Novacare were ineligible for No-Fault benefits because they were unlawfully incorporated, owned, and controlled by non-physicians); ¶ 508 (alleging that all decision-making authority relating to the operation and management over McGuire and Maguire was vested exclusively with non-licensed laypersons); ¶¶ 511, 514 (alleging that McGuire and Maguire were ineligible for No-Fault benefits because they were unlawfully incorporated, owned, and controlled by non-physicians); ¶¶ 591, 599 (alleging that decision-making authority relating to the operation and management over Igla was vested exclusively with non-licensed laypersons); ¶¶ 594, 595, 601, 604 (alleging that Igla was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-acupuncturists); ¶¶ 709, 717 (alleging that all decision-making authority relating to the operation and management of Advanced Quality was vested exclusively with non-licensed laypersons); ¶¶ 712, 713, 719, 722 (alleging that Advanced Quality was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physical therapists); ¶¶ 769, 777 (alleging that decision-making authority relating to the operation and management of Main Care and Main Rehab was vested exclusively with non-licensed laypersons); ¶¶ 772, 773, 774, 779, 782 (alleging that Main Care and Main Rehab were ineligible for No-Fault benefits because they were unlawfully incorporated, owned, and controlled by non-physical therapists); ¶¶ 784, 792 (alleging that all decision-making authority relating to the operation and management of Community Medical was vested with non-licensed laypersons); ¶¶ 787, 788, 789, 794, 797 (alleging that Community Medical was ineligible for No-Fault benefits

because it was unlawfully incorporated, owned, and controlled by non-physicians); ¶¶ 830, 838 (alleging that all decision-making authority relating to the operation and management of Move Free was vested exclusively with non-licensed laypersons); ¶¶ 833, 834, 835, 840, 843 (alleging that Move Free was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-chiropractors); ¶¶ 845, 853 (alleging that all decision-making authority relating to the operation and management of Bard Acupuncture was vested exclusively with non-licensed laypersons); ¶¶ 848, 849, 850, 855, 858 (alleging that Bard Acupuncture was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-acupuncturists); ¶¶ 879, 887 (alleging that all decision-making authority relating to the operation and management of Effective Care and Comprehension was vested exclusively with non-licensed laypersons); ¶¶ 882, 883, 884, 889, 892 (alleging that Effective Care and Comprehension were ineligible for No-Fault benefits because they were unlawfully incorporated, owned, and controlled by non-physical therapists); ¶ 561 (alleging that all decision-making authority relating to the operation and management of V.S. Care was vested exclusively with non-licensed laypersons); ¶¶ 565, 571 (alleging that V.S. Care was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-acupuncturists); ¶ 576 (alleging that all decision-making authority relating to the operation and management of Canon Chiropractic was vested exclusively with non-licensed laypersons, including Sandler); ¶¶ 580, 586 (alleging that Canon Chiropractic was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-chiropractors); ¶ 679 (alleging that all decision-making authority relating to the operation and management of SM Chiropractic was vested exclusively with non-licensed laypersons); ¶¶ 683, 689 (alleging that SM Chiropractic was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and

controlled by non-chiropractors); ¶ 694 (alleging that all decision-making authority relating to the operation and management of Precision Medical was vested exclusively with non-licensed laypersons); ¶¶ 698, 704 (alleging that Precision Medical was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians); ¶ 739 (alleging that all decision-making authority relating to the operation and management of Victory Medical was vested exclusively with non-licensed laypersons); ¶¶ 743, 749 (alleging that Victory Medical was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians); ¶¶ 814, 823 (alleging that all decision-making authority related to the operation and management of J&L Medical was vested exclusively with Maurello, a non-physician); ¶ 819 (alleging that J&L Medical was never eligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians); ¶¶ 860, 872 (alleging that all decision-making authority relating to the operation and management of Golden Star and Paragon Medical was vested exclusively with non-licensed laypersons); ¶ 874 (alleging that Golden Star and Paragon Medical were, at all relevant times, ineligible as a matter of law to receive No-Fault benefits because they were unlawfully incorporated, owned, and controlled by non-physicians).

92.    In reliance upon the defendants' misrepresentations, Allstate made No-Fault benefit payments to, or for the benefit of, Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, Comprehension, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, Precision Medical, J&L Medical, Golden Star, and/or Paragon Medical during the course of this scheme. *Id.* at ¶ 955.

93.     The Management Defendants siphoned the professional fees and proceeds generated by the PCs by causing the PCs to make payments to phony shell companies controlled by the Management Defendants, and by engaging in money laundering activities. *Id.* at ¶¶ 457, 900-925.

## III.     ALLSTATE'S ALLEGATIONS AGAINST THE DEFAULTING DEFENDANTS

### A. ZEMLYANSKY

94.     Zemlyansky conspired with (a) licensed physicians, chiropractors, acupuncturists, and physical therapists, Gabinskaya, Grzegorczyk, Logman, Azab, El-Sayed, Geris, Hilaire, Nicolaides, Bard, and Elreweny; (b) licensed chiropractor employee, Chad Greenshner, DC ("Greenshner"); (c) non-licensed laypersons, Danilovich, Zaidman, Lereah, Sandler, Anikeyev, Sukhman, Naimark, Mark Danilovich, Morgan, Ostrumsky, Treysler, and Tadder; and (d) professional healthcare service entities, Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension (collectively, "Zemlyansky-controlled PCs") to defraud Allstate over many years.[4]

95.     Zemlyansky, in concert with several of the Defaulting Defendants, and others, schemed to defraud Allstate by: (a) operating Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension in violation of New York law; (b) engaging in unlawful fee-splitting with several licensed healthcare professionals (i.e., Gabinskaya, Grzegorczyk, Logman, Azab, El-Sayed, Geris, Hilaire, Nicolaides, Bard, and Elreweny); (c)

---

[4] Allstate has resolved its claims with Gabinskaya, Logman, Azab, Clearview, Novacare, Igla, and Advanced Quality, and these individuals and entities are not named defendants in Allstate's Second Amended Complaint. *See* ECF Nos. 473, 459. However, Zemlyansky remains jointly and severally liable for the damages caused by his conspiracy with these individuals and entities.

knowingly submitting, or causing to be submitted, medical documentation—namely, NF-3 forms—representing that each of the Zemlyansky-controlled PCs was owned and operated in accordance with New York law when, in fact, these entities were operated and controlled by non-licensed laypersons—including Zemlyansky—thus making them ineligible for No-Fault reimbursement under New York Insurance Law § 5102; (d) engaging in a pattern and practice of submitting false healthcare records and invoices through the U.S. Mail demanding payment from Allstate; and (e) engaging in the unlawful laundering of No-Fault proceeds collected by the Zemlyansky-controlled PCs in violation of 18 U.S.C. § 1956. SAC at ¶¶ 479-501 (alleging that Clearview and Novacare were operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 502-516 (alleging that McGuire and Maguire were operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 590-604 (alleging that Igla was operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 708-722 (alleging that Advanced Quality was operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 768-782 (alleging that Main Care and Main Rehab were operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 783-797 (alleging that Community Medical was operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 798-812 (alleging that KKM was operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 829-843 (alleging that Move Free was operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 844-858 (alleging that Bard Acupuncture was operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 878-892 (alleging that Effective Care and Comprehension were operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 893-899 (alleging the defendants' use of the

U.S. Mail in violation of 18 U.S.C. § 1341); ¶¶ 900-925 (alleging the defendants' laundering of monetary instruments in violation of 18 U.S.C. § 1956).

96.     The records and invoices that Zemlyansky and his cohorts mailed (or caused to be mailed) to Allstate were false and fraudulent because they represented that Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension were owned and operated in accordance with New York law.  *Id.* at ¶¶ 6, 479-501, 502-516, 590-604, 708-722, 768-782,783-797, 798-812, 829-843, 844-858, 878-892 (alleging the defendants' use of statutory NF-3 forms to make material misrepresentations to Allstate regarding Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension).

97.     Allstate has established the damages caused by Zemlyansky and his co-conspirators through the unlawful operation and management of the Zemlyansky-controlled PCs. *Id.* at ¶ 955; *see also* Exhibits 9-22, attached hereto.

98.     In reliance upon the representations contained in the records and invoices mailed to Allstate on behalf of the Zemlyansky-controlled PCs, Allstate was induced to pay Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension a total of $3,532,970.14 in connection with claims made for reimbursement of the entities' patients' No-Fault insurance benefits.  All of the Zemlyansky-controlled PCs were lawfully ineligible to collect and retain these payments based on the defendants' intentional violations of New York law.  SAC at ¶¶ 498, 513, 541, 603, 721, 781, 796, 811, 842, 857, 891, 926-935, 955; *see also* Exhibits 9-22, attached hereto.

28

99. At all relevant times, Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension were ineligible to receive these payments as a result of Zemlyansky's intentional violations of New York law. *Id.* at ¶¶ 499, 514, 604, 722, 782, 797, 812, 843, 858, 892.

## 1. Zemlyansky's Role in the Defendants' Scheme to Defraud

100. At all relevant times, Zemlyansky was a key participant in the defendants' scheme to defraud.

101. Zemlyansky knowingly conspired with others to defraud Allstate by participating in the operation, management, and control of Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension in violation of New York law. *See* SAC at ¶ 16 (alleging that Zemlyansky has never been a licensed healthcare professional); ¶¶ 479-501 (alleging that Clearview and Novacare were operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 502-516 (alleging that McGuire and Maguire were operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 590-604 (alleging that Igla was operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 708-722 (alleging that Advanced Quality was operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 768-782 (alleging that Main Care and Main Rehab were operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 783-797 (alleging that Community Medical was operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 798-812 (alleging that KKM was operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 829-843 (alleging that Move Free was operated and

controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 844-858 (alleging that Bard Acupuncture was operated and controlled by non-licensed laypersons, including Zemlyansky); ¶¶ 878-892 (alleging that Effective Care and Comprehension were operated and controlled by non-licensed laypersons, including Zemlyansky); *see also* Exhibit 71 at 387:20–388:4, 398:22–25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

102.    Zemlyansky, Danilovich, and Zaidman—and not the registered owner of Clearview (i.e., Gabinskaya)—controlled all material aspects of the operation of Clearview. *Id.* at ¶¶ 479-482, 487-489 (alleging that all decision-making authority relating to the operation and management of Clearview was vested exclusively with non-licensed laypersons, including Zemlyansky, and that Clearview was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

103.    Zemlyansky, Danilovich, and Lereah—and not the registered owner of Novacare (i.e., Gabinskaya)—controlled all material aspects of the operation of Novacare. *Id* (alleging that all decision-making authority relating to the operation and management of Novacare was vested exclusively with non-licensed laypersons, including Zemlyansky, and that Novacare was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

104.    Zemlyansky, Danilovich, Sandler, Lereah, Anikeyev, Sukhman, and Naimark—and not the registered owner of McGuire (i.e., Grzegorczyk)—controlled all material aspects of the operation of McGuire. *Id.* at ¶¶ 502-512 (alleging that all decision-making authority relating to the operation and management of McGuire was vested exclusively with non-licensed laypersons, including Zemlyansky, and that McGuire was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

105.    Zemlyansky, Danilovich, Sandler, Anikeyev, and Sukhman—and not the registered owner of Maguire (i.e., Grzegorczyk)—controlled all material aspects of the operation of Maguire. *Id.* (alleging that all decision-making authority relating to the operation and management of Maguire was vested exclusively with non-licensed laypersons, including Zemlyansky, and that Maguire was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

106.    Zemlyansky, Danilovich, Mark Danilovich, and Zaidman—and not the registered owner of Igla (i.e., Logman)—controlled all material aspects of the operation of Igla.  *Id.* at ¶¶ 590-593, 598-599 (alleging that all decision-making authority relating to the operation and management of Igla was vested exclusively with non-licensed laypersons, including Zemlyansky, and that Igla was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-acupuncturists).

107.    Zemlyansky, Danilovich, Sandler, Sukhman, Morgan, and Zaidman—and not the registered owner of Advanced Quality (i.e., Azab)—controlled all material aspects of the operation of Advanced Quality. *Id.* at ¶¶ 708-711, 716-717 (alleging that all decision-making authority relating to the operation and management of Advanced Quality was vested exclusively with non-licensed laypersons, including Zemlyansky, and that Advanced Quality was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physical therapists).

108.    Zemlyansky, Danilovich, Ostrumsky, and Treysler—and not the registered owner of Main Care (i.e., El-Sayed)—controlled all material aspects of the operation of Main Care. *Id.* at ¶¶ 768-771, 776-777 (alleging that all decision-making authority relating to the operation and management of Main Care was vested exclusively with non-licensed laypersons, including

Zemlyansky, and that Main Care was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physical therapists).

109.    Zemlyansky, Danilovich, Ostrumsky, and Treysler—and not the registered owner of Main Rehab (i.e., El-Sayed)—controlled all material aspects of the operation of Main Rehab. *Id.* (alleging that all decision-making authority relating to the operation and management of Main Rehab was vested exclusively with non-licensed laypersons, including Zemlyansky, and that Main Rehab was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physical therapists).

110.    Zemlyansky, Danilovich, Ostrumsky, Tadder, Mark Danilovich, and Zaidman— and not the registered owner of Community Medical (i.e., Geris)—controlled all material aspects of the operation of Community Medical. *Id.* at ¶¶ 340-364 (testimony regarding Zemlyansky's and Danilovich's unlawful control over Community Medical), 783-786, 791-792 (alleging that all decision-making authority relating to the operation and management of Community Medical was vested exclusively with non-licensed laypersons, including Zemlyansky, and that Community Medical was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

111.    Zemlyansky, Danilovich, Mark Danilovich, and Zaidman—and not the registered owner of KKM (i.e., Hilaire)—controlled all material aspects of the operation of KKM. *Id.* at ¶¶ 798-801, 806-807 (alleging that all decision-making authority relating to the operation and management of KKM was vested exclusively with non-licensed laypersons, including Zemlyansky, and that KKM was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

112.    Zemlyansky and Danilovich—and not the registered owner of Move Free (i.e., Nicolaides)—controlled all material aspects of the operation of Move Free. *Id.* at ¶¶ 829-832, 837-838 (alleging that all decision-making authority relating to the operation and management of Move Free was vested exclusively with non-licensed laypersons, including Zemlyansky, and that Move Free was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-chiropractors).

113.    Danilovich, Zemlyansky, and Zaidman—and not the registered owner of Bard Acupuncture (i.e., Bard)—controlled all material aspects of the operation of Bard Acupuncture. *Id.* at ¶¶ 844-847, 852-853 (alleging that all decision-making authority relating to the operation and management of Bard Acupuncture was vested exclusively with non-licensed laypersons, including Zemlyansky, and that Bard Acupuncture was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-acupuncturists).

114.    Danilovich, Zemlyansky, Sukhman, and Morgan—and not the registered owner of Effective Care and Comprehension (i.e., Elreweny)—controlled all material aspects of the operation of Effective Care and Comprehension. *Id.* at ¶¶ 878-881, 886-887 (alleging that all decision-making authority relating to the operation and management of Effective Care and Comprehension was vested exclusively with non-licensed laypersons, including Zemlyansky, and that Effective Care and Comprehension were ineligible for No-Fault benefits because they were unlawfully incorporated, owned, and controlled by non-physical therapists).

115.    As the "managers" of Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension, Zemlyansky and his non-licensed co-conspirators controlled

all aspects of these PCs, including their finances. *Id.* at ¶¶ 500, 515, 543, 602, 720, 780, 795, 810, 841, 856, 890.

116.    The facial validity of each of the Zemlyansky-controlled PCs was used to pervert New York's No-Fault laws to obtain No-Fault payments that these PCs were not legally entitled to collect. *Id.* at ¶¶ 498-499, 513-514, 603-604, 721-722, 781-782, 796-797, 811-812, 842-843, 857-858, 891-892.

## 2.    Zemlyansky's Racketeering Activity

117.    Allstate has established Zemlyansky's role in the defendants' scheme to defraud Allstate. *See* ¶¶ 100-116, *supra*.

118.    Allstate has also demonstrated Zemlyansky's use of the U.S. Mails in conducting the affairs of the Zemlyansky-controlled PCs (i.e., RICO enterprises in which Zemlyansky was a participant) during the relevant treatment period. *See* SAC at ¶¶ 893-899; *see also* Exhibit 31, attached hereto.

### a.    Mail Fraud Racketeering Activity

119.    Zemlyansky submitted (or caused the submission of) patient records and invoices to Allstate on behalf of Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension, knowing that Allstate would rely upon the facial validity of such documents when making direct payments to Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension in connection with assigned No-Fault insurance benefit claims. *See* SAC at ¶¶ 893-899, 930, 932, 934.

**b.  Zemlyansky's Participation in the Operation and Management of the Zemlyansky-Controlled PC RICO Enterprises**

120.    Allstate has established Zemlyansky's role in the fraudulent scheme.  *See* ¶¶ 100-116, *supra*.

121.    By pleading acts of (a) managing, operating, and controlling professional healthcare service entities in violation of New York law, (b) creating falsified records and invoices misrepresenting the ownership of Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension, and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail, Allstate has sufficiently demonstrated that Zemlyansky, at all relevant times, participated in the operation and management of the Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension enterprises.  *See* SAC at ¶¶ 2, 95, 99, 103, 107, 131, 135, 147, 175, 183, 187, 195, 479-501, 502-516, 590-604, 708-722, 768-782, 783-797, 798-812, 829-843, 844-858, 878-892; Exhibit 71 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

**c.  The Damages Caused to Allstate by the Zemlyansky-Controlled PC RICO Enterprises**

122.    As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Clearview totaling $226,491.16 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(a); *see also* Exhibit 9, attached hereto.

123.   As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Novacare totaling $356,343.48 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(b); *see also* Exhibit 10, attached hereto.

124.   As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to McGuire totaling $887,018.77 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(c); *see also* Exhibit 11, attached hereto.

125.   As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Maguire totaling $254,089.71 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(d); *see also* Exhibit 12, attached hereto.

126.   As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Igla totaling $130,481.02 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(w); *see also* Exhibit 13, attached hereto.

127.   As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Advanced Quality totaling $168,092.89 during the course of this scheme. *See* SAC at ¶¶ 935, 955(dd); *see also* Exhibit 14, attached hereto.

128.   As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Main Care

totaling $424,989.88 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(hh); *see also* Exhibit 15, attached hereto.

129.    As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Main Rehab totaling $28,945.20 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(ii); *see also* Exhibit 16, attached hereto.

130.    As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Community Medical totaling $30,054.94 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(jj); *see also* Exhibit 17, attached hereto.

131.    As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to KKM totaling $320,625.11 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(kk); *see also* Exhibit 18, attached hereto.

132.    As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Move Free totaling $112,096.67 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(mm); *see also* Exhibit 19, attached hereto.

133.    As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Bard Acupuncture totaling $109,510.53 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(nn); *see also* Exhibit 20, attached hereto.

134.    As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Effective Care totaling $88,987.74 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(rr); *see also* Exhibit 21, attached hereto.

135.    As a direct and proximate result of Zemlyansky's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Comprehension totaling $395,243.04 during the course of this scheme.  *See* SAC at ¶¶ 935, 955(ss); *see also* Exhibit 22, attached hereto.

### 3.  Zemlyansky's RICO Conspiracy Liability

136.    Allstate has demonstrated actual knowledge and wrongdoing on the part of Zemlyansky, as evidenced by his fraudulent activities.  *See* ¶¶ 100-116, *supra*.

137.    Allstate has established that Zemlyansky agreed to participate with his co-defendants in the operation and management of the Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension RICO enterprises. *See id.*

138.    Allstate has also established that Zemlyansky had actual knowledge of his co-conspirators' role in committing numerous acts of mail fraud during the course of conducting these enterprises' affairs.  *See* SAC at ¶¶ 2, 893, 896, 898.

### 4.  Zemlyansky's Liability on Allstate's State Law Claims

139.    Zemlyansky violated New York law by (a) managing, operating, and controlling Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension in violation of New York law, (b) creating falsified records and invoices misrepresenting the

ownership of the Zemlyansky-controlled PCs, and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail.  *See* SAC at ¶¶ 2, 95, 99, 103, 107, 131, 135, 147, 175, 183, 187, 195, 479-501, 502-516, 590-604, 708-722, 768-782, 783-797, 798-812, 829-843, 844-858, 878-892, 893-899; Exhibit 71 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2–476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

140.    At all relevant times, Zemlyansky and his co-defendants knew that Allstate would rely on the representations contained in the records mailed to Allstate by, or on behalf of, Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension when making payment decisions in connection with assigned No-Fault insurance benefit claims submitted by, or on behalf of, these entities.  SAC at ¶¶ 926-935.

141.    In fact, Allstate did rely on the representations contained in the Zemlyansky-controlled PCs' records and invoices that were created and mailed (or caused to be created and mailed) to Allstate by Zemlyansky and his cohorts when making payments to Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension.  *Id.*

142.    When making payments directly to Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension, Allstate reasonably believed that the entities' and their registered owners' actions conformed to all applicable laws, and that each of the licensee "owners" were bound by their avowed ethical obligations.  *Id.* at ¶ 929.

143. The records and invoices submitted to Allstate in support of the charges at issue—combined with the material misrepresentations described above—were designed to (and, in fact, did) induce Allstate to rely on the accuracy of such documents. *Id.* at ¶ 932.

144. In reliance on the representations that Zemlyansky and his confederates caused the Zemlyansky-controlled PCs to make in each entity's No-Fault reimbursement demands, Allstate paid money to Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension to its detriment—monies that Allstate otherwise would not have paid if the defendants had provided true and accurate information regarding the fact that one or more non-healthcare licensee participated in the operation and control of Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension. *Id.* at ¶ 934.

145. Relying on the misrepresentations contained in the records and invoices created and mailed by Zemlyansky and his cohorts (or those acting at their direction and/or control) on behalf of Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension, Allstate paid a total of $3,532,970.14 to these PCs. *Id.* at ¶ 955; *see also* Exhibits 9-22, attached hereto.

146. Allstate made these payments believing that it was legally obligated to do so. *See* SAC at ¶¶ 926-935.

## B. **DANILOVICH**

147. Danilovich conspired with (a) licensed physicians, chiropractors, acupuncturists, and physical therapists, Gabinskaya, Grzegorczyk, Logman, Azab, El-Sayed, Geris, Hilaire,

Nicolaides, Bard, and Elreweny; (b) licensed chiropractor employee, Greenshner; (c) non-licensed laypersons, Zemlyansky, Zaidman, Lereah, Sandler, Anikeyev, Sukhman, Naimark, Mark Danilovich, Morgan, Ostrumsky, Treysler, and Tadder (collectively, "Management Defendants"); and (d) professional healthcare service entities, Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension (collectively, "Danilovich-controlled PCs") to defraud Allstate over many years.[5]

148.    Danilovich, in concert with several of the Defaulting Defendants and others, schemed to defraud Allstate by: (a) operating Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension in violation of New York law; (b) engaging in unlawful fee-splitting with licensed healthcare professionals (i.e., Gabinskaya, Grzegorczyk, Logman, Azab, El-Sayed, Geris, Hilaire, Nicolaides, Bard, and Elreweny); (c) knowingly submitting, or causing to be submitted, medical documentation—namely, NF-3 forms—representing that each of the Danilovich-controlled PCs was owned and operated in accordance with New York law when, in fact, these entities were operated and controlled by non-licensed laypersons—including Danilovich—thus making them ineligible for No-Fault reimbursement under New York Insurance Law § 5102; (d) engaging in a pattern and practice of submitting false healthcare records and invoices through the U.S. Mail demanding payment from Allstate; and (e) engaging in the unlawful laundering of No-Fault proceeds collected by the Danilovich-controlled PCs in violation of 18 U.S.C. § 1956. SAC at ¶¶ 479-501 (alleging that Clearview and

---

[5] Allstate has resolved its claims with Gabinskaya, Logman, Azab, Clearview, Novacare, Igla, and Advanced Quality and these individuals and entities are not named defendants in Allstate's Second Amended Complaint. *See* ECF Nos. 473, 459. However, Danilovich remains jointly and severally liable for the damages caused by his conspiracy with these individuals and entities.

Novacare were operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 502-516 (alleging that McGuire and Maguire were operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 590-604 (alleging that Igla was operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 708-722 (alleging that Advanced Quality was operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 768-782 (alleging that Main Care and Main Rehab were operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 783-797 (alleging that Community Medical was operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 798-812 (alleging that KKM was operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 829-843 (alleging that Move Free was operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 844-858 (alleging that Bard Acupuncture was operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 878-892 (alleging that Effective Care and Comprehension were operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 893-899 (alleging the defendants' use of the U.S. Mail in violation of 18 U.S.C. § 1341); ¶¶ 900-925 (alleging the defendants' laundering of monetary instruments in violation of 18 U.S.C. § 1956); *see also* Exhibit 81 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

149.    The records and invoices that Danilovich and his cohorts mailed (or caused to be mailed) to Allstate were false and fraudulent because they represented that Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension were owned and operated in accordance with New York law. SAC at ¶¶ 6, 479-501, 502-516, 590-604, 708-722, 768-782, 783-797, 798-812, 829-843, 844-858, 878-892; *see also* Exhibit 71 at 387:20–388:4,

398:22-25,   429:21–430:24,   475:2-476:3,   399:15–401:12,   452:23–453:14,   476:4–477:18, attached hereto.

150.    Allstate has established the damages caused by Danilovich and his co-conspirators through the unlawful operation and management of the Danilovich-controlled PCs. *Id.* at ¶ 955; *see also* Exhibits 9-22, attached hereto.

151.    In reliance upon the representations contained in the records and invoices mailed to Allstate on behalf of the Danilovich-controlled PCs, Allstate was induced to pay Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension a total of $3,532,970.14 in connection with claims made for reimbursement of the entities' patients' No-Fault insurance benefits. All of the Danilovich-controlled PCs were lawfully ineligible to collect and retain these payments based on the defendants' intentional violations of New York law. SAC at ¶¶ 498, 513, 541, 603, 721, 781, 796, 811, 842, 857, 891, 926-935, 955; *see also* Exhibits 9-22, attached hereto.

152.    At all relevant times, Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension were ineligible to receive these payments as a result of Danilovich's intentional violations of New York law. SAC at ¶¶ 499, 514, 604, 722, 782, 812, 843, 858, 892.

### 1.    Danilovich's Role in the Defendants' Scheme to Defraud

153.    At all relevant times, Danilovich was a key participant in the defendants' scheme to defraud.

154.    Danilovich knowingly conspired with others to defraud Allstate by participating in the operation, management, and control of Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension in violation of New York law. *See* SAC at ¶ 18 (alleging that Danilovich has never been a licensed healthcare professional); ¶¶ 479-501 (alleging that Clearview and Novacare were operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 502-516 (alleging that McGuire and Maguire were operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 590-604 (alleging that Igla was operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 708-722 (alleging that Advanced Quality was operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 768-782 (alleging that Main Care and Main Rehab were operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 783-797 (alleging that Community Medical was operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 798-812 (alleging that KKM was operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 829-843 (alleging that Move Free was operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 844-858 (alleging that Bard Acupuncture was operated and controlled by non-licensed laypersons, including Danilovich); ¶¶ 878-892 (alleging that Effective Care and Comprehension were operated and controlled by non-licensed laypersons, including Danilovich); *see also* Exhibit 71 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

155.    Danilovich, Zemlyansky, and Zaidman—and not the registered owner of Clearview (i.e., Gabinskaya)—controlled all material aspects of the operation of Clearview. *Id.* at ¶¶ 479-482, 487-489 (alleging that all decision-making authority relating to the operation and

management of Clearview was vested exclusively with non-licensed laypersons, including Danilovich, and that Clearview was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

156.    Danilovich, Zemlyansky, and Lereah—and not the registered owner of Novacare (i.e., Gabinskaya)—controlled all material aspects of the operation of Novacare. *Id* (alleging that all decision-making authority relating to the operation and management of Novacare was vested exclusively with non-licensed laypersons, including Danilovich, and that Novacare was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

157.    Danilovich, Zemlyansky, Sandler, Lereah, Anikeyev, Sukhman, and Naimark—and not the registered owner of McGuire (i.e., Grzegorczyk)—controlled all material aspects of the operation of McGuire. *Id.* at ¶¶ 502-512 (alleging that all decision-making authority relating to the operation and management of McGuire was vested exclusively with non-licensed laypersons, including Danilovich, and that McGuire was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

158.    Danilovich, Zemlyansky, Sandler, Anikeyev, and Sukhman—and not the registered owner of Maguire (i.e., Grzegorczyk)—controlled all material aspects of the operation of Maguire. *Id.* (alleging that all decision-making authority relating to the operation and management of Maguire was vested exclusively with non-licensed laypersons, including Danilovich, and that Maguire was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

159.    Danilovich, Zemlyansky, Mark Danilovich, and Zaidman—and not the registered owner of Igla (i.e., Logman)—controlled all material aspects of the operation of Igla. *Id.* at ¶¶

590-593, 598-599 (alleging that all decision-making authority relating to the operation and management of Igla was vested exclusively with non-licensed laypersons, including Danilovich, and that Igla was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-acupuncturists).

160.    Danilovich, Zemlyansky, Sandler, Sukhman, Morgan, and Zaidman—and not the registered owner of Advanced Quality (i.e., Azab)—controlled all material aspects of the operation of Advanced Quality. *Id.* at ¶¶ 708-711, 716-717 (alleging that all decision-making authority relating to the operation and management of Advanced Quality was vested exclusively with non-licensed laypersons, including Danilovich, and that Advanced Quality was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physical therapists).

161.    Danilovich, Zemlyansky, Ostrumsky, and Treysler—and not the registered owner of Main Care (i.e., El-Sayed)—controlled all material aspects of the operation of Main Care. *Id.* at ¶¶ 768-771, 776-777 (alleging that all decision-making authority relating to the operation and management of Main Care was vested exclusively with non-licensed laypersons, including Danilovich, and that Main Care was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physical therapists).

162.    Danilovich, Zemlyansky, Ostrumsky, and Treysler—and not the registered owner of Main Rehab (i.e., El-Sayed)—controlled all material aspects of the operation of Main Rehab. *Id.* (alleging that all decision-making authority relating to the operation and management of Main Rehab was vested exclusively with non-licensed laypersons, including Danilovich, and that Main Rehab was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physical therapists).

163.    Danilovich, Zemlyansky, Ostrumsky, Tadder, Mark Danilovich, and Zaidman—and not the registered owner of Community Medical (i.e., Geris)—controlled all material aspects of the operation of Community Medical. *Id.* at ¶¶ 340-364 (testimony regarding Zemlyansky's and Danilovich's unlawful control over Community Medical), 783-786, 791-792 (alleging that all decision-making authority relating to the operation and management of Community Medical was vested exclusively with non-licensed laypersons, including Danilovich, and that Community Medical was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

164.    Danilovich, Zemlyansky, Mark Danilovich, and Zaidman—and not the registered owner of KKM (i.e., Hilaire)—controlled all material aspects of the operation of KKM. *Id.* at ¶¶ 798-801, 806-807 (alleging that all decision-making authority relating to the operation and management of KKM was vested exclusively with non-licensed laypersons, including Danilovich, and that KKM was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

165.    Danilovich and Zemlyansky—and not the registered owner of Move Free (i.e., Nicolaides)—controlled all material aspects of the operation of Move Free. *Id.* at ¶¶ 829-832, 837-838 (alleging that all decision-making authority relating to the operation and management of Move Free was vested exclusively with non-licensed laypersons, including Danilovich, and that Move Free was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-chiropractors).

166.    Danilovich, Zemlyansky, and Zaidman—and not the registered owner of Bard Acupuncture (i.e., Bard)—controlled all material aspects of the operation of Bard Acupuncture. *Id.* at ¶¶ 844-847, 852-853 (alleging that all decision-making authority relating to the operation

and management of Bard Acupuncture was vested exclusively with non-licensed laypersons, including Danilovich, and that Bard Acupuncture was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-acupuncturists).

167.    Danilovich, Zemlyansky, Sukhman, and Morgan—and not the registered owner of Effective Care and Comprehension (i.e., Elreweny)—controlled all material aspects of the operation of Effective Care and Comprehension. *Id.* at ¶¶ 878-881, 886-887 (alleging that all decision-making authority relating to the operation and management of Effective Care and Comprehension was vested exclusively with non-licensed laypersons, including Danilovich, and that Effective Care and Comprehension were ineligible for No-Fault benefits because they were unlawfully incorporated, owned, and controlled by non-physical therapists).

168.    As the "managers" of Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension, Danilovich and his non-licensed co-conspirators controlled all aspects of these PCs, including their finances. *Id.* at ¶¶ 500, 515, 543, 602, 720, 780, 795, 810, 841, 856, 890.

169.    The facial validity of each of the Danilovich-controlled PCs was used to pervert New York's No-Fault laws to obtain No-Fault payments that these PCs were not legally entitled to collect. *Id.* at ¶¶ 498-499, 513-514, 603-604, 721-722, 781-782, 796-797, 811-812, 842-843, 857-858, 891-892.

### 2.    **Danilovich's Racketeering Activity**

170.    Allstate has established Danilovich's role in the defendants' scheme to defraud Allstate. *See* ¶¶ 153-169, *supra*.

171.    Allstate has also demonstrated Danilovich's use of the U.S. Mails in conducting the affairs of the Danilovich-controlled PCs (i.e., RICO enterprises in which Danilovich was a participant) during the course of this scheme. *See* SAC at ¶¶ 893-899; *see also* Exhibit 31, attached hereto.

### a.    Mail Fraud Racketeering Activity

172.    Danilovich submitted (or caused the submission of) patient records and invoices to Allstate on behalf of Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension, knowing that Allstate would rely upon the facial validity of such documents when making direct payments to Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension in connection with assigned No-Fault insurance benefit claims. *See* SAC at ¶¶ 893-899, 930, 932, 934.

### b.    Danilovich's Participation in the Operation and Management of the Danilovich-Controlled PC RICO Enterprises

173.    Allstate has established Danilovich's role in the fraudulent scheme. *See* ¶¶ 153-169, *supra*.

174.    By pleading acts of (a) managing, operating, and controlling professional healthcare service entities in violation of New York law, (b) creating falsified records and invoices misrepresenting the ownership of Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension, and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail, Allstate has sufficiently demonstrated that Danilovich, at all relevant times, participated in the operation and management of the Clearview,

Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension enterprises. *See* SAC at ¶¶ 2, 95, 99, 103, 107, 131, 135, 147, 175, 183, 187, 195, 479-501, 502-516, 590-604, 708-722, 768-782, 783-797, 798-812, 829-843, 844-858, 878-892; *see also* Exhibit 71 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

   c.   **The Damages Caused to Allstate by the Danilovich-Controlled PC RICO Enterprises**

175.   As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Clearview totaling $226,491.16 during the course of this scheme. *See* SAC at ¶¶ 935, 955(a); *see also* Exhibit 9, attached hereto.

176.   As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Novacare totaling $356,343.48 during the course of this scheme. *See* SAC at ¶¶ 935, 955(b); *see also* Exhibit 10, attached hereto.

177.   As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to McGuire totaling $887,018.77 during the course of this scheme. *See* SAC at ¶¶ 935, 955(c); *see also* Exhibit 11, attached hereto.

178.   As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Maguire totaling $254,089.71 during the course of this scheme. *See* SAC at ¶¶ 935, 955(d); *see also* Exhibit 12, attached hereto.

179.    As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Igla totaling $130,481.02 during the course of this scheme. *See* SAC at ¶¶ 935, 955(w); *see also* Exhibit 13, attached hereto.

180.    As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Advanced Quality totaling $168,092.89 during the course of this scheme. *See* SAC at ¶¶ 935, 955(dd); *see also* Exhibit 14, attached hereto.

181.    As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Main Care totaling $424,989.88 during the course of this scheme. *See* SAC at ¶¶ 935, 955(hh); *see also* Exhibit 15, attached hereto.

182.    As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Main Rehab totaling $28,945.20 during the course of this scheme. *See* SAC at ¶¶ 935, 955(ii); *see also* Exhibit 16, attached hereto.

183.    As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Community Medical totaling $30,054.94 during the course of this scheme. *See* SAC at ¶¶ 935, 955(jj); *see also* Exhibit 17, attached hereto.

184.    As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to KKM totaling

$320,625.11 during the course of this scheme. *See* SAC at ¶¶ 935, 955(kk); *see also* Exhibit 18, attached hereto.

185.    As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Move Free totaling $112,096.67 during the course of this scheme. *See* SAC at ¶¶ 935, 955(mm); *see also* Exhibit 19, attached hereto.

186.    As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Bard Acupuncture totaling $109,510.53 during the course of this scheme. *See* SAC at ¶¶ 935, 955(nn); *see also* Exhibit 20, attached hereto.

187.    As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Effective Care totaling $88,987.74 during the course of this scheme. *See* SAC at ¶¶ 935, 955(rr); *see also* Exhibit 21, attached hereto.

188.    As a direct and proximate result of Danilovich's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Comprehension totaling $395,243.04 during the course of this scheme. *See* SAC at ¶¶ 935, 955(ss); *see also* Exhibit 22, attached hereto.

### 3.    **Danilovich's RICO Conspiracy Liability**

189.    Allstate has demonstrated actual knowledge and wrongdoing on the part of Danilovich, as evidenced by his fraudulent activities. *See* ¶¶ 153-169, *supra*.

190.    Allstate has established that Danilovich agreed to participate with his co-defendants in the operation and management of the Clearview, Novacare, McGuire, Maguire,

Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension RICO enterprises. *See id.*

191.    Allstate has also established that Danilovich had actual knowledge of his co-conspirators' role in committing numerous acts of mail fraud during the course of conducting these enterprises' affairs. *See* SAC at ¶¶ 2, 893, 896, 898.

### 4.   Danilovich's Liability On Allstate's State Law Claims

192.    Danilovich violated New York law by (a) managing, operating, and controlling Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension in violation of New York law, (b) creating falsified records and invoices misrepresenting the ownership of the Danilovich-controlled PCs, and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail. *See* SAC at ¶¶ 2, 95, 99, 479-501, 502-516, 590-604, 708-722, 768-782, 783-797, 798-812, 829-843, 844-858, 878-892, 893-925; *see also* Exhibit 71 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

193.    At all relevant times, Danilovich and his co-defendants knew that Allstate would rely on the representations contained in the records mailed to Allstate by, or on behalf of, Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension when making payment decisions in connection with assigned No-Fault insurance benefit claims submitted by, or on behalf of, these entities. SAC at ¶¶ 926-935.

194.    In fact, Allstate did rely on the representations contained in the Danilovich-controlled PCs' records and invoices that were created and mailed (or caused to be created and

mailed) to Allstate by Danilovich and his cohorts when making payments to Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension. *Id.*

195.    When making payments directly to Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension, Allstate reasonably believed that the entities' and their registered owners' actions conformed to all applicable laws, and that each of the licensee "owners" were bound by their avowed ethical obligations. *Id.* at ¶ 929.

196.    The records and invoices submitted to Allstate in support of the charges at issue—combined with the material misrepresentations described above—were designed to (and, in fact, did) induce Allstate to rely on the accuracy of such documents. *Id.* at ¶ 932.

197.    In reliance on the representations that Danilovich and his confederates caused the Danilovich-controlled PCs to make in each entity's No-Fault reimbursement demands, Allstate paid money to Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension to its detriment—monies that Allstate otherwise would not have paid if the defendants had provided true and accurate information regarding the fact that one or more non-healthcare licensee participated in the operation and control of Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension. *Id.* at ¶ 934.

198.    Relying on the misrepresentations contained in the records and invoices created and mailed by Danilovich and his cohorts (or those acting at their direction and/or control) on behalf of Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main

Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, and Comprehension, Allstate paid $3,532,970.14 to these PCs. *Id.* at ¶ 955; *see also* Exhibits 9-22, attached hereto.

199.    Allstate made these payments believing that it was legally obligated to do so. *See* SAC at ¶¶ 926-935.

C. **B**ARD **A**ND **B**ARD **A**CUPUNCTURE

200.    Zemlyansky, Danilovich, and Zaidman conspired with licensed acupuncturist, Bard, to engage in the unlawful operation of the professional service corporation, Bard Acupuncture, to defraud Allstate. SAC at ¶¶ 844-858 (alleging that all decision-making authority in Bard Acupuncture was vested exclusively with non-acupuncturists (i.e., Zemlyansky, Danilovich, and Zaidman), and that Bard Acupuncture was never eligible for No-Fault benefit reimbursement because it was unlawfully incorporated, owned, and controlled by non-licensed persons and engaged in unlawful fee-splitting).

201.    Bard, Zemlyansky, Danilovich, and Zaidman schemed to defraud Allstate by: (a) operating Bard Acupuncture in violation of New York law; (b) engaging in unlawful fee-splitting with non-licensed laypersons (i.e., Zemlyansky and Danilovich); (c) knowingly submitting false medical documentation—namely "NF-3" verification forms—representing that Bard Acupuncture was owned and operated in accordance with New York law when, in fact, Bard Acupuncture was operated and controlled by non-licensed laypersons and thus was—and has always been—ineligible for No-Fault reimbursement; and (d) engaging in a pervasive pattern and practice of submitting false medical documentation through the U.S. Mail demanding payment from Allstate. *Id.* at ¶¶ 2, 844-858.

202. The records and invoices created and submitted to Allstate on behalf of Bard Acupuncture were false and fraudulent because they represented that Bard Acupuncture was owned and operated in accordance with New York law. *Id.* at ¶¶ 844-858, 926-935 (establishing Allstate's justifiable reliance on the defendants' misrepresentations regarding the true ownership and control of Bard Acupuncture).

203. Allstate has established the damages caused by the unlawful operation of Bard Acupuncture during the course of this scheme. *Id.* at ¶ 955(nn); *see also* Exhibit 20, attached hereto.

204. In reliance upon the representations contained in the records and invoices submitted to Allstate by, or on behalf of, Bard Acupuncture, Allstate was wrongfully induced to pay a total of $109,510.53 in No-Fault insurance benefit payments to Bard Acupuncture. SAC at ¶¶ 844-858, 926-935; *see also* Exhibit 20, attached hereto.

205. Bard, Zemlyansky, Danilovich, and Zaidman furthered their fraudulent activities and conducted the affairs of the Bard Acupuncture enterprise through the use of the U.S. Mail in violation of 18 U.S.C. § 1341. SAC at ¶¶ 893-899 (alleging defendants' use of the U.S. Mail in violation of 18 U.S.C. § 1341).

### 1. **Bard's Role in the Defendants' Scheme to Defraud**

206. Bard, individually and with her co-conspirators (i.e., Zemlyansky, Danilovich, and Zaidman), schemed to defraud Allstate by ceding her ownership and control of Bard Acupuncture to non-licensed laypersons (i.e., Zemlyansky, Danilovich, and Zaidman) in violation of New York law. SAC at ¶¶ 184-187, 844-858 (alleging that Bard agreed to falsely represent in the certificate of incorporation filed with the Department of Education that she was the sole shareholder, director and officer of Bard Acupuncture, and that she truly owns and

controls the operations of the Bard Acupuncture when the true ownership and control of Bard Acupuncture rested entirely with one or more non-licensee (i.e., Zemlyansky, Danilovich, and Zaidman).

207.    At all relevant times, Bard was a key participant in the defendants' scheme to defraud.

208.    Zemlyansky, Danilovich, and Zaidman (each of whom were non-licensed laypersons/non-acupuncturists)—and not the licensed acupuncturist that was falsely represented to be the sole officer, director, and shareholder of Bard Acupuncture (i.e., Bard)—(a) hired licensed healthcare professionals, (b) controlled the practice of licensed healthcare professionals, and (c) charged for (and derived an economic benefit from) the services of licensed healthcare professionals. SAC at ¶¶ 846, 856.

209.    At all relevant times, Bard conspired to create invoices and bills that misrepresented that she was the sole officer, director, and shareholder of Bard Acupuncture. *Id.* at ¶¶ 184-187, 844-858.

210.    Bard also used her relationship with Zemlyansky and Danilovich, along with the facial validity of Bard Acupuncture, to pervert New York's No-Fault laws and obtain No-Fault insurance benefit payments that neither she, her co-conspirators, nor Bard Acupuncture were legally entitled to collect. *Id.* at ¶¶ 844-858, 926-935.

## 2.    Bard Acupuncture's Role in the Defendants' Scheme to Defraud

211.    At all relevant times, Bard, Zemlyansky, Danilovich, and Zaidman schemed to defraud Allstate by creating, and then operating and controlling Bard Acupuncture in violation of New York law.  SAC at ¶¶ 184-187, 844-858.

212.     Zemlyansky, Danilovich, and Zaidman (each of whom were non-licensed laypersons/non-acupuncturists)—and not the licensed acupuncturist that was falsely represented to be the sole officer, director, and shareholder of Bard Acupuncture (i.e., Bard)—(a) controlled the management, hiring, and firing of employees of Bard Acupuncture, (b) controlled all other personnel decisions, and (c) controlled the preparation of billing documents and mailings on behalf of Bard Acupuncture. *Id.* at ¶¶ 844-846, 856.

213.     The facial validity of Bard Acupuncture was used to pervert New York's No-Fault laws to obtain No-Fault insurance benefit payments that Bard Acupuncture was not legally entitled to collect. *Id.* at ¶¶ 844-858.

214.     At all relevant times, Bard Acupuncture was operated and controlled by Zemlyansky, Danilovich, and Zaidman, and not Bard. *Id.* (alleging that all decision-making authority relating to the operation and management of the Bard Acupuncture was vested entirely with one or more non-acupuncturist (i.e., Zemlyansky, Danilovich, and Zaidman), and that Bard Acupuncture was ineligible as a matter of law to receive No-Fault benefits as they were fraudulently incorporated and used as conduits to unlawfully split fees with non-licensed laypersons, and not operated or controlled by a licensed acupuncturist).

215.     As the "managers" of Bard Acupuncture, Zemlyansky, Danilovich, and Zaidman (a) hired licensed healthcare professionals, (b) controlled the practice of licensed healthcare professionals, and (c) charged for (and derived an economic benefit from) the services of licensed healthcare professionals. *Id.* at ¶ 856.

### 3.   **Bard's Racketeering Activity**

216.     Allstate has established Bard's role in the defendants' scheme to defraud Allstate. *See* ¶¶ 211-215, *supra.*

217.    Allstate has also demonstrated Bard's and her co-conspirators' use of the U.S. Mails in conducting the affairs or Bard Acupuncture during the course of this scheme. *See* SAC at ¶¶ 893-899; *see also* Exhibit 31, attached hereto.

### a.    Mail Fraud Racketeering Activity

218.    Bard, and her co-conspirators (i.e., Zemlyansky, Danilovich, and Zaidman), submitted, or caused to be submitted, false medical documentation on behalf of Bard Acupuncture, through the U.S. Mail, to Allstate knowing that the documents would be relied upon by Allstate and others in making direct payments in connection with No-Fault insurance claims submitted by, or on behalf of, Bard Acupuncture. SAC at ¶¶ 893-899, 926-935.

219.    Bard mailed, or knowingly caused others to mail, false medical documentation to Allstate. *Id.* at ¶¶ 893-899.

### b.    Bard's Participation in the Operation and Management of the Bard Acupuncture RICO Enterprise

220.    Allstate has established Bard's role in the fraudulent scheme. *See* ¶¶ 211-215, *supra*.

221.    By pleading acts of: (a) ceding control of Bard Acupuncture—a professional service corporation—to laypersons in violation of New York law; (b) creating falsified records and invoices misrepresenting the true ownership status of Bard Acupuncture; and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail, Allstate has sufficiently demonstrated that Bard, at all relevant times, participated in the operation and management of the Bard Acupuncture RICO enterprise.  *See* SAC at ¶¶ 844-858.

### c.    The Damages Caused to Allstate by Bard

222.    As a direct and proximate result of Bard's unlawful and intentional conduct, Allstate paid $109,510.53 to Bard Acupuncture. *See* Exhibit 20.

59

### 4.  Bard's RICO Conspiracy Liability

223.    Allstate has demonstrated actual knowledge and wrongdoing on the part of Bard, as evidenced by her fraudulent activities.  *See* ¶¶ 211-215, *supra*.

224.    Allstate has established that Bard agreed to participate in the operation and management of the Bard Acupuncture RICO enterprise by (a) ceding control of Bard Acupuncture, a professional healthcare service entity, to non-acupuncturists (i.e., Zemlyansky, Danilovich, and Zaidman) in violation of New York law, (b) creating falsified records and invoices misrepresenting the true ownership of Bard Acupuncture, and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail.  *See id.*

225.    Allstate has also established that Bard had actual knowledge of her co-conspirators' role in committing numerous acts of mail fraud during the course of conducting the Bard Acupuncture RICO enterprise's affairs.  SAC at ¶¶ 2, 893, 896, 898.

### 5.  Bard's Liability on Allstate's State Law Claims

226.    Bard violated New York law by: (a) ceding control of Bard Acupuncture to non-licensed laypersons; (b) misrepresenting her ownership and control of Bard Acupuncture when Bard Acupuncture was caused to seek No-Fault benefit reimbursement from Allstate; (c) creating falsified records and invoices in connection with the Bard Acupuncture's claims for No-Fault benefit reimbursement; and (d) transmitting those records and invoices to Allstate, through the U.S. Mail, when demanding payment of assigned No-Fault insurance benefits. *See* SAC at ¶¶ 844-858.

227.    At all relevant times, Bard and her co-conspirators knew that Allstate would rely on the representations contained in Bard Acupuncture's patient records and invoices when making payment decisions. *Id.* at ¶¶ 1-10, 926-935.

228.    In fact, Allstate did rely on the representations contained in Bard Acupuncture's patient documentation created and submitted to Allstate by, or on behalf of, Bard, Zemlyansky, Danilovich, and Zaidman when making payments to Bard Acupuncture. *Id.* at ¶¶ 926-935 (alleging Allstate's justifiable reliance).

229.    When making payments directly to Bard Acupuncture, Allstate reasonably believed that Bard's and Bard Acupuncture's actions conformed to all applicable laws, and that Bard was bound by her avowed ethical obligations. *Id.* at ¶ 927.

230.    The facially valid documents submitted to Allstate by, or on behalf of, Bard Acupuncture in support of the charges at issue—combined with the material misrepresentations described above—were designed to—and, in fact, did—induce Allstate to rely on the accuracy of such documents. *Id.* at ¶¶ 930-932.

231.    In reliance on the representations made to Allstate by these defendants concerning Bard Acupuncture's No-Fault reimbursement eligibility, Allstate paid money to Bard and her co-conspirators to its detriment—monies that Allstate otherwise would not have paid if the defendants had provided true and accurate information concerning Bard Acupuncture's No-Fault reimbursement eligibility. *Id.* at ¶¶ 926-935.

232.    Relying on the misrepresentations contained in the records and invoices created and submitted to Allstate by Bard and her co-conspirators, Allstate was caused to make No-Fault insurance benefit payments to Bard Acupuncture in the amount of $109,510.53. *See* Exhibit 20.

233.    Allstate made these payments to Bard Acupuncture believing that it was legally obligated to do so. SAC at ¶¶ 926-935.

## D. ZAIDMAN

234.    Zaidman conspired with (a) licensed physicians, chiropractors, acupuncturists, and physical therapists (i.e., Gabinskaya, Logman, Azab, Geris, Hilaire, and Bard); (b) non-licensed laypersons (i.e., Danilovich, Zemlyansky, Sandler, Mark Danilovich, Morgan, Sukhman, Ostrumsky, and Tadder); and (c) professional healthcare service entities (i.e., Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture) (collectively, "Zaidman-controlled PCs")) to defraud Allstate over many years.[6]

235.    Zaidman, along with several Defaulting Defendants, and others, schemed to defraud Allstate by: (a) operating Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture; (b) engaging in unlawful fee-splitting with several licensed healthcare professionals (i.e., Gabinskaya, Logman, Azab, Geris, Hilaire, and Bard); (c) knowingly submitting, or causing to be submitted, medical documentation—namely, NF-3 forms—representing that each of the Zaidman-controlled PCs was owned and operated in accordance with New York law when, in fact, these entities were operated and controlled by non-licensed laypersons—including Zaidman—thus making them ineligible for No-Fault reimbursement under New York Insurance Law § 5102; (d) engaging in a pattern and practice of submitting false healthcare records and invoices through the U.S. Mail demanding payment from Allstate; and (e) engaging in the unlawful laundering of No-Fault proceeds collected by Zaidman-controlled PCs in violation of 18 U.S.C. § 1956. SAC at ¶¶ 479-501 (alleging that Clearview was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 590-604 (alleging that Igla was operated and controlled by non-licensed laypersons, including

---

[6] Allstate has resolved its claims with Gabinskaya, Logman, Azab, Clearview, Igla, and Advanced Quality and these individuals and entities are not named defendants in Allstate's Second Amended Complaint. *See* ECF Nos. 473, 459. However, Zaidman remains jointly and severally liable for the damages caused by her conspiracy with these individuals and entities.

Zaidman); ¶¶ 708-722 (alleging that Advanced Quality was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 783-797 (alleging that Community Medical was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 798-812 (alleging that KKM was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 844-858 (alleging that Bard Acupuncture was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 893-899 (alleging the defendants' use of the U.S. Mail in violation of 18 U.S.C. § 1341); ¶¶ 900-925 (alleging the defendants' laundering of monetary instruments in violation of 18 U.S.C. § 1956); *see also* Exhibit 71 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

236.    The records and invoices that Zaidman and her cohorts mailed (or caused to be mailed) to Allstate were false and fraudulent because they represented that Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture were owned and operated in accordance with New York law. SAC at ¶ 6; ¶¶ 479-501 (alleging that Clearview was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 590-604 (alleging that Igla was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 708-722 (alleging that Advanced Quality was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 783-797 (alleging that Community Medical was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 798-812 (alleging that KKM was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 844-858 (alleging that Bard Acupuncture was operated and controlled by non-licensed laypersons, including Zaidman; *see also* Exhibit 71 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

237.    Allstate has established the damages caused by Zaidman and her co-conspirators through the unlawful operation and management of the Zaidman-controlled PCs. SAC at ¶ 955; *see also* Exhibits 9, 13, 14, 17, 18, 20, attached hereto.

238.    In reliance upon the representations contained in the records and invoices mailed to Allstate on behalf of the Zaidman-controlled PCs, Allstate was induced to pay Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture a total of $985,255.65 in connection with claims made for reimbursement of the entities' patients' No-Fault insurance benefits. All of the Zaidman-controlled PCs were lawfully ineligible to collect and retain these payments based on the defendants' intentional violations of New York law. SAC at 498, 603, 721, 796, 811, 857; *see also* Exhibits 9, 13, 14, 17, 18, 20, attached hereto.

239.    At all relevant times, Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture were ineligible to receive these payments as a result of Zaidman's intentional violations of New York law. SAC at ¶¶ 499, 604, 722, 797, 812, 858.

**1.  Zaidman's Role in the Defendants' Scheme to Defraud**

240.    At all relevant times, Zaidman was a key participant in the defendants' scheme to defraud.

241.    Zaidman knowingly conspired with others to defraud Allstate by participating in the operation, management, and control of Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture in violation of New York law. *See* SAC at ¶ 32 (alleging that Zaidman has never been a licensed healthcare professional); ¶¶ 479-501 (alleging that Clearview was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 590-604 (alleging that Igla was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 708-722 (alleging that Advanced Quality was operated and controlled by non-

licensed laypersons, including Zaidman); ¶¶ 783-797 (alleging that Community Medical was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 798-812 (alleging that KKM was operated and controlled by non-licensed laypersons, including Zaidman); ¶¶ 844-858 (alleging that Bard Acupuncture was operated and controlled by non-licensed laypersons, including Zaidman; *see also* Exhibit 71 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

242.    Zaidman, Zemlyansky, and Danilovich—and not the registered owner of Clearview (i.e., Gabinskaya)—controlled the operation of Clearview. SAC at ¶¶ 479-482, 487-489 (alleging that all decision-making authority relating to the operation and management of Clearview was vested exclusively with non-licensed laypersons, including Zaidman, and that Clearview was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians); *see also* Exhibit 81 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

243.    Zaidman, Zemlyansky, and Danilovich—and not the registered owner of Igla (i.e., Logman)—controlled the operation of Igla. SAC at ¶¶ 590-593, 598-599 (alleging that all decision-making authority relating to the operation and management of Igla was vested exclusively with non-licensed laypersons, including Zaidman, and that Igla was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-acupuncturists).

244.    Zaidman, Zemlyansky, Danilovich, Sandler, Sukhman, and Morgan—and not the registered owner of Advanced Quality (i.e., Azab)—controlled the operation of Advanced Quality. *Id.* at ¶¶ 708-711, 716-717 (alleging that all decision-making authority relating to the operation and management of Advanced Quality was vested exclusively with non-licensed

laypersons, including Zaidman, and that Advanced Quality was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physical therapists).

245.    Zaidman, Zemlyansky, Danilovich, and other non-licensees—and not the registered owner of Community Medical (i.e., Geris)—controlled the operation of Community Medical. *Id.* at ¶¶ 783-786, 791-792 (alleging that all decision-making authority relating to the operation and management of Community Medical was vested exclusively with non-licensed laypersons, including Zaidman, and that Community Medical was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

246.    Zaidman, Zemlyansky, and Danilovich—and not the registered owner of Bard Acupuncture (i.e., Bard)—controlled the operation of Bard Acupuncture. *Id.* at ¶¶ 844-847, 852-853 (alleging that all decision-making authority relating to the operation and management of Bard Acupuncture was vested exclusively with non-licensed laypersons, including Zaidman, and that Bard Acupuncture was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-acupuncturists).

247.    As the "managers" of Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture, Zaidman and her co-conspirators controlled all aspects of these PCs, including their finances. *Id.* at ¶¶ 500, 602, 720, 795, 810, 856.

248.    The validity of each of the Zaidman-controlled PCs was used to pervert New York's No-Fault laws to obtain No-Fault payments that these PCs were not legally entitled to collect. *Id.* at ¶¶ 498-499, 603-604, 721-722, 796-797, 811-812, 857-858.

## 2.  Zaidman's Racketeering Activity

249.    Allstate has established Zaidman's role in the defendants' scheme to defraud Allstate. *See* ¶¶ 240-248, *supra*.

66

250.    Allstate has also demonstrated Zaidman's use of the U.S. Mails in conducting the affairs of the Zaidman-controlled PCs during the course of the defendants' scheme. *See* SAC at ¶¶ 893-899; *see also* Exhibit 31, attached hereto.

### a.   <u>Mail Fraud Racketeering Activity</u>

251.    Zaidman submitted (or caused the submission of) patient records and invoices to Allstate on behalf of Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture, knowing that Allstate would rely upon the facial validity of such documents when making direct payments to Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture in connection with assigned No-Fault insurance benefit claims. *See* SAC at ¶¶ 893-899, 930, 932, 934 (alleging the defendants' use of the U.S. Mail in violation of 18 U.S.C. § 1341).

### b.   <u>Zaidman's Participation in the Operation and Management of the Zaidman-Controlled PC RICO Enterprises</u>

252.    Allstate has established Zaidman's role in the fraudulent scheme. *See* ¶¶ 240-248, *supra*.

253.    By pleading acts of (a) managing, operating, and controlling professional healthcare service entities in violation of New York law, (b) creating falsified records and invoices misrepresenting the ownership of Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture, and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail, Allstate has sufficiently demonstrated that Zaidman, at all relevant times, participated in the operation and management of the Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture. *See* SAC at ¶¶ 2, 95, 103, 115, 135, 183, 187, 479-501, 590-604, 708-722, 783-797, 798-812, 844-858; *see also* Exhibit 71 at

387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

### c. The Damages Caused to Allstate by the Zaidman-Controlled PC RICO Enterprises

254.    As a direct and proximate result of Zaidman's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Clearview totaling $226,491.16 during the course of this scheme. *See* SAC at ¶¶ 935, 955(a); *see also* Exhibit 9, attached hereto.

255.    As a direct and proximate result of Zaidman's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Igla totaling $130,481.02 during the course of this scheme *See* SAC at ¶¶ 935, 955(w); *see also* Exhibit 13, attached hereto.

256.    As a direct and proximate result of Zaidman's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Advanced Quality totaling $168,092.89 during the course of this scheme. *See* SAC at ¶¶ 935, 955(dd); *see also* Exhibit 14, attached hereto.

257.    As a direct and proximate result of Zaidman's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Community Medical totaling $30,054.94 during the course of this scheme. *See* SAC at ¶¶ 935, 955(jj); *see also* Exhibit 17, attached hereto.

258.    As a direct and proximate result of Zaidman's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to KKM totaling $320,625.11 during the course of this scheme. *See* SAC at ¶¶ 935, 955(kk); *see also* Exhibit 18, attached hereto.

259.    As a direct and proximate result of Zaidman's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Bard Acupuncture totaling $109,510.53 during the course of this scheme. *See* SAC at ¶¶ 935, 955(nn); *see also* Exhibit 20, attached hereto.

### 3.  Zaidman's RICO Conspiracy Liability

260.    Allstate has demonstrated actual knowledge and wrongdoing on the part of Zaidman, as evidenced by her fraudulent activities. *See* ¶¶ 240-248, *supra*.

261.    Allstate has established that Zaidman agreed to participate with her co-defendants in the operation and management of the Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture RICO enterprises. *See id.*

262.    Allstate has also established that Zaidman had actual knowledge of his co-conspirators' role in committing numerous acts of mail fraud during the course of conducting these enterprises' affairs. *See* SAC at ¶¶ 2, 893, 896, 898.

### 4.  Zaidman's Liability On Allstate's State Law Claims

263.    Zaidman violated New York law by (a) managing, operating, and controlling Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture in violation of New York law, (b) creating falsified records and invoices misrepresenting the ownership of the Zaidman-controlled PCs, and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail. *See* SAC at ¶¶ 2, 95, 103, 115, 135, 183, 187, 479-501, 590-604, 708-722, 783-797, 798-812, 844-858, 893-899; *see also* Exhibit 71 at 387:20–388:4, 398:22-25, 429:21–430:24, 475:2-476:3, 399:15–401:12, 452:23–453:14, 476:4–477:18, attached hereto.

264.    At all relevant times, Zaidman and her co-defendants knew that Allstate would rely on the representations contained in the records mailed to Allstate by, or on behalf of, Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture when making payment decisions in connection with assigned No-Fault insurance benefit claims submitted by, or on behalf of, these entities. SAC at ¶¶ 926-935.

265.    In fact, Allstate did rely on the representations contained in the Zaidman-controlled PCs' records and invoices that were created and mailed (or caused to be created and mailed) to Allstate by Zaidman and her cohorts when making payments to Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture. *Id.*

266.    When making payments directly to Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture, Allstate reasonably believed that the entities' and their registered owners' actions conformed to all applicable laws, and that each of these licensee "owners" were bound by their avowed ethical obligations. *Id.* at ¶ 929.

267.    The records and invoices submitted to Allstate in support of the charges at issue—combined with the material misrepresentations described above—were designed to (and, in fact, did) induce Allstate to rely on the accuracy of such documents. *Id.* at ¶ 932.

268.    In reliance on the representations that Zaidman and her confederates caused the Zaidman-controlled PCs to make in each entity's No-Fault reimbursement demands, Allstate paid money to Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture to its detriment—monies that Allstate otherwise would not have paid if the defendants had provided true and accurate information regarding the fact that one or more non-healthcare licensee participated in the operation and control of Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture. *Id.* at ¶ 934.

269.    Relying on the misrepresentations contained in the records and invoices created and mailed by Zaidman and her cohorts (or those acting at their direction and/or control) on behalf of Clearview, Igla, Advanced Quality, Community Medical, KKM, and Bard Acupuncture, Allstate paid a total of $985,255.65 to these PCs. *Id.* at ¶ 955; *see also* Exhibits 9, 13, 14, 17, 18, 20, attached hereto.

270.    Allstate made these payments believing that it was legally obligated to do so. *See* SAC at ¶¶ 926-935.

**E.  GOLDEN STAR AND PARAGON MEDICAL**

271.    Non-licensed laypersons/non-physicians Zaretskiy, Irina Zayonts, Yuriy Zayonts, Kremerman, and Treysler conspired with licensed physician Prescott to defraud Allstate through the operation of Golden Star and Paragon Medical. *See* SAC at ¶¶ 859-877.

272.    These defendants schemed to defraud Allstate by: (a) operating medical professional service corporations, Golden Star and Paragon Medical, in violation of New York law; (b) engaging in unlawful fee-splitting with non-licensed laypersons; and (c) knowingly submitting false medical documentation—namely "NF-3" forms—representing that Golden Star and Paragon Medical were owned and operated in accordance with New York law when, in fact, Golden Star and Paragon Medical were operated and controlled by one or more non-licensed layperson and thus were—and have always been—ineligible for No-Fault reimbursement under New York Insurance Law § 5102(a). *Id.* at ¶¶ 860, 872, 874 (alleging that all decision-making authority was vested exclusively with several non-licensed laypersons, including Zaretskiy, Irina Zayonts, Yuriy Zayonts, Treysler, and Kremerman, and that Golden Star and Paragon Medical were, at all relevant times, ineligible as a matter of law to receive No-Fault benefits because they

were fraudulently incorporated, used as conduits to unlawfully split fees with non-licensed laypersons, and not operated or controlled by a licensed healthcare professional).

273.    The records and invoices created and submitted to Allstate on behalf of Golden Star and Paragon Medical were false and fraudulent because the invoices represented that Golden Star and Paragon Medical were owned and operated in accordance with No-Fault law. *Id.* at ¶¶ 859-877 (specific allegations of defendants' unlawful operation and control of Golden Star and Paragon Medical).

274.    Allstate has established the damages caused by the unlawful operation of Golden Star and Paragon Medical during the course of this scheme. *Id.* at ¶¶ 955(pp)-(qq); *see also* Exhibits 31-32, attached hereto.

275.    In reliance upon the representations contained in the records and invoices submitted to Allstate by, or on behalf of, Golden Star and Paragon Medical, Allstate was wrongfully induced to pay a total of $485,178.32 in No-Fault insurance benefit payments to Golden Star and Paragon Medical. SAC at ¶¶ 955(pp)-(qq); *see also* Exhibits 29-30, attached hereto.

276.    At all relevant times, Golden Star and Paragon Medical were ineligible to receive these payments as a result of their unlawful operation, and the resulting intentional violations of New York law. SAC at ¶ 874.

## 1.  <u>Golden Star's and Paragon Medical's Role in the Defendants' Scheme to Defraud</u>

277.    At all relevant times, Prescott, Zaretskiy, Irina Zayonts, Yuriy Zayonts, Kremerman, and Treysler schemed to defraud Allstate by creating, and then operating and controlling Golden Star and Paragon Medical in violation of New York law. SAC at ¶¶ 860, 874-875.

278.    Zaretskiy, Irina Zayonts, Yuriy Zayonts, Kremerman, and Treysler (all of whom were non-licensed laypersons/non-physicians)—and not the licensed physician that was falsely represented to be the sole officer, director, and shareholder of Golden Star and Paragon Medical (i.e., Prescott)—were vested with all decision-making authority relating to the operation and management of Golden Star and Paragon Medical. *Id.* at ¶¶ 860, 872 (alleging that all decision-making authority was vested exclusively with Zaretskiy, Irina Zayonts, Yuriy Zayonts, Treysler, and Kremerman).

279.    The facial validity of Golden Star and Paragon Medical was used to pervert New York's No-Fault laws to obtain No-Fault insurance benefit payments that Golden Star and Paragon Medical were not legally entitled to collect. *Id.* at ¶¶ 874-875 (alleging that Golden Star and Paragon Medical were never eligible for No-Fault benefit reimbursement because they were unlawfully incorporated, owned, and controlled by non-licensed persons and engaged in unlawful fee-splitting).

280.    As the "managers" of Golden Star and Paragon Medical, Zaretskiy, Irina Zayonts, Yuriy Zayonts, Kremerman, and Treysler (a) hired licensed healthcare professionals, (b) controlled the practice of licensed healthcare professionals, and (c) charged for (and derived an economic benefit from) the services of licensed healthcare professionals. *Id.* at ¶ 875.

281.    Indeed, Zaretskiy, Irina Zayonts, Yuriy Zayonts, Treysler, and Kremerman have pleaded guilty to criminal charges in the *Zemlyansky* criminal matter, a case which involves substantially similar, if not identical, misconduct that is central to the allegations made against them in Allstate's Second Amended Complaint. *See id.* at ¶¶ 234, 284, 305, 310, 315, 333; *see also* Exhibits 81-90, attached hereto.

282.    Moreover, Prescott has testified, under oath, that he was not the actual owner of either Golden Star or Paragon, and that Zaretskiy and Irina Zayonts were the actual owners of these PCs. SAC at ¶¶ 861-862.

### 2.  <u>Golden Star's and Paragon Medical's Liability on Allstate's State-Law Claims</u>

283.    Golden Star and Paragon Medical violated New York law because each purportedly physician-owned professional service entity (a) was managed, operated, and controlled by one or more non-licensed laypersons, (b) was caused to misrepresent its ownership status when seeking No-Fault benefit reimbursement from Allstate, (c) was caused to create falsified records and invoices in connection with claims for No-Fault benefit reimbursement, and (d) was caused to transmit those falsified records and invoices to Allstate, through the U.S. Mail, when demanding payment of assigned No-Fault insurance benefits. *See* SAC at ¶¶ 6, 859-877 (describing how Zaretskiy, Irina Zayonts, Yuriy Zayonts, Treysler, and Kremerman conspired with Prescott to have Prescott falsely hold himself out to Allstate, and to the public at large, as the sole officer, director, and shareholder of both Golden Star and Paragon Medical), 926-934 (establishing Allstate's justifiable reliance on the defendants' misrepresentations).

284.    At all relevant times, Golden Star and Paragon Medical and their co-defendants knew that Allstate would rely on the representations contained in Golden Star's and Paragon Medical's records and invoices when making payment decisions. *Id.* at ¶¶ 926-934.

285.    In fact, Allstate did rely on the representations contained in the patient documentation created and submitted to Allstate by the defendants on behalf of Golden Star and Paragon Medical when making payments to Golden Star and Paragon Medical. *Id.*

286.    When making payments directly to Golden Star and Paragon Medical, Allstate reasonably believed that Prescott's and his solely "owned" entities' actions conformed to all applicable laws, and that Prescott was bound by his avowed ethical obligations. *Id.* at ¶ 929.

287.    The facially valid documents submitted to Allstate by, or on behalf of, Golden Star and Paragon Medical in support of the charges at issue—combined with the material misrepresentations described above—were designed to—and, in fact, did—induce Allstate to rely on the accuracy of such documents. *Id.* at ¶ 932.

288.    In reliance on the representations made to Allstate by these defendants concerning Golden Star's and Paragon Medical's No-Fault reimbursement eligibility, Allstate paid money to Golden Star and Paragon Medical to its detriment—monies that Allstate otherwise would not have paid if the defendants had provided true and accurate information concerning Golden Star's and Paragon Medical's No-Fault reimbursement eligibility. *Id.* at ¶¶ 933-934.

289.    Relying on the misrepresentations contained in the records and invoices created and submitted to Allstate by, or on behalf of, Golden Star and Paragon Medical, Allstate was caused to make No-Fault insurance benefit payments to Golden Star in the amount of $442,461.24, and to Paragon Medical in the amount of $42,717.08. *Id.* at ¶ 955(pp)-(qq); *see also* Exhibits 29-30, attached hereto.

290.    Allstate made these payments believing that it was legally obligated to do so. SAC at ¶¶ 926-935, 2132.

### F.  LEREAH

291.    Lereah, along with other non-licensed individuals, including, Zemlyansky and Danilovich, conspired with licensed physician, Gabinskaya to unlawfully operate and control

Novacare.[7] *See* SAC at ¶¶ 480, 488, 489 (alleging that all decision-making authority relating to the operation and management of Novacare was vested exclusively with non-licensed laypersons, including Lereah, and that Novacare was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

292.    Lereah, along with other non-licensed laypersons, including, Zemlyansky, Danilovich, Sandler, Sukhman, and Anikeyev, as well as licensed attorney Naimark, conspired with licensed physician Grzegorczyk to unlawfully operate and control McGuire. *Id.* at ¶¶ 503, 508 (alleging that all decision-making authority relating to the operation and management of McGuire was vested exclusively with non-licensed laypersons, including Lereah).

293.    Lereah, in concert with several of the Defaulting Defendants, and others, schemed to defraud Allstate by: (a) participating in the operation of Novacare in violation of New York law; (b) participating in the operation of McGuire in violation of New York law; (c) engaging in unlawful fee-splitting with the purported physician "owners" of Novacare and McGuire; (d) knowingly submitting false medical documentation—namely "NF-3" verification forms—representing that Novacare and McGuire were owned and operated in accordance with New York law when, in fact, Novacare and McGuire were managed and controlled by Lereah and several of his co-defendants, thus making Novacare and McGuire ineligible for No-Fault reimbursement; (e) engaging in a pervasive pattern and practice of submitting false medical documentation through the mail demanding payment from Allstate; and (f) engaging in a pervasive pattern and practice of money laundering activities designed to conceal the source and destination of the No-Fault proceeds collected on behalf of Novacare and/or McGuire. *Id.* at ¶¶ 479-516 (alleging that Novacare and McGuire were operated and controlled by non-licensed

---

[7] Allstate has resolved its claims with Gabinskaya and Novacare and this individual and entity are not named defendants in Allstate's Second Amended Complaint. However, Lereah remains jointly and severally liable for the damages caused by his conspiracy with Gabinskaya and Novacare.

laypersons, including Lereah), 893-899 (alleging the defendants' use of the U.S. Mail in violation of 18 U.S.C. § 1341), 900-925 (alleging the defendants' laundering of monetary instruments in violation of 18 U.S.C. § 1956).

294.    The records and invoices created and submitted to Allstate on behalf of Novacare were false and fraudulent because the invoices represented that Novacare was owned and operated in accordance with New York law. *Id.* at ¶¶ 6, 483-484, 926, 930, 1274.

295.    The records and invoices created and submitted to Allstate on behalf of McGuire were false and fraudulent because the invoices represented that McGuire was owned and operated in accordance with New York law. *Id.* at ¶¶ 6, 511, 926, 930, 1300.

296.    Allstate has established the damages caused by Lereah through Novacare. *Id.* at ¶ 955(b); *see also* Exhibit 10, attached hereto.

297.    Allstate has established the damages caused by Lereah through McGuire. *Id.* at ¶ 955(c); *see also* Exhibit 11, attached hereto.

298.    In reliance upon the representations contained in the records and invoices submitted to Allstate on behalf of Novacare, Allstate was induced to pay approximately $356,343.48 in No-Fault payments to Novacare. *See* Exhibit 10, attached hereto.

299.    In reliance upon the representations contained in the records and invoices submitted to Allstate on behalf of McGuire, Allstate was induced to pay approximately $887,018.77 in No-Fault payments to McGuire. *See* Exhibit 11, attached hereto.

300.    At all relevant times, Novacare and McGuire were ineligible to receive these payments as a result of Lereah's intentional violations of New York law. *Id.* at ¶¶ 480, 484-485, 496, 499, 503, 511, 514.

1.  **Lereah's Role in the Defendants' Scheme to Defraud**

301.    At all relevant times, Lereah knowingly conspired with others to defraud Allstate by operating and controlling Novacare and McGuire in violation of New York law. *See* SAC at ¶ 44 (alleging that Lereah has never been a licensed health care professional); ¶¶ 479-489, ¶¶ 495-501 (alleging that Novacare was unlawfully incorporated, owned and/or controlled by non-physicians, including Lereah); ¶¶ 502-516 (alleging that McGuire was unlawfully incorporated, owned and/or controlled by non-physicians, including Lereah).

302.    Lereah, Zemlyansky, and Danilovich—and not the registered owner of Novacare (i.e., Gabinskaya)—controlled all material aspects of the operation of Novacare. *Id.* at ¶¶ 480, 484, 488, 489, 496, 497 (alleging that all decision-making authority relating to the operation and management of Novacare was vested exclusively with non-licensed laypersons, including Lereah, and that Novacare was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

303.    Lereah, Zemlyansky, Danilovich, Sandler, Sukhman, Anikeyev, and Naimark—and not the registered owner of McGuire (i.e., Grzegorczyk)—controlled all material aspects of the operation of McGuire. *Id.* at ¶¶ 503, 505, 508, 512 (alleging that all decision-making authority relating to the operation and management of McGuire was vested exclusively with non-licensed laypersons, including Lereah, and that McGuire was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

304.    The facial validity of Novacare and McGuire was used to pervert New York's No-Fault laws to obtain No-Fault payments that Novacare and McGuire were not legally entitled to collect. *Id.* at ¶¶ 498-499, 513-514.

305.    At all relevant times, Novacare was operated and controlled by Lereah, Zemlyansky, and Danilovich, and not Gabinskaya. *Id.* at ¶¶ 479-482, 487-489.

306.    As the "managers" of Novacare, Lereah and his non-licensed co-conspirators controlled all aspects of this PC, including its finances. *Id.*

307.    At all relevant times, McGuire was operated and controlled by Lereah, Zemlyansky, Sandler, Sukhman, Anikeyev, and Naimark, and not Grzegorczyk. *Id.* at ¶¶ 502-503, 505-509.

308.    As the "managers" of McGuire, Lereah and his non-licensed co-conspirators controlled all aspects of this PC, including its finances. *Id.*

## 2.   **Established Lereah's Racketeering Activity**

309.    Allstate has established Lereah's role in the defendants' scheme to defraud Allstate. *See* ¶¶ 301-308, *supra*.

310.    Allstate has also demonstrated Lereah's use of the U.S. Mails during the relevant treatment period in conducting the affairs of Novacare and McGuire during the course of this scheme. *See* SAC at ¶¶ 893-899 (alleging the defendants' use of the U.S. Mail in violation of 18 U.S.C. § 1341); *see also* Exhibit 31, attached hereto.

### a.   **Mail Fraud Racketeering Activity**

311.    Lereah submitted (or caused to be submitted) patient records and invoices to Allstate on behalf of Novacare and McGuire, knowing that Allstate would rely upon the facial validity of such documents when making direct payments to Novacare and McGuire in connection with assigned No-Fault insurance benefit claims. *See* SAC at ¶¶ 893-899, 930, 932, 934.

**b.   Lereah's Participation in the Operation and Management of the
Novacare and McGuire RICO Enterprises**

312.    Allstate has established Lereah's role in the fraudulent scheme. *See* ¶¶ 301-308,
*supra*.

313.    By pleading acts of (a) managing, operating, and controlling professional service
corporations in violation of New York law, (b) creating falsified records and invoices
misrepresenting the ownership of Novacare and McGuire, (c) transmitting those falsified records
and invoices to Allstate through the U.S. Mail, and (d) laundering the No-Fault proceeds
collected on behalf of Novacare and McGuire in violation of 18 U.S.C. § 1956 as a means to
conceal the source of the proceeds, Allstate has sufficiently demonstrated that Lereah, at all
relevant times, participated in the operation and management of the Novacare and McGuire
enterprises. *See* SAC at ¶¶ 2, 95, 99, 479-489, 495-516, 893-925.

**c.   The Damages Caused to Allstate by the Novacare and McGuire
RICO Enterprises**

314.    As a direct and proximate result of Lereah's unlawful and intentional conduct,
Allstate was wrongfully caused to make No-Fault insurance payments to Novacare totaling
$356,343.48 during the course of this scheme. *See* SAC at ¶¶ 935, 955(b); *see also* Exhibit 10,
attached hereto.

315.    As a direct and proximate result of Lereah's unlawful and intentional conduct,
Allstate was wrongfully caused to make No-Fault insurance payments to McGuire totaling
$887,018.77 during the course of this scheme. *See* SAC at ¶¶ 935, 955(c); *see also* Exhibit 11,
attached hereto.

### 3.  **Lereah's RICO Conspiracy Liability**

316.    Allstate has demonstrated actual knowledge and wrongdoing on the part of Lereah, as evidenced by his fraudulent activities. *See* ¶¶ 301-308, *supra*.

317.    Allstate has established that Lereah agreed to participate with his co-defendants in the operation and management of the Novacare and McGuire enterprises. *See id.*

318.    Allstate has also established that Lereah had actual knowledge of his co-conspirators' role in committing numerous acts of mail fraud and in the laundering of No-Fault proceeds. SAC at ¶¶ 2, 922-924.

### 4.  **Lereah's Liability On Allstate's State Law Claims**

319.    Lereah violated New York law by (a) managing, operating, and controlling Novacare and McGuire in violation of New York law, (b) creating falsified records and invoices misrepresenting the ownership of Novacare and McGuire, (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail, and (d) laundering the No-Fault proceeds collected on behalf of Novacare and McGuire in violation of 18 U.S.C. § 1956 as a means to conceal the source of the proceeds. *See* SAC at ¶¶ 2, 95, 99, 479-489, 495-516, 893-925.

320.    At all relevant times, Lereah and his co-defendants knew that Allstate would rely on the representations contained in the records mailed to Allstate by, or on behalf of, Novacare and McGuire when making payment decisions in connection with assigned No-Fault insurance benefit claims submitted by, or on behalf of, these entities. *Id.* at ¶¶ 926-935.

321.    In fact, Allstate did rely on the representations contained in patient documentation created and submitted by the defendants when making payments to Novacare and McGuire. *Id.*

322.    When making payments directly to Novacare and McGuire, Allstate reasonably believed that the entities' and their registered owners' actions conformed to all applicable laws,

and that each of the licensee "owners" were bound by their avowed ethical obligations. *Id.* at ¶ 929.

323.    The facially valid documents submitted to Allstate in support of the charges at issue—combined with the material misrepresentations described above—were designed to (and, in fact, did) induce Allstate to rely on the accuracy of such documents. *Id.* at ¶ 932.

324.    In reliance on the representations of the defendants, Allstate paid money to Novacare and McGuire to its detriment—monies that Allstate otherwise would not have paid if the defendants had provided true and accurate information regarding the fact that one or more non-healthcare licensee participated in the operation and control of Novacare and McGuire. *Id.* at ¶ 934.

325.    Relying on the misrepresentations contained in the records and invoices created and submitted on behalf of Novacare and McGuire, Allstate paid $356,343.48 to Novacare and $887,018.77 to McGuire. *See id.* at ¶¶ 935, 955(b)-(c); *see also* Exhibits 10-11, attached hereto.

326.    Allstate made these payments believing that it was legally obligated to do so. SAC at ¶¶ 926-935.

## G. SANDLER

327.    Sandler conspired with (a) licensed physicians, a physical therapist, chiropractors, and an acupuncturist, Grzegorczyk, Azab, Lendel, Simakovsky, Elsoury, Nersesov, and Tsinberg; (b) non-licensed laypersons Zemlyansky, Danilovich, Sukhman, Lereah, Anikeyev, Naimark, Zaidman, Morgan, Yuriy Zayonts, Kremerman, and Zaretskiy; and (c) professional healthcare service entities, McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical (collectively, "Sandler-

controlled PCs"), to defraud Allstate over many years.[8] *See* SAC at ¶¶ 503, 508, 561, 569, 576, 584, 679, 687, 694, 702, 709, 717, 739, 747.

328.    Sandler, in concert with several of the Defaulting Defendants and others, schemed to defraud Allstate by: (a) operating McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical in violation of New York law; (b) engaging in unlawful fee-splitting with licensed medical professionals (i.e., Grzegorczyk, Azab, Lendel, Simakovsky, Elsoury, Nersesov, and Tsinberg); (c) knowingly submitting, or causing to be submitted, medical documentation—namely, NF-3 forms— representing that each of the Sandler-controlled PCs was owned and controlled in accordance with New York law when, in fact, these entities were operated and controlled by non-licensed laypersons—including Sandler—thus making them ineligible for No-Fault reimbursement under New York law § 5102; (d) engaging in a pattern and practice of submitting false healthcare records and invoices through the U.S. Mail demanding payment from Allstate; and (e) engaging in the unlawful laundering of No-Fault proceeds collected by the Sandler-controlled PCs in violation of 18 U.S.C. § 1956. SAC at ¶¶ 502-516 (alleging that McGuire and Maguire were operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 560-574 (alleging that V.S. Care was operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 575-589 (alleging that Canon Chiropractic was operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 678-692 (alleging that SM Chiropractic was operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 693-707 (alleging that Precision Medical was operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 708-722

---

[8] Allstate has resolved its claims against Azab, Advanced Quality, Lendel, V.S. Care, Elsoury, Victory Medical, Nersesov, SM Chiropractic, Tsinberg, and Precision Medical and these individuals and entities are not named defendants in Allstate's Second Amended Complaint. *See* ECF No. 415, 459, 472, 477, Lendel and V.S. Care were dismissed from this action on June 3, 2016. *See* ECF No. 637. However, Sandler remains jointly and severally liable for the damages caused by his conspiracy with these individuals and entities.

(alleging that Advanced Quality was operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 738-752 (alleging that Victory Medical was operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 893-899 (alleging the defendants' use of the U.S. Mails in violation of 18 U.S.C. § 1341; ¶¶ 900-925 (alleging the defendants' laundering of money instruments in violation of 18 U.S.C. § 1956).

329.    The  records and invoices that Sandler and his cohorts mailed (or caused to be mailed) to Allstate were false and fraudulent because they represented that McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical were owned and operated in accordance with New York. *Id.* at ¶¶ 6, 502-516, 560-574, 575-589, 678-692, 693-707, 708-722, 738-752.

330.    Allstate has established the damages caused by Sandler and his co-conspirators through the unlawful operation and management of the Sandler-controlled PCs. *Id.* at ¶ 955; *see also* Exhibits 11, 12, 14, 23, 24, 25, 26, 27, attached hereto.

331.    In reliance upon the representations contained in the records and invoices mailed to Allstate on behalf of the Sandler-controlled PCs, Allstate was induced to pay McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical $3,231,055.55 in connection with claims made for reimbursement of the entities' patients' No-Fault insurance benefits. All of the Sandler-controlled PCs were lawfully ineligible to collect and retain these payments based on the defendants' intentional violations of New York law. SAC at ¶¶ 513, 573, 588, 691, 706, 721, 751; *see also* Exhibits 11, 12, 14, 23, 24, 25, 26, 27, attached hereto.

332.    At all relevant times, McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical were ineligible to

receive these payments as a result of Sandler's intentional violations of New York law. SAC at ¶¶ 514, 571, 586, 689, 704, 719, 749.

### 1. Sandler's Role in the Defendants' Scheme to Defraud

333. At all relevant times, Sandler was a key participant in the defendants' scheme to defraud.

334. Sandler knowingly conspired with others to defraud Allstate by participating in the operation, management, and control of McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical in violation of New York law. *See* SAC at ¶ 38 (alleging that Sandler has never been a licensed healthcare professional); ¶¶ ¶¶ 502-516 (alleging that McGuire and Maguire were operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 560-574 (alleging that V.S. Care was operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 575-589 (alleging that Canon Chiropractic was operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 678-692 (alleging that SM Chiropractic was operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 693-707 (alleging that Precision Medical was operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 708-722 (alleging that Advanced Quality was operated and controlled by non-licensed laypersons, including Sandler); ¶¶ 738-752 (alleging that Victory Medical was operated and controlled by non-licensed laypersons, including Sandler).

335. Zemlyansky, Danilovich, Sukhman, Sandler, Lereah, Anikeyev, and Naimark—and not the registered owner of McGuire (i.e., Grzegorczyk)—controlled the operation of McGuire. *Id.* at ¶¶ 502-512 (alleging that all decision-making authority relating to the operation and management of McGuire was vested exclusively with non-licensed laypersons, including

Sandler, and that McGuire was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

336.    Zemlyansky, Danilovich, Sandler, Sukhman and Anikeyev—and not the registered owner of Maguire (i.e., Grzegorczyk)—controlled the operation of Maguire. *Id.* (alleging that all decision-making authority relating to the operation and management of Maguire was vested exclusively with non-licensed laypersons, including Sandler, and that Maguire was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

337.    Zemlyansky, Danilovich, Sandler, Sukhman, Zaidman, and Morgan—and not the registered owner of Advanced Quality (i.e., Azab)—controlled the operation of Advanced Quality. *Id.* at ¶¶ 708-711, 716-717 (alleging that all decision-making authority relating to the operation and management of Advanced Quality was vested exclusively with non-licensed laypersons, including Sandler, and that Advanced Quality was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physical therapists).

338.    Sandler and Anikeyev—and not the registered owner of V.S. Care (i.e., Lendel)—controlled all material aspects of the operation of V.S. Care. *Id.* at ¶¶ 560-563, 568-569 (alleging that all decision-making authority relating to the operation and management of V.S. Care was vested exclusively with non-licensed laypersons, including Sandler, and that V.S. Care was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-acupuncturists).

339.    Sandler and Anikeyev—and not the registered owner of Canon Chiropractic (i.e., Simakovsky)—controlled the operation of Canon Chiropractic. *Id.* at ¶¶ 575-578, 585-586 (alleging that all decision-making authority relating to the operation and management of Canon

Chiropractic was vested exclusively with non-licensed laypersons, including Sandler, and that
Canon Chiropractic was ineligible for No-Fault benefits because it was unlawfully incorporated,
owned, and controlled by non-chiropractors).

340.    Sandler—and not the registered owner of Victory Medical (i.e., Elsoury)—
controlled the operation of Victory Medical. *Id.* at ¶¶ 738-739, 749-750 (alleging that all
decision-making authority relating to the operation and management of Victory Medical was
vested exclusively with non-licensed laypersons, including Sandler, and that Victory Medical
was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and
controlled by non-physicians).

341.    Sandler—and not the registered owner of SM Chiropractic (i.e., Nersesov)—
controlled the operation of SM Chiropractic. *Id.* at ¶¶ 678-679, 688-689 (alleging that all
decision-making authority relating to the operation and management of SM Chiropractic was
vested exclusively with non-licensed laypersons, including Sandler, and that SM Chiropractic
was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and
controlled by non-chiropractors).

342.    Sandler—and not the registered owner of Precision Medical (i.e., Tsinberg)—
controlled the operation of Precision Medical. *Id.* at ¶¶ 693-694, 703-704 (alleging that all
decision-making authority relating to the operation and management of Precision Medical was
vested exclusively with non-licensed laypersons, including Sandler, and that Precision Medical
was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and
controlled by non-physicians).

343.    As the "managers" of McGuire, Maguire, Advanced Quality, V.S. Care, Canon
Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical, Sandler and his non-

licensed co-conspirators controlled all aspects of these PCs, including their finances. *Id.* at ¶¶ 515, 561-562, 566, 576, 581, 584, 679, 684, 687, 694, 702, 709, 720, 739, 744, 747.

344.    The facial validity of the Sandler-controlled PCs was used to pervert New York's No-Fault laws to obtain No-Fault payments that these PCs were not legally entitled to collect. *Id.* at ¶¶ 513-514, 573-574, 588-589, 691-692, 706-707, 721-722, 751-752.

### 2.    Allstate Has Established Sandler's Racketeering Activity

345.    Allstate has established Sandler's role in the defendants' scheme to defraud Allstate. *See* ¶¶ 333-344, *supra*.

346.    Allstate has also demonstrated Sandler's use of the U.S. Mails in conducting the affairs of the Sandler-controlled PCs (i.e., RICO enterprises in which Sandler was a participant) during the course of this scheme. *See* SAC at ¶¶ 893-899 (alleging the defendants' use of the U.S. Mails in violation of 18 U.S.C. § 1341); *see also* Exhibit 31, attached hereto.

### a.    Mail Fraud Racketeering Activity

347.    Sandler submitted (or caused the submission of) patient records and invoices to Allstate on behalf of McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical knowing that Allstate would rely upon the facial validity of such documents when making direct payments to McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical in connection with assigned No-Fault insurance benefit claims. *See* SAC at ¶¶ 893-899, 930, 932, 934.

### b.    Sandler's Participation in the Operation and Management of the Sandler-Controlled PC RICO Enterprises

348.    Allstate has established Sandler's role in the fraudulent scheme. *See* ¶¶ 333-344, *supra*.

88

349.    By pleading acts of (a) managing, operating, and controlling professional healthcare service entities in violation of New York law, (b) creating falsified records and invoices misrepresenting the ownership of McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical, and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail, Allstate has sufficiently demonstrated that Sandler, at all relevant times, participated in the operation and management of the McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical enterprises. *See* SAC at ¶¶ 2, 95, 115, 119, 151, 163, 167, 183, 502-516, 560-574, 575-589, 738-752, 678-692, 693-707, 708-722, 738-752.

### c. The Damages Caused to Allstate tby the Sandler-Controlled PC RICO Enterprises

350.    As a direct and proximate result of Sandler's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to McGuire totaling $887,018.77 during the course of this scheme. *See* SAC at ¶¶ 935, 955(c); *see also* Exhibit 11, attached hereto.

351.    As a direct and proximate result of Sandler's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Maguire totaling $254,089.71 during the course of this scheme. *See* SAC at ¶¶ 935, 955(d); *see also* Exhibit 12, attached hereto.

352.    As a direct and proximate result of Sandler's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Advanced Quality totaling $168,092.89 during the course of this scheme. *See* SAC at ¶¶ 935, 955(dd); *see also* Exhibit 14, attached hereto.

353.    As a direct and proximate result of Sandler's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to V.S. Care totaling $217,809.48 during the course of this scheme. *See* SAC at ¶¶ 935, 955(s); *see also* Exhibit 23, attached hereto.

354.    As a direct and proximate result of Sandler's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Canon Chiropractic totaling $272,543.05 during the course of this scheme. *See* SAC at ¶¶ 935, 955(u); *see also* Exhibit 24, attached hereto.

355.    As a direct and proximate result of Sandler's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Victory Medical totaling $403,953.65 during the course of this scheme. *See* SAC at ¶¶ 935, 955(ff); *see also* Exhibit 25, attached hereto.

356.    As a direct and proximate result of Sandler's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to SM Chiropractic totaling $661,197.44 during the course of this scheme. *See* SAC at ¶¶ 935, 955(bb); *see also* Exhibit 26, attached hereto.

357.    As a direct and proximate result of Sandler's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Precision Medical totaling $366,350.56 during the course of this scheme. *See* SAC at ¶¶ 935, 955(cc); *see also* Exhibit 27, attached hereto.

### 3.  Sandler's RICO Conspiracy Liability

358.    Allstate has demonstrated actual knowledge and wrongdoing on the part of Sandler, as evidenced by his fraudulent activities. *See* ¶¶ 333-344, *supra*.

359.    Allstate has established that Sandler agreed to participate with his co-defendants in the operation and management of the McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical RICO enterprises. *See id.*

360.    Allstate has also established that Sandler had actual knowledge of his co-conspirators' role in committing numerous acts of mail fraud during the course of conducting these enterprises' affairs. *See* SAC at ¶¶ 2, 893, 896, 898.

### 4.    <u>Sandler's Liability On Allstate's State Law Claims</u>

361.    Sandler violated New York law by (a) managing, operating, and controlling McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical in violation of New York law, (b) creating falsified records and invoices misrepresenting the ownership of the Sandler-controlled PCs, and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail. *See* SAC at ¶¶ 2, 95, 115, 119, 151, 163, 167, 183, 502-516, 560-574, 575-589, 738-752, 678-692, 693-707, 708-722, 738-752.

362.    At all relevant times, Sandler and his co-defendants knew that Allstate would rely on the representations contained in the records mailed to Allstate by, or on behalf of, McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical when making payment decisions in connection with assigned No-Fault insurance benefit claims submitted by, or on behalf of, these entities. *Id.* at ¶¶ 926-935.

363.    In fact, Allstate did rely on the representations contained in Sandler-controlled PCs' records and invoices that were created and mailed (or caused to be created and mailed) to Allstate by Sandler and his cohorts when making payments to McGuire, Maguire, Advanced

Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical. *Id.*

364.    When making payments directly to McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical, Allstate reasonably believed that the entities' and their registered owners' actions conformed to all applicable laws, and that each of the licensee "owners" were bound by their avowed ethical obligations. *Id.* at ¶ 929.

365.    The records and invoices submitted to Allstate in support of the charges at issue— combined with the material misrepresentations described above—were designed to (and, in fact, did) induce Allstate to rely on the accuracy of such documents. *Id.* at ¶ 932.

366.    In reliance on the representations that Sandler and his confederates caused the Sandler-controlled PCs to make in each entity's No-Fault reimbursement demands, Allstate paid money to McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical to its detriment—monies that Allstate otherwise would not have paid if the defendants had provided true and accurate information regarding the fact that one or more non-healthcare licensee participated in the operation and control of McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical. *Id.* at ¶ 934.

367.    Relying on the misrepresentations contained in the records and invoices created and mailed by Sandler (or those acting at their direction and/or control) on behalf of McGuire, Maguire, Advanced Quality, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, and Precision Medical, Allstate paid $3,231,055.55 to these PCs. *Id.* at ¶ 955; *see also* Exhibits 11, 12, 14, 23, 24, 25, 26, 27, attached hereto.

368.    Allstate made these payments believing that it was legally obligated to do so. *See* SAC at ¶¶ 926-935.

**H. S<small>UKHMAN</small>**

369.    Sukhman conspired with (a) licensed physicians and physical therapist, Grzegorczk, Azab, and Elreweny; (b) non-licensed laypersons Zemlyansky, Danilovich, Sandler, Lereah, Anikeyev, Naimark, Zaidman, and Morgan; and (c) medical professional service corporations, McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension (collectively, "Sukhman-controlled PCs"), to defraud Allstate over many years.[9] *See* SAC at ¶¶ 503, 508, 709, 717, 879, 887.

370.    Sukhman, in concert with several of the Defaulting Defendants and others, schemed to defraud Allstate by: (a) operating McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension; (b) engaging in unlawful fee-splitting with licensed medical professionals (i.e., Grzegorczyk, Azab, and Elreweny); (c) knowingly submitting, or causing to be submitted, medical documentation—namely, NF-3s—representing that McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension were owned and controlled by non-licensed laypersons—including Sukhman—and thus ineligible for No-Fault reimbursement under New York law § 5102; (d) engaging in a pattern and practice of submitting false medical documentation through the U.S. Mail demanding payment from Allstate; and (e) engaging in the unlawful laundering of No-Fault proceeds collected by McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension in violation of 18 U.S.C. § 1956. SAC at ¶¶ 502-516 (alleging that McGuire and Maguire were operated and controlled by non-licensed laypersons, including Sukhman); ¶¶ 708-722 (alleging that Advanced Quality was operated and controlled

_____
[9] Allstate has resolved its claims against Azab and Advanced Quality and this individual and entity are not named defendants in Allstate's Second Amended Complaint. *See* ECF No. 459. However, Sukhman remains jointly and severally liable for the damages caused by his conspiracy with these individuals and entities.

by non-licensed laypersons, including Sukhman); ¶¶ 878-892 (alleging that Effective Care and Comprehension were operated and controlled by non-licensed laypersons, including Sukhman); ¶¶ 893-899 (alleging the defendants' use of the U.S. Mails in violation of 18 U.S.C. § 1341); ¶¶ 922-924 (alleging that the defendants engaged in unlawful money laundering activities in violation 18 U.S.C. § 1956).

371.    The records and invoices that Sukhman and his cohorts mailed (or caused to be mailed) to Allstate were false and fraudulent because they represented that McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension were owned and operated in accordance with New York law. *Id.* at ¶¶ 6; 502-516; 708-722; 878-892.

372.    Allstate has established the damages caused by Sukhman and his co-conspirators through McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension. *Id.* at ¶ 955; *see also* Exhibits 11, 12, 14, 21, 22, attached hereto.

373.    In reliance upon the representations contained in the defendants' records and invoices, Allstate was induced to pay McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension $1,793,432.15 in No-Fault payments that McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension were ineligible to receive as a result of the defendants' intentional violations of New York law. SAC at ¶¶ 513, 721, 891, 944; *see also* Exhibits 11, 12, 14, 21, 22, attached hereto.

374.    At all relevant times, McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension were ineligible to receive these payments as a result of Sukhman's intentional violations of New York law. SAC at ¶¶ 514, 722, 892.

## 1.  **Sukhman's Role in the Defendants' Scheme to Defraud**

375.   At all relevant times, Sukhman was a key participant in the defendants' scheme to defraud.

376.   Sukhman knowingly conspired with others to defraud Allstate by operating and controlling McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension in violation of New York law. *See* SAC at ¶ 48 (alleging that Sukhman has never been a licensed healthcare professional); ¶¶ 502-516 (alleging that McGuire and Maguire were operated and controlled by non-licensed laypersons, including Sukhman); ¶¶ 708-722 (alleging that Advanced Quality was operated and controlled by non-licensed laypersons, including Sukhman); ¶¶ 878-892 (alleging that Effective Care and Comprehension were operated and controlled by non-licensed laypersons, including Sukhman).

377.   Danilovich, Zemlyansky, Sandler, Lereah, Anikeyev, Sukhman, and Naimark—and not the registered owner of McGuire (i.e., Grzegorczyk)—controlled all material aspects of the operation of McGuire. *Id.* at ¶¶ 502-512 (alleging that all decision-making authority relating to the operation and management of McGuire was vested exclusively with non-licensed laypersons, including Sukhman, and that McGuire was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

378.   Danilovich, Zemlyansky, Sandler, Anikeyev, and Sukhman—and not the registered owner of Maguire (i.e., Grzegorczyk)—controlled all material aspects of the operation of Maguire. *Id.* (alleging that all decision-making authority relating to the operation and management of Maguire was vested exclusively with non-licensed laypersons, including Sukhman, and that Maguire was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physicians).

379.    Danilovich, Zemlyansky, Sandler, Sukhman, Morgan, and Zaidman—and not the registered owner of Advanced Quality (i.e., Azab)—controlled all material aspects of the operation of Advanced Quality. *Id.* at ¶¶ 708-711, 716-717 (alleging that all decision-making authority relating to the operation and management of Advanced Quality was vested exclusively with non-licensed laypersons, including Sukhman, and that Advanced Quality was ineligible for No-Fault benefits because it was unlawfully incorporated, owned, and controlled by non-physical therapists).

380.    Danilovich, Zemlyansky, Sukhman, and Morgan—and not the registered owner of Effective Care and Comprehension (i.e., Elreweny)—controlled all material aspects of the operation of Effective Care and Comprehension. *Id.* at ¶¶ 878-881, 886-887 (alleging that all decision-making authority relating to the operation and management of Effective Care and Comprehension was vested exclusively with non-licensed laypersons, including Sukhman, and that Effective Care and Comprehension were ineligible for No-Fault benefits because they were unlawfully incorporated, owned, and controlled by non- physical therapists).

381.    As the "managers" of McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension, Sukhman and his non-licensed co-conspirators controlled all aspects of these PCs, including their finances. *Id.* at ¶¶ 515, 720, 890.

382.    The facial validity of McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension was used to pervert New York's No-Fault laws to obtain No-Fault payments that these PCs were not legally entitled to collect. *Id.* at ¶¶ 513-514, 721-722, 891-892.

### 2.   **Allstate Has Established Sukhman's Racketeering Activity**

383.    Allstate has established Sukhman's role in the defendants' scheme to defraud Allstate. *See* ¶¶ 375-382, *supra*.

384.     Allstate has also demonstrated Sukhman's use of the U.S. Mails in conducting the affairs of the Sukhman-controlled PCs (i.e. RICO enterprises in which Sukhman was a participant) during the course of this scheme. *See* SAC at ¶¶ 893-899; *see also* Exhibit 31, attached hereto.

### a.   Mail Fraud Racketeering Activity

385.     Sukhman submitted (or caused the submission of) patient records and invoices to Allstate on behalf of McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension, knowing that Allstate would rely upon the facial validity of such documents when making direct payments to McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension in connection with assigned No-Fault insurance benefit claims. *See* SAC at ¶¶ 893-899, 930, 932, 934.

### b.   Sukhman's Participation in the Operation and Management of the Sukhman-Controlled PC RICO Enterprises

386.     Allstate has established Sukhman's role in the fraudulent scheme. *See* ¶¶ 375-382, *supra*.

387.     By pleading acts of (a) managing, operating, and controlling professional service corporations in violation of New York law, (b) creating falsified records and invoices misrepresenting the ownership of McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension, (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail, and (d) laundering the No-Fault proceeds collected on behalf of McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension in violation of 18 U.S.C. § 1956 as a means to conceal the source of the proceeds, Allstate has sufficiently demonstrated that Sukhman, at all relevant times, participated in the operation and management of the McGuire,

Maguire, Advanced Quality, Effective Care, and Comprehension enterprises. *See* SAC at ¶¶ 2, 99, 183, 195, 502-516, 708-722, 878-892.

### c. The Damages Caused by the Sukhman-Controlled PC RICO Enterprises

388.     As a direct and proximate result of Sukhman's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to McGuire totaling $887,018.77 during the course of this scheme. *See* SAC at ¶¶ 935, 955(c); *see also* Exhibit 11, attached hereto.

389.     As a direct and proximate result of Sukhman's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Maguire totaling $254,089.71 during the course of this scheme. *See* SAC at ¶¶ 935, 955(d); *see also* Exhibit 12, attached hereto.

390.     As a direct and proximate result of Sukhman's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Advanced Quality totaling $168,092.89. *See* SAC at ¶¶ 935, 955(dd); *see also* Exhibit 14, attached hereto.

391.     As a direct and proximate result of Sukhman's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Effective Care totaling $88,987.74. *See* SAC at ¶¶ 935, 955(rr); *see also* Exhibit 21, attached hereto.

392.     As a direct and proximate result of Sukhman's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to Comprehension totaling $395,243.04 during the course of this scheme. *See* SAC at ¶¶ 935, 955(ss); *see also* Exhibit 22, attached hereto.

### 3. **Sukhman's RICO Conspiracy Liability**

393.    Allstate has demonstrated actual knowledge and wrongdoing on the part of Sukhman, as evidenced by his fraudulent activities. *See* ¶¶ 375-382, *supra*.

394.    Allstate has established that Sukhman agreed to participate with his co-defendants in the operation and management of the McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension RICO enterprises. *See id.*

395.    Allstate has also established that Sukhman had actual knowledge of his co-conspirators' role in committing numerous acts of mail fraud and in the laundering of No-Fault proceeds. *See* SAC at ¶¶ 2, 893, 896, 898, 922-924.

### 4. **Sukhman's Liability on Allstate's State Law Claims**

396.    Sukhman violated New York law by (a) managing, operating, and controlling McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension in violation of New York law, (b) creating falsified records and invoices misrepresenting the ownership of McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension, (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail, and (d) laundering the No-Fault proceeds collected on behalf of McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension in violation of 18 U.S.C. § 1956 as a means to conceal the source of the proceeds. *See* SAC at ¶¶ 2, 99, 183, 195, 502-516, 708-722, 878-892.

397.    At all relevant times, Sukhman and his co-defendants knew that Allstate would rely on the representations contained in the records mailed to Allstate by, or on behalf of, McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension when making payment decisions in connection with assigned No-Fault insurance benefit claims submitted by, or on behalf of, these entities. *Id.* at ¶¶ 926-935.

398.    In fact, Allstate did rely on the representations contained in patient documentation created and submitted by the defendants when making payments to McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension. *Id.*

399.    When making payments directly to McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension, Allstate reasonably believed that the entities' and their registered owners' actions conformed to all applicable laws, and that each of the licensee "owners" were bound by their avowed ethical obligations. *Id.* at ¶ 929.

400.    The facially valid documents submitted to Allstate in support of the charges at issue—combined with the material misrepresentations described above—were designed to (and, in fact, did) induce Allstate to rely on the accuracy of such documents. *Id.* at ¶ 932.

401.    In reliance on the representations of the defendants, Allstate paid money to McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension to its detriment— monies that Allstate otherwise would not have paid if the defendants had provided true and accurate information regarding the fact that one or more non-healthcare licensee participated in the operation and control McGuire, Maguire, Advanced Quality, Effective Care, and Comprehension. *Id.* at ¶ 934.

402.    Relying on the misrepresentations contained in the records and invoices created and submitted on behalf of McGuire, Maguire, Advanced Quality, and Comprehension, Allstate paid $1,793,432.15 to these PCs. *Id.* at ¶ 955; *see also* Exhibits 11, 12, 14, 21, 22, attached hereto.

403.    Allstate made these payments believing that it was obligated to do so. *See* SAC at ¶¶ 926-935.

100

## I.   TAHIR AND J&L MEDICAL

404.   Non-physician Maurello conspired with licensed physician Tahir to defraud Allstate through the operation of J&L Medical.  *See* SAC at ¶¶ 813-828 (specific allegations regarding the unlawful operation and control of J & L Medical).

405.   Maurello and Tahir schemed to defraud Allstate by: (a) operating a professional medical service corporation, J&L Medical, in violation of New York law; (b) causing J&L Medical to engage in unlawful fee-splitting with a non-physician; and (c) knowingly submitting false medical documentation—namely "NF-3" forms—representing that J&L Medical was owned and operated in accordance with New York law when, in fact, J&L Medical was operated and controlled by a non-physician and thus was—and has always been—ineligible for No-Fault reimbursement under New York Insurance Law § 5102(a).  *Id.* at ¶¶ 814, 823, 825.

406.   The records and invoices created and submitted to Allstate on behalf of J&L Medical were false and fraudulent because the invoices represented that J&L Medical was owned and operated in accordance with No-Fault law.  *Id.* at ¶¶ 813-828.

407.   Allstate has established the damages caused by the unlawful operation of J&L Medical during the course of this scheme.  *Id.* at ¶¶ 955(ll); *see also* Exhibit 28, attached hereto.

408.   In reliance upon the representations contained in the records and invoices submitted to Allstate by, or on behalf of, J&L Medical, Allstate was wrongfully caused to make No-Fault insurance payments to J&L Medical totaling $155,352.99 during the course of this scheme.  SAC at ¶¶ 955(ll); *see also* Exhibit 28, attached hereto.

409.   At all relevant times, J&L Medical was ineligible to receive these payments as a result of its unlawful operation, and the resulting intentional violations of New York law.  SAC at ¶ 825.

### 1.  Tahir's and J&L Medical's Roles in the Defendants' Scheme to Defraud

410.    At all relevant times, Tahir and Maurello schemed to defraud Allstate by creating, and then operating and controlling, J&L Medical in violation of New York law.  SAC at ¶¶ 814, 825-826.

411.    Maurello (a non-physician)—and not the licensed physician that was falsely represented to be the sole officer, director, and shareholder of J&L Medical (i.e., Tahir)—was vested with all decision-making authority relating to the operation and management of J&L Medical.  *Id.* at ¶¶ 814, 823 (alleging that all decision-making authority was vested exclusively with Maurello).

412.    At all relevant times, Tahir was a key person in the defendants' scheme to defraud because J&L Medical would not have existed unless Tahir permitted the use of his licensing credentials to cause the organization of J&L Medical.  *Id.* at ¶¶ 813-828 (describing how non-physician defendant Maurello conspired with Tahir to have Tahir falsely hold  himself out to Allstate, and to the general public, as the sole officer, director, and shareholder of J&L Medical).

413.    Tahir used (a) his relationship with non-physician Maurello, and (b) the facial validity of J&L Medical, to pervert New York's No-Fault laws to obtain No-Fault insurance benefit payments that J&L Medical was not legally entitled to collect.  *Id.* at ¶¶ 825-826 (alleging that Tahir permitted Maurello to derive economic benefit from and unlawfully split fees with J&L Medical).

414.    As the "manager" of J&L Medical, Maurello (a) employed licensed healthcare professionals, (b) controlled the practice of licensed healthcare professionals, and (c) charged for (and derived an economic benefit from) the services of licensed healthcare professionals.  *Id.* at ¶ 826.

415.    Moreover, as explained below, Tahir has testified, under oath, that Maurello owned and controlled J&L Medical, and that Maurello paid Tahir $1,000.00 per week to make it falsely appear that Tahir was the actual owner of the entity.  *Id.* at ¶ 815; *see also* Exhibit 66, attached hereto.

### 2.    Evidence Demonstrating Unlawful Operation and Control of J&L Medical

416.    On December 11, 2014, Tahir provided testimony in the matter *United States v. Matthew Conroy*, 12-cr-171 (JPO) (S.D.N.Y.) regarding Maurello's unlawful ownership and control of J&L Medical.  *See* Exhibit 66.

417.    Tahir testified that Maurello owned and controlled J&L Medical.  *Id.* at p. 363 ¶ 1 – p. 364 ¶ 6.

418.    Tahir also testified that Maurello paid Tahir $1,000.00 per week to incorporate J&L Medical under his name and medical license and thereafter falsely represent that he was the actual owner of the entity.  *Id.* at p. 363 ¶ 1 – p. 364 ¶ 12.

419.    Further, Tahir testified that (a) he never contributed any funds to J&L Medical's operation, (b) he did not know whether J&L Medical maintained a physical location or had any employees, (c) Maurello, not Tahir, controlled J&L Medical's bank account, including its checkbook, and (d) Maurello caused Tahir to sign blank checks from J&L Medical's corporate account.  *Id.* at p. 364 ¶ 13 – p. 365 ¶ 13.

### 3.    Tahir's Racketeering Activity

420.    Allstate has established Tahir's role in the defendants' scheme to defraud Allstate.  *See* ¶¶ 416-419, *supra*.

421.    Allstate has also demonstrated Tahir's use of the U.S. Mails in conducting the affairs of J&L Medical during the course of this scheme.  *See* SAC at ¶¶ 893-899; *see also* Exhibit 31, attached hereto.

### a.  Mail Fraud Racketeering Activity

422.    Tahir submitted (or caused the submission of) patient records and invoices to Allstate, through the U.S. Mail, on behalf of J&L Medical, knowing that Allstate would rely upon the facial validity of such documents when making direct payments to J&L Medical in connection with assigned No-Fault insurance benefit claims.  *See* SAC at ¶¶ 893-899, 930, 932-934.

### b.  Tahir's Participation in the Operation and Management of the J&L Medical RICO Enterprise

423.    Allstate has established Tahir's role in the fraudulent scheme.  *See* ¶¶ 416-419, *supra*.

424.    By pleading acts of (a) ceding control of J&L Medical, a professional medical service entity, to a non-physician in violation of New York law, (b) creating falsified records and invoices misrepresenting the true ownership of J&L Medical, and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail, Allstate has sufficiently demonstrated that Tahir, at all relevant times, participated in the operation and management of the J&L Medical RICO enterprise.  *See* SAC at ¶¶ 2, 139, 813-828, 893-899.

### c.  The Damages Caused to Allstate by the J&L Medical RICO Enterprise

425.    As a direct and proximate result of Tahir's unlawful and intentional conduct, Allstate was wrongfully caused to make No-Fault insurance payments to J&L Medical totaling

$155,352.99 during the course of this scheme. *See* SAC at ¶¶ 935, 955(ll); *see also* Exhibit 28, attached hereto.

### 4. **Tahir's RICO Conspiracy Liability**

426.    Allstate has demonstrated actual knowledge and wrongdoing on the part of Tahir, as evidenced by his fraudulent activities. *See* ¶¶ 416-419, *supra*.

427.    Allstate has established that Tahir agreed to participate in the operation and management of the J&L Medical RICO enterprise by (a) ceding control of J&L Medical, a professional medical service entity, to a non-physician in violation of New York law, (b) creating falsified records and invoices misrepresenting the true ownership of J&L Medical, and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail. *See id.*

428.    Allstate has also established that Tahir had actual knowledge of his co-conspirators' role in committing numerous acts of mail fraud during the course of conducting the J&L Medical RICO enterprise's affairs. *See* SAC at ¶¶ 2, 893, 896, 898.

### 5. **Tahir's Liability on Allstate's State Law Claims**

429.    Tahir violated New York law by (a) ceding control of J&L Medical, a professional medical service entity, to a non-physician in violation of New York law, (b) creating falsified records and invoices misrepresenting the true ownership of J&L Medical, and (c) transmitting those falsified records and invoices to Allstate through the U.S. Mail. *See* SAC at ¶¶ 2, 139, 813-828, 893-899.

430.    At all relevant times, Tahir and his co-defendants knew that Allstate would rely on the representations contained in J&L Medical's records and invoices when making payment decisions. *Id.* at ¶¶ 926-935.

431.    In fact, Allstate did rely on the representations contained in the patient documentation created and submitted (or caused to be created and submitted) to Allstate by Tahir and his cohorts when making payments to J&L Medical.  *Id.*

432.    When making payments directly to J&L Medical, Allstate reasonably believed that the actions of J&L Medical and its registered owner, Tahir, conformed to all applicable laws, and that Tahir was bound by his avowed ethical obligations.  *Id.* at ¶ 929.

433.    The facially valid documents submitted to Allstate by, or on behalf of, J&L Medical in support of the charges at issue—combined with the material misrepresentations described above—were designed to—and, in fact, did—induce Allstate to rely on the accuracy of such documents.  *Id.* at ¶ 932.

434.    In reliance on the representations made to Allstate by Tahir and his cohorts concerning J&L Medical's No-Fault reimbursement eligibility, Allstate paid money to J&L Medical to its detriment—monies that Allstate otherwise would not have paid if the defendants had provided true and accurate information concerning J&L Medical's No-Fault reimbursement eligibility.  *Id.* at ¶¶ 933-934.

435.    Relying on the misrepresentations contained in the records and invoices created and submitted to Allstate by Tahir and his cohorts (or those acting at their direction and/or control) on behalf of J&L Medical, Allstate was caused to make No-Fault insurance benefit payments to J&L Medical in the amount of $155,352.99.  *Id.* at ¶ 955(ll); *see also* Exhibit 29, attached hereto.

436.    Allstate made these payments believing that it was legally obligated to do so.  *See* SAC at ¶¶ 926-935.

### 6.  **J&L Medical's Liability on Allstate's State Law Claims**

437.    J&L Medical—a professional medical service entity—violated New York law because it was (a) managed, operated, and controlled by a non-physician, (b) caused to misrepresent its ownership status when seeking No-Fault reimbursement from Allstate, (c) caused to create falsified records and invoices in connection with claims for No-Fault benefit reimbursement, and (d) caused to transmit those falsified records and invoices to Allstate, through the U.S. Mail, when demanding payment of assigned No-Fault insurance benefits.  *See* SAC at ¶¶ 2, 813-828, 893-899, 926-935.

438.    At all relevant times, J&L Medical and its co-defendants knew that Allstate would rely on the representations contained in J&L Medical's records and invoices when making payment decisions.  *Id*. at ¶¶ 926-935.

439.    In fact, Allstate did rely on the representations contained in the patient documentation created and submitted to Allstate by the defendants when making payments to J&L Medical.  *Id.*

440.    When making payments directly to J&L Medical, Allstate reasonably believed that the actions of J&L Medical and its registered owner, Tahir, conformed to all applicable laws, and that Tahir was bound by his avowed ethical obligations.  *Id*. at ¶ 929.

441.    The facially valid documents submitted to Allstate by, or on behalf of, J&L Medical in support of the charges at issue—combined with the material misrepresentations described above—were designed to—and, in fact, did—induce Allstate to rely on the accuracy of such documents.  *Id*. at ¶ 932.

442.    In reliance on the representations made to Allstate by the involved defendants concerning J&L Medical's No-Fault reimbursement eligibility, Allstate paid money to J&L

Medical to its detriment—monies that Allstate otherwise would not have paid if the defendants had provided true and accurate information concerning J&L Medical's No-Fault reimbursement eligibility. *Id*. at ¶¶ 933-934.

443.    Relying on the misrepresentations contained in the records and invoices created and submitted to Allstate by, or on behalf of, J&L Medical, Allstate was wrongfully caused to make No-Fault insurance payments to J&L Medical totaling $155,352.99 during the course of this scheme. *Id.* at ¶¶ 827, 955(ll); *see also* Exhibit 28, attached hereto.

444.    Allstate made these payments believing that it was legally obligated to do so. SAC at ¶¶ 926-935.

## IV.    ALLSTATE'S DAMAGES CAUSED BY THE DEFAULTING DEFENDANTS

445.    For the purposes of calculating Allstate's damages related to the conduct of the Defaulting Defendants, I conducted a search of Allstate's computerized business records to compile a comprehensive list of payments that Allstate made to Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, Comprehension, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, Precision Medical, J&L Medical, Golden Star, and Paragon Medical.

446.    The search was conducted by examining all payments made by Allstate to the tax identification numbers ("TIN") used by Clearview, Novacare, McGuire, Maguire, Igla, Advanced Quality, Main Care, Main Rehab, Community Medical, KKM, Move Free, Bard Acupuncture, Effective Care, Comprehension, V.S. Care, Canon Chiropractic, Victory Medical, SM Chiropractic, Precision Medical, J&L Medical, Golden Star, and Paragon Medical when

submitting invoices in connection with claims involved in Allstate's Second Amended Complaint.

447.    When a payment to a healthcare provider is authorized by Allstate, the designated information is entered into Allstate's computer database, which causes a check to be generated, issued, and catalogued according to the TIN of the payee.

448.    An Allstate check is then generated and is made payable to the specific provider. Such payment checks are then transmitted to the provider through the U.S. Mail.

449.    The payments itemized in the charts attached to this Declaration at Exhibits 9-30 represent Allstate's damages with respect to each of these enterprises.  It is my understanding that the damages caused by the respective Defaulting Defendants' (and others') unlawful operation of these enterprises are subject to mandatory trebling pursuant to 18 U.S.C. § 1964.

450.    Each payment that Allstate was caused to make to Clearview during the course of this scheme is listed in Exhibit 9.

451.    Each payment that Allstate was caused to make to Novacare during the course of this scheme is listed in Exhibit 10.

452.    Each payment that Allstate was caused to make to McGuire during the course of this scheme is listed in Exhibit 11.

453.    Each payment that Allstate was caused to make to Maguire during the course of this scheme is listed in Exhibit 12.

454.    Each payment that Allstate was caused to make to Igla during the course of this scheme is listed in Exhibit 13.

455.    Each payment that Allstate was caused to make to Advanced Quality during the course of this scheme is listed in Exhibit 14.

456.    Each payment that Allstate was caused to make to Main Care during the course of this scheme is listed in Exhibit 15.

457.    Each payment that Allstate was caused to make to Main Rehab during the course of this scheme is listed in Exhibit 16.

458.    Each payment that Allstate was caused to make to Community Medical during the course of this scheme is listed in Exhibit 17.

459.    Each payment that Allstate was caused to make to KKM during the course of this scheme is listed in Exhibit 18.

460.    Each payment that Allstate was caused to make to Move Free during the course of this scheme is listed in Exhibit 19.

461.    Each payment that Allstate was caused to make to Bard Acupuncture during the course of this scheme is listed in Exhibit 20.

462.    Each payment that Allstate was caused to make to Effective Care during the course of this scheme is listed in Exhibit 21.

463.    Each payment that Allstate was caused to make to Comprehension during the course of this scheme is listed in Exhibit 22.

464.    Each payment that Allstate was caused to make to V.S. Care during the course of this scheme is listed in Exhibit 23.

465.    Each payment that Allstate was caused to make to Canon Chiropractic during the course of this scheme is listed in Exhibit 24.

466.    Each payment that Allstate was caused to make to Victory Medical during the course of this scheme is listed in Exhibit 25.

467.    Each payment that Allstate was caused to make to SM Chiropractic during the course of this scheme is listed in Exhibit 26.

468.    Each payment that Allstate was caused to make to Precision Medical during the course of this scheme is listed in Exhibit 27.

469.    Each payment that Allstate was caused to make to J&L Medical during the course of this scheme is listed in Exhibit 28.

470.    Each payment that Allstate was caused to make to Golden Star during the course of this scheme is listed in Exhibit 29.

471.    Each payment that Allstate was caused to make to Paragon Medical during the course of this scheme is listed in Exhibit 30.

472.    As a direct and proximate result of the Zemlyansky's, Danilovich's, and Zaidman's unlawful and intentional conduct relating to the unlawful operation and control of Clearview, Allstate made No-Fault payments totaling $226,491.16 to Clearview during the course of this scheme. *See* Exhibit 9. When trebled in accordance with 18 U.S.C. § 1964, this amount is $679,473.48.

473.    As a direct and proximate result of Zemlyansky's, Danilovich's, and Lereah's unlawful and intentional conduct relating to the unlawful operation and control of Novacare, Allstate made No-Fault payments totaling $356,343.48 to Novacare during the course of this scheme. *See* Exhibit 10. When trebled in accordance with 18 U.S.C. § 1964, this amount is $1,069,030.44.

474.    As a direct and proximate result of Zemlyansky's, Danilovich's, Sandler's, Lereah's, and Sukhman's unlawful and intentional conduct relating to the unlawful operation and control of McGuire, Allstate made No-Fault payments totaling $887,018.77 to McGuire during

111

the course of this scheme. *See* Exhibit 11. When trebled in accordance with 18 U.S.C. § 1964, this amount is $2,661,056.31.

475.    As a direct and proximate result of Zemlyansky's, Danilovich's, Sandler's, and Sukhman's unlawful and intentional conduct relating to the unlawful operation and control of Maguire, Allstate made No-Fault payments totaling $254,089.71 to Maguire during the course of this scheme. *See* Exhibit 12, attached hereto. When trebled in accordance with 18 U.S.C. § 1964, this amount is $762,269.13.

476.    As a direct and proximate result of Danilovich's, Zemlyansky's, and Zaidman's unlawful and intentional conduct relating to the unlawful operation and control of Igla, Allstate made No-Fault payments totaling $130,481.02 to Igla during the course of this scheme. *See* Exhibit 13. When trebled in accordance with 18 U.S.C. § 1964, this amount is $391,443.06.

477.    As a direct and proximate result of Danilovich's, Zemlyansky's, Sandler's, Sukhman's, and Zaidman's unlawful and intentional conduct relating to the unlawful operation and control of Advanced Quality, Allstate made No-Fault payments totaling $168,092.89 to Advanced Quality during the course of this scheme. *See* Exhibit 14. When trebled in accordance with 18 U.S.C. § 1964, this amount is $504,278.67.

478.    As a direct and proximate result of Danilovich's and Zemlyansky's unlawful and intentional conduct relating to the unlawful operation and control of Main Care, Allstate made No-Fault payments totaling $424,989.88 to Main Care during the course of this scheme. *See* Exhibit 15. When trebled in accordance with 18 U.S.C. § 1964, this amount is $1,274,969.64.

479.    As a direct and proximate result of Danilovich's and Zemlyansky's unlawful and intentional conduct relating to the unlawful operation and control of Main Rehab, Allstate made

No-Fault payments totaling $28,945.20 to Main Rehab during the course of this scheme. *See* Exhibit 16. When trebled in accordance with 18 U.S.C. § 1964, this amount is $86,835.60.

480.    As a direct and proximate result of Danilovich's, Zemlyansky's, and Zaidman's unlawful and intentional conduct relating to the unlawful operation and control of Community Medical, Allstate made No-Fault payments totaling $30,054.94 to Community Medical during the course of this scheme. *See* Exhibit 17. When trebled in accordance with 18 U.S.C. § 1964, this amount is $90,164.82.

481.    As a direct and proximate result of Danilovich's, Zemlyansky's, and Zaidman's unlawful and intentional conduct relating to the unlawful operation and control of KKM, Allstate made No-Fault payments totaling $320,625.11 to KKM during the course of this scheme. *See* Exhibit 18. When trebled in accordance with 18 U.S.C. § 1964, this amount is $961,875.33.

482.    As a direct and proximate result of Danilovich's, and Zemlyansly's unlawful and intentional conduct relating to the unlawful operation and control of Move Free, Allstate made No-Fault payments totaling $112,096.67 to Move Free during the course of this scheme. *See* Exhibit 19. When trebled in accordance with 18 U.S.C. § 1964, this amount is $336,290.01.

483.    As a direct and proximate result of Bard's, Zemlyansky's, Danilovich's, and Zaidman's unlawful and intentional conduct relating to the unlawful operation and control of Bard Acupuncture, Allstate made No-Fault payments totaling $109,510.53 to Bard Acupuncture during the course of this scheme. *See* Exhibit 20. When trebled in accordance with 18 U.S.C. § 1964, this amount is $328,531.59.

484.    As a direct and proximate result of Danilovich's, Zemlyansky's, and Sukhman's unlawful and intentional conduct relating to the unlawful operation and control of Effective Care, Allstate made No-Fault payments totaling $88,987.74 to Effective Care during the course of this

scheme.  *See* Exhibit 21.  When trebled in accordance with 18 U.S.C. § 1964, this amount is $266,963.22.

485.    As a direct and proximate result of Danilovich's, Zemlyansky's, and Sukhman's unlawful and intentional conduct relating to the unlawful operation and control of Comprehension, Allstate made No-Fault payments totaling $395,243.04 to Comprehension during the course of this scheme.  *See* Exhibit 22.  When trebled in accordance with 18 U.S.C. § 1964, this amount is $1,185,729.12.

486.    As a direct and proximate result of Sandler's unlawful and intentional conduct relating to the unlawful operation and control of V.S. Care, Allstate made No-Fault payments totaling $217,809.48 to V.S. Care during the course of this scheme. *See* Exhibit 23. When trebled in accordance with 18 U.S.C. § 1964, this amount is $653,428.44.

487.    As a direct and proximate result of Sandler's unlawful and intentional conduct relating to the unlawful operation and control of Canon Chiropractic, Allstate made No-Fault payments totaling $272,543.05 to Canon Chiropractic during the course of this scheme. *See* Exhibit 24. When trebled in accordance with 18 U.S.C. § 1964, this amount is $817,629.15.

488.    As a direct and proximate result of Sandler's unlawful and intentional conduct relating to the unlawful operation and control of Victory Medical, Allstate made No-Fault payments totaling $403,953.65 to Victory Medical during the course of this scheme. *See* Exhibit 25. When trebled in accordance with 18 U.S.C. § 1964, this amount is $1,211,860.95.

489.    As a direct and proximate result of Sandler's unlawful and intentional conduct relating to the unlawful operation and control of SM Chiropractic, Allstate made No-Fault payments totaling $661,197.44 to SM Chiropractic during the course of this scheme. *See* Exhibit 26. When trebled in accordance with 18 U.S.C. § 1964, this amount is $1,983,592.32.

490.    As a direct and proximate result of Sandler's unlawful and intentional conduct relating to the unlawful operation and control of Precision Medical, Allstate made No-Fault payments totaling $366,350.56 to Precision Medical during the course of this scheme. *See* Exhibit 27. When trebled in accordance with 18 U.S.C. § 1964, this amount is $1,099,051.68.

491.    As a direct and proximate result of Tahir's unlawful and intentional conduct relating to the unlawful operation and control of J&:L Medical, Allstate made No-Fault payments totaling $155,352.99 to J&L Medical during the course of this scheme.  *See* Exhibit 28.  When trebled in accordance with 18 U.S.C. § 1964, this amount is $466,058.97.

492.    As a direct and proximate result of Zaretskiy's, Irina Zayonts', Yuriy Zayonts', Treysler's, and Kremerman's unlawful operation and control of Golden Star and Paragon Medical, Allstate made No-Fault payments totaling $442,461.24 to Golden Star, and $42,717.08 to Paragon Medical during the course of this scheme. *See* Exhibits 29-30.

## V.    ALLSTATE IS ENTITLED TO A DECLARATORY JUDGMENT AGAINST GOLDEN STAR, PARAGON MEDICAL, BARD ACUPUNCTURE, AND J&L MEDICAL

493.    To be eligible to receive assigned No-Fault benefits under New York law, an assignee provider must adhere to all applicable New York statutes and regulations that grant the authority to provide licensed, professional healthcare services in New York.

494.    Allstate has established that Golden Star was caused to be operated and managed in violation of one or more New York statutory and/or local licensing requirement relating to the operation and management of a physician-owned professional service corporation.

495.    Allstate has established that Paragon Medical was caused to be operated and managed in violation of one or more New York statutory and/or local licensing requirement relating to the operation and management of a physician-owned professional service corporation.

496.    Allstate has established that Bard Acupuncture was caused to be operated and managed in violation of one or more New York statutory and/or local licensing requirement relating to the operation and management of a acupuncturist-owned professional service corporation.

497.    Allstate has established that J&L Medical was caused to be operated and managed in violation of one or more New York statutory and/or local licensing requirement relating to the operation and management of a physician-owned professional service corporation.

498.    In view of the unlawful control of Golden Star, and Golden Star's unlawful splitting of professional service fees with one or more non-physician, Golden Star was always caused to be operated in violation of New York's Insurance Laws (and other statutory provisions), and thus has no standing to seek or receive payment of assigned No-Fault benefits.

499.    In view of the unlawful control of Paragon Medical, and Paragon Medical's unlawful splitting of professional service fees with one or more non-physician, Paragon Medical was always caused to be operated in violation of New York's Insurance Laws (and other statutory provisions), and thus has no standing to seek or receive payment of assigned No-Fault benefits.

500.    In view of Bard's, Zemlyansky's, Danilovich's, and Zaidman's unlawful control of Bard Acupuncture, and Bard Acupuncture's unlawful splitting of professional service fees with one or more non-physician, Bard Acupuncture was always caused to be operated in violation of New York's Insurance Laws (and other statutory provisions), and thus has no standing to seek or receive payment of assigned No-Fault benefits.

501.    In view of the unlawful control of J&L Medical, and J&L Medical's unlawful splitting of professional service fees with one or more non-physician, J&L Medical was always

116

caused to be operated in violation of New York's Insurance Laws (and other statutory provisions), and thus has no standing to seek or receive payment of assigned No-Fault benefits.

502.    A controversy presently exists between Allstate, on the one hand, and Golden Star, on the other, because numerous No-Fault benefit claims submitted to Allstate by, or on behalf of, Golden Star, remain pending (i.e., claims in which patients assigned to Golden Star their rights to collect No-Fault benefit payments from Allstate), and Golden Star, or those acting on Golden Star's behalf, continues to challenge Allstate's ability to deny such No-Fault reimbursement claims.

503.    A controversy presently exists between Allstate, on the one hand, and Paragon Medical, on the other, because numerous No-Fault benefit claims submitted to Allstate by, or on behalf of, Paragon Medical, remain pending (i.e., claims in which patients assigned to Paragon Medical their rights to collect No-Fault benefit payments from Allstate), and Paragon Medical, or those acting on Paragon Medical's behalf, continues to challenge Allstate's ability to deny such No-Fault reimbursement claims.

504.    A controversy presently exists between Allstate, on the one hand, and Bard Acupuncture, on the other, because numerous No-Fault benefit claims submitted to Allstate by, or on behalf of, Bard Acupuncture, remain pending (i.e., claims in which patients assigned to Bard Acupuncture their rights to collect No-Fault benefit payments from Allstate), and Bard Acupuncture, or those acting on Bard Acupuncture's behalf, continues to challenge Allstate's ability to deny such No-Fault reimbursement claims.

505.    A controversy presently exists between Allstate, on the one hand, and J&L Medical, on the other, because numerous No-Fault benefit claims submitted to Allstate by, or on behalf of, J&L Medical, remain pending (i.e., claims in which patients assigned to J&L Medical

their rights to collect No-Fault benefit payments from Allstate), and J&L Medical, or those acting on J&L Medical's behalf, continues to challenge Allstate's ability to deny such No-Fault reimbursement claims.

506.    Golden Star, or those acting on Golden Star's behalf, will continue to pursue payment of all such presently unpaid claims absent a declaration by this Court that Golden Star's activities are—and always have been—unlawful, and that Allstate has no obligation to pay any presently-pending, previously-denied, and/or any future No-Fault claims submitted by, or on behalf of, Golden Star.

507.    Paragon Medical, or those acting on Paragon Medical's behalf, will continue to pursue payment of all such presently unpaid claims absent a declaration by this Court that Paragon Medical's activities are—and always have been—unlawful, and that Allstate has no obligation to pay any presently-pending, previously-denied, and/or any future No-Fault claims submitted by, or on behalf of, Paragon Medical.

508.    Bard Acupuncture, or those acting on Bard Acupuncture's behalf, will continue to pursue payment of all such presently unpaid claims absent a declaration by this Court that Bard Acupuncture's activities are—and always have been—unlawful, and that Allstate has no obligation to pay any presently-pending, previously-denied, and/or any future No-Fault claims submitted by, or on behalf of, Bard Acupuncture.

509.    J&L Medical, or those acting on J&L Medical's behalf, will continue to pursue payment of all such presently unpaid claims absent a declaration by this Court that J&L Medical's activities are—and always have been—unlawful, and that Allstate has no obligation to pay any presently-pending, previously-denied, and/or any future No-Fault claims submitted by, or on behalf of, J&L Medical.

[SIGNATURE PAGE FOLLOWS]

Signed under the pains and penalties of perjury this 21st day of September, 2016.

Michael Bruno, Authorized Representative of
Allstate Insurance Company, Allstate Indemnity
Company, Allstate New Jersey Insurance Company,
Allstate New Jersey Property & Casualty Insurance
Company, Allstate Property and Casualty Insurance
Company, Allstate Vehicle and Property Insurance
Company f/k/a Deerbrook Insurance Company,
Allstate Fire and Casualty Insurance Company, and
Northbrook Indemnity Company

Notary Public

Printed Name: Kathleen M Mulliken

My Commission Expires: June 3, 2017

Commonwealth of Pennsylvania
NOTARIAL SEAL
KATHLEEN M. MULLIKEN, Notary Public
Lititz Boro, Lancaster County
My Commission Expires June 3, 2017

120

**Certificate of Conformity in Accordance with N.Y. CLS CPLR 2309(c)**

State of Pennsylvania

County of _Lancaster._

On the _29th_ day of September in the year 2016 before me, the undersigned, personally appeared Michael Bruno, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _Lititz, PA_ (insert the city or other political subdivision and the state or country or other place the acknowledgement was taken).

Notary Public

Printed Name: _Kathleen M Mulliken_

My Commission Expires:

_June 3 2017_

121